UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SCHAWBEL TECHNOLOGIES LLC
    Plaintiff

v.

THE HEAT FACTORY USA, INC.
    Defendant

C.A. NO. _____

# COMPLAINT

## Introduction

Plaintiff, Schawbel Technologies LLC ("Schawbel") brings this action against defendant, The Heat Factory USA, Inc. ("Heat Factory") to recover money damages resulting from Heat Factory's failure to pay all amounts owed pursuant to an Asset Purchase Agreement (the "APA") between the parties. As a result of Heat Factory's failure to pay the amounts due under the APA, Schawbel had the right to terminate a separate Exclusive Patent License Agreement (the "License Agreement") between the parties. Schawbel terminated the License Agreement on January 31, 2018. Because Heat Factory disputes that the conditions necessary for termination of the License Agreement have been satisfied, Schawbel further seeks a declaration from this Court that the License Agreement is terminated. Finally, Schawbel seeks monetary and injunctive relief against Heat Factory arising from Heat Factory's continued violation of Schawbel's patent rights following the termination of the License Agreement with respect to 19 U.S. Patents owned by Schawbel, as set forth further below.

## THE PARTIES

1. Plaintiff Schawbel Technologies LLC is a Massachusetts limited liability company with a principal place of business located at 67 South Bedford Street, Suite 400W, Burlington, Massachusetts.[1]

2. Defendant The Heat Factory USA, Inc. is a Nevada corporation with a principal place of business at 1958 Kellogg Avenue, Carlsbad, California.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), which confers subject matter jurisdiction upon this Court over claims relating to patents and pursuant to 28 U.S.C. § 1332(a) based on complete diversity of citizenship between the parties and because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.  In addition, this Court has jurisdiction over Schawbel's claim for declaratory relief pursuant to 28 U.S.C. § 2201.

4. This Court may exercise personal jurisdiction over Heat Factory because, as described in further detail below, the APA and License Agreement were negotiated in Massachusetts, Heat Factory contracted to do business in Massachusetts, and Heat Factory sells goods in Massachusetts.

5. Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Schawbel's claims occurred in this District.  In addition, pursuant to Section 8.05 of the APA, and Section 12.8 of the License Agreement, the parties agreed that both agreements are governed by the laws of the Commonwealth of Massachusetts.

---

[1] Schawbel had a previous principal place of business located at 2400 District Avenue, Burlington, Massachusetts as referenced in the APA and License Agreement.

## THE ASSET PURCHASE AGREEMENT

6.   Schawbel is the owner of certain United States and international patents related to the design of heated insoles and related heating products.

7.   Previously, Schawbel was in the business of manufacturing, marketing, distributing and selling heated insoles and related heating products under the trademarked business name of ThermaCELL.  These products incorporate patented technology set forth in the claims of a series of patents issued to Schawbel in the United States and internationally.

8.   Heat Factory is in the business of warmer technology, accessories, and manufacturing, marketing, and sale of hand warmers, body warmers, foot warmers, and other heated products.

9.   Upon information and belief, Heat Factory products, including products which incorporate the patented technology referenced herein, are sold in Massachusetts.

10.  On July 18, 2017, Schawbel and Heat Factory executed the APA.

11.  Pursuant to the terms of the APA, Schawbel agreed to sell to Heat Factory certain heated insoles, battery packs, and related heating products it had in inventory as further detailed on Schedule A of the APA (the "Inventory").  Included in the Inventory are products which incorporate, *inter alia*, the technology claimed in the Patents.  A true and accurate copy of the APA and Schedule A is attached as Exhibit 1 hereto.

12.  Pursuant to Section 2.02 of the APA, Heat Factory agreed to pay Schawbel $3,700,000 (the "Purchase Price") for the Inventory according to the following schedule:

| (i)    | $300,000 | Payable on or before October 10, 2017  |
|--------|----------|----------------------------------------|
| (ii)   | $450,000 | Payable on or before November 10, 2017 |
| (iii)  | $500,000 | Payable on or before December 10, 2017 |
| (iv)   | $600,000 | Payable on or before January 10, 2018  |
| (v)    | $600,000 | Payable on or before February 10, 2018 |
| (vi)   | $550,000 | Payable on or before March 10, 2018    |
| (vii)  | $550,000 | Payable on or before April 10, 2018    |
| (viii) | $150,000 | Payable on or before May 10, 2018      |

13.  Heat Factory failed to make timely or complete payment on December 10, 2017 and failed to make any payment on January 10, 2018 pursuant to the terms of the APA.

14.  As of the date of this complaint, there remains an additional $1,850,000 in scheduled payments due to Schawbel.

15.  Pursuant to Section 8.10 of the APA, the prevailing party in any lawsuit arising under the APA is entitled to recover its attorneys' fees and costs from the other party.

## THE EXCLUSIVE PATENT LICENSE AGREEMENT

16.  On July 18, 2017, Schawbel and Heat Factory also executed the License Agreement.

17.  Pursuant to the terms of the License Agreement, Schawbel agreed to provide an exclusive license to Heat Factory of certain patents, technological information, and general know-how (the "Patents").[2]

---

[2] The Schawbel patents at issue in this matter include the following U.S. Patents: 8,850,716, 8,869,428, 8,869,429, 9,101,177, 9,179,734, 9,314,064, 9,538,806, 9,538,807, 9,548,618, 9,549,586, and 9,572,397, and the following U.S. design patents: D717504, D722222, D724013, D734012, D737769, D772546, D794813 and D801624. Each of these patents is included in the subject transaction, as referenced on Exhibit C to the License Agreement. Throughout this complaint, wherever the term "Patent" is used, it shall refer to each of these U.S. Patents. *See also* Tables 1 and 2, *supra*.

18.     The parties specifically identified the Patents in Exhibit C to the License Agreement. The series of Patent claims relates to heated insole technology for footwear, including the heated insoles, heated shoes incorporating the insoles, battery packs, Wifi and Bluetooth technology to be utilized in conjunction with and as part of the heated insoles and other related technology. A true and accurate copy of the License Agreement and Exhibit C is attached hereto as Exhibit 2.

19.     According to Section 2.1(a)(i) of the License Agreement, Schawbel also granted Heat Factory the exclusive right to make and sell so-called "Products," which, "absent the license granted hereunder would infringe, or is covered by, one or more Claims of the Patents."

20.     According to Section 3.1 of the License Agreement, beginning on January 1, 2018, Heat Factory was required to remit monthly royalty payments to Schawbel, which were calculated as a percentage of net sales of Inventory and new products using the technology claimed in the Patents.

21.     According to Section 3.2 of the License Agreement, Heat Factory guaranteed an aggregate minimum royalty payment totaling $300,000 to be payable monthly, commencing on January 15, 2018 and continuing until June 15, 2018 (the "Minimum Royalty").

22.     Heat Factory agreed to pay Schawbel the Minimum Royalty according to the following schedule:

| $50,000  | Payable on January 15, 2018  |
| $100,000 | Payable on February 15, 2018 |
| $150,000 | Payable on March 15, 2018    |
| $200,000 | Payable on April 15, 2018    |
| $250,000 | Payable on May 15, 2018      |
| $300,000 | Payable on June 15, 2018     |

8973698v1

23. In addition to the Minimum Royalty payment, pursuant to the terms of the License Agreement, Heat Factory was required to remain current in its payments to Schawbel under the terms of the APA.

24. Pursuant to Section 9.4(a) of the License Agreement, Schawbel may terminate the License Agreement as a result of Heat Factory's failure to pay pursuant to the terms of the APA.

25. Section 9.4(a) provides, "if [Heat Factory] has two (2) or more Overdue Payments and/or APA Nonpayments within any consecutive twelve (12) months period, [Schawbel] shall be entitled to terminate [the License Agreement] effective immediately upon written notice . . . ."

26. Pursuant to Section 9.6 of the License Agreement, "upon termination . . . all Royalties and other payments accrued and due to [Schawbel] as of the termination date shall become immediately due and payable within thirty (30) calendar days."

27. Also pursuant to Section 9.6, upon termination of the License Agreement, Heat Factory "shall cease, and shall cause its Affiliates to cease, all production, use and Sales of Productions upon such termination," except as set forth in Section 9.7.

28. Section 9.7 permits Heat Factory to "complete and sell any work-in-progress and [I]nventory of Products on hand or ordered that exist as of the effective date of termination," however, this right is expressly conditioned upon Heat Factory's agreement to pay Schawbel "the applicable Royalty or other amounts due on such Net Sales in accordance with the terms and conditions" of the License Agreement. In short, if Heat Factory fails to pay all amounts due under the License Agreement, then the License Agreement is not only automatically terminated, but Heat Factory also forfeits the right to complete and sell any new products or Inventory.

29. The Parties also agreed that the prevailing party in any lawsuit arising under the License Agreement is entitled to recover its attorneys' fees and costs from the other party.

## COUNT ONE
## (Breach of Contract – The Asset Purchase Agreement)

30. Schawbel realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

31. Heat Factory entered into the APA with Schawbel to purchase the Inventory.

32. Schawbel delivered the Inventory to Heat Factory in accordance with the terms of the APA.

33. According to the terms of the APA, Heat Factory was required to pay the Purchase Price according to the schedule of payments as set forth in Section 2.02.

34. Heat Factory was required to pay Schawbel $500,000 on or before December 10, 2017 (the "December Payment").

35. Heat Factory failed to remit the entire December Payment to Schawbel pursuant to the terms of the APA.

36. Instead, Heat Factory untimely paid only $352,477.

37. On December 11, 2017, Schawbel demanded payment for the December Payment.

38. As of the date of this filing, Schawbel has not received the December Payment as required under the terms of the APA.

39. Heat Factory was required to pay Schawbel $600,000 on or before January 10, 2018 (the "January Payment").

40. Heat Factory failed to remit the January Payment to Schawbel on January 10, 2018.

41. On January 13, 2018, Schawbel demanded the January Payment.

42. As of the date of this filing, Schawbel has not received the January Payment.

43. As a result of Heat Factory's failure to make full payment according to the terms of the APA, Heat Factory owes Schawbel approximately $747,000 as of the date of this complaint (the "Current Outstanding Amount"), plus interest, costs, and attorneys' fees.

44. Heat Factory has breached the APA by failing and refusing to pay to Schawbel the current Outstanding Amount.

45. According to Section 2.02 of the APA, additional Purchase Price payments are due on February 10, 2018; March 10, 2018; April 10, 2018; and May 10, 2018 (the "Additional Payments Due").

46. Heat Factory's failure to pay all or any of the Additional Payments Due will result in additional breaches of the APA, for which Schawbel will be entitled to recovery.

47. As a result of Heat Factory's non-payment and breaches of the terms of the APA, Schawbel has suffered damages and will continue to suffer damages in an amount to be determined at trial.

**COUNT TWO**
**(Patent Infringement – 35 U.S.C. § 281– The License Agreement)**

48. Schawbel realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

49. As the parties acknowledged and agreed in the License Agreement, Schawbel is the owner of the Patents.

50. As set forth above, pursuant to the transfer provisions of the APA, Heat Factory acquired from Schawbel a substantial amount of Inventory, including thousands of ThermaCELL heated insoles and related products that incorporate the technology claimed in the Patents, including: (1) Heated Insoles; (2) Heated Insoles ProFLEX; (3) ProFLEX Replacement Batteries; (4) Heated Insoles ProFLEX HD (Heavy Duty); (5) ProFLEX XB Battery Packs, (6)

Hand Warmers; and (7) Pocket Warmers (*see* APA Schedules A and A-1 for these and other infringing products). Each of these products is the subject matter of one or more claims of the Patents, as listed in Tables 1 and 2. True and accurate copies of the 19 patents referenced in Tables 1 and 2 are attached hereto as Exhibits 3-21.

Table 1

| U.S. Patent No. | Title | Claims Asserted | Infringing Product |
|---|---|---|---|
| 8,850,716 | Heated Insole Remote Control System | 1-16 | 1.Heated Insoles<br>2. ProFLEX Heated Insoles<br>3. ProFLEX Replacement Battery<br>4. ProFLEX HD Heated Insoles<br>5. ProFLEX XB Battery Packs |
| 8,869,428 | Heated Insole with Removable and Rechargeable Battery | 1-25 | 1.Heated Insoles<br>2. ProFLEX Heated Insoles<br>3. ProFLEX Replacement Battery<br>4. ProFLEX HD Heated Insoles<br>5. ProFLEX XB Battery Packs |
| 8,869,429 | Heated Insole with Removable and Rechargeable Battery | 1-12 | 1.Heated Insoles<br>2. ProFLEX Heated Insoles<br>3. ProFLEX Replacement Battery<br>4. ProFLEX HD Heated Insoles<br>5. ProFLEX XB Battery Packs |
| 9,101,177 | Remove Control Wireless Heated Insole Systems | 1-15 | 1.Heated Insoles<br>2. ProFLEX Heated Insoles<br>3. ProFLEX Replacement Battery<br>4. ProFLEX HD Heated Insoles<br>5. ProFLEX XB Battery Packs |
| 9,179,734 | Heated Insole with Removable and Rechargeable Battery | 1-28 | 1.Heated Insoles<br>2. ProFLEX Heated Insoles<br>3. ProFLEX Replacement Battery<br>4. ProFLEX HD Heated Insoles<br>5. ProFLEX XB Battery Packs |
| 9,314,064 | Heated Insole with Removable Heating | 1-15 | 1.Heated Insoles<br>2. ProFLEX Heated Insoles |

| | Assembly (continuation of No. 8,869,428) | | 3. ProFLEX Replacement Battery<br>4. ProFLEX HD Heated Insoles<br>5. ProFLEX XB Battery Packs |
|---|---|---|---|
| 9,538,806 | Shoe with Heated Insole | 1-21 | 1. Heated Insoles ProFLEX |
| 9,538,807 | Assembly for Inclusion in a Heated Insole | 1-17 | 1. Heated Insoles ProFLEX |
| 9,548,618 | Heated Insoles | 1-14 | 1. ProFLEX XB Battery Pack<br>2. ProFLEX Replacement Battery |
| 9,549,586 | Battery for use with Heated Insole | 1-14 | 1. ProFLEX XB Battery Pack<br>2. ProFLEX Replacement Battery |
| 9,572,397 | Heated Insoles with Removable Assembly (continuation of No. 8,869,428) | 1-11 | 1. Heated Insoles ProFLEX<br>2. ProFLEX XB Battery Pack<br>3. ProFLEX Replacement Battery |

Table 2

| U.S. Patent No. | Title | Claims Asserted | Infringing Product |
|---|---|---|---|
| D719,504 | Battery pack for an Insole | Claim | 1. ProFLEX XB Battery Pack<br>2. ProFLEX Replacement Battery |
| D722,222 | Insole | Claim | 1. Heated Insoles<br>2. ProFLEX Heated Insoles<br>4. ProFLEX HD Heated Insoles |
| D724,013 | Battery pack for an Insole | Claim | 1. ProFLEX XB Battery Pack<br>2. ProFLEX Replacement Battery |
| D734,012 | Insole | Claim | 1. Heated Insoles<br>2. ProFLEX Heated Insoles<br>4. ProFLEX HD Heated Insoles |
| D737,769 | Battery pack for an Insole | Claim | 1. ProFLEX XB Battery Pack<br>2. ProFLEX Replacement Battery |
| D772,546 | Insole | Claim | 1. Heated Insoles<br>2. ProFLEX Heated Insoles<br>4. ProFLEX HD Heated Insoles |
| D794,813 | Heat Pack | Claim | 6. Hand Warmers<br>7. Pocket Warmers |
| D801,624 | Heat Pack | Claim | 6. Hand Warmers<br>7. Pocket Warmers |

8973698v1

51. According to Section 9.4(a) of the License Agreement, because Heat Factory failed to make two required payments under the APA within the previous 12 months, Schawbel was entitled to immediately terminate the License Agreement.

52. On January 31, 2018, Schawbel delivered a letter to Heat Factory exercising its rights to terminate the License Agreement pursuant to Section 9.4(a) (the "Termination Notice"). A true and accurate copy of the Termination Notice is attached hereto as Exhibit 22.

53. As a result of the termination, Heat Factory was required to cease all use of the Patents. Further, as a result of the termination, pursuant to Section 9.6 of the License Agreement, Heat Factory also was obligated to "cease . . . all production, use and Sales of Products. . . . ."

54. As a result of the termination of the License Agreement, pursuant to Section 9.6, all outstanding royalties and other payments became immediately due and payable within thirty days.

55. Upon information and belief, Heat Factory has no intention of paying the royalties due Schawbel under the License Agreement and, as such, Heat Factory has forfeited any right it may have had under Section 9.7 of the License Agreement to continue sales of work-in-progress and Inventory on hand upon termination of the agreement.

56. As a result of the termination of the License Agreement, Heat Factory no longer has any right or authority to use any of the Patents, including the right to continue selling any of the above-referenced products from Inventory that are clearly covered by one or more of the Patents.

57. Nevertheless, despite the termination of the License Agreement and its refusal to remit the requisite royalties as required under Section 9.7 of the License Agreement to continue

sales, on information and belief, Heat Factory continues to sell and to offer to sell, without limitation and at the very least, the following products: (1) ProFLEX Heated Insoles; (2) ProFLEX XB Battery Packs; and (3) ProFLEX Replacement Batteries, as indicated in advertisements on the internet, including at the following links: https://www.zulily.com/search?q=Heat+Factory&ref=brandex and https://www.zulily.com/p/thermacell-hand-warmer-heat-packs-5675-51872038.html.  A true and accurate copy of the website print outs as accessed on February 5, 2018 are attached hereto as Exhibit 23.

58.     Upon information and belief, Heat Factory infringes the claims of the Patents listed in Table 1, by virtue of the manufacture, sale and/or offer for sale of the products listed in Table 1.

59.     Upon information and belief, Heat Factory infringes the claims of Schawbel's U.S. design patents listed in Table 2, by virtue of the manufacture, sale and/or offer for sale of the products listed in Table 2.

60.     Through its conduct, Heat Factory has infringed upon and continues to infringe one or more of the Patents and Schawbel's rights therein.

61.     Pursuant to 35 U.S.C. § 283, Schawbel is entitled to an injunction to prevent Heat Factory's continued violation of Schawbel's rights under the Patents.

62.     Pursuant to 35 U.S.C. § 284, Schawbel is entitled to an award of damages adequate to compensate it for Heat Factory's infringement, but in no event less than a reasonable royalty for Heat Factory's infringing use of the Patents, together with interest and costs.

63.     Heat Factory's infringement of the Patents is knowing, deliberate, willful and without justification in that Heat Factory has been notified by Schawbel of the termination of the

License Agreement, but Heat Factory nevertheless continues to cause to be manufactured, and to sell or offer for sale, infringing Products and Inventory which incorporate the patented technology.  Schawbel is therefore entitled to recover up to three times the amount found or assessed as damages.  Schawbel is also entitled to recover its reasonable attorneys' fees.

**COUNT THREE**
**(Declaratory Judgment – The License Agreement)**

64. Schawbel realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

65. According to the terms of the License Agreement, Heat Factory was required to remain current on payments required by APA.

66. As set forth above, Heat Factory failed to make required payments pursuant to the terms of the APA on December 10, 2017 and January 10, 2018.

67. As a result of the Termination Notice sent to Heat Factory on January 31, 2018, the License Agreement was terminated by Schawbel.

68. As a result of the termination, Heat Factory was required to cease all use of the Patents.

69. As a result of the termination of the License Agreement, pursuant to Section 9.6, all outstanding royalties and other payments became immediately due and payable within thirty days.

70. Heat Factory disputes that the conditions necessary for termination of the License Agreement have been satisfied.

71. Heat Factory also continues to use Schawbel's Patents and continues to cause to be manufactured and/or to sell Products and Inventory incorporating the patented technology without authorization to do so, as set forth above.

72. Schawbel has been harmed will continue to be harmed by Heat Factory's continued use of the Patents granted pursuant to the License Agreement, and by Heat Factory's continued unauthorized manufacture and/or sale of Products and Inventory incorporating the patented technology.

73. An actual controversy exists between Schawbel and Heat Factory concerning the termination of the License Agreement and the parties' rights and obligations upon such termination.

74. For these reasons, Schawbel requests that the Court issue a declaratory judgment (a) that the License Agreement is terminated, (b) that Heat Factory no longer has any right to use Schawbel's Patents, (c) that Heat Factory no longer has any right to use or sell any Products and Inventory incorporating the patented technology, and (4) that all outstanding royalty amounts as of January 31. 2018 are immediately due and payable within thirty (30) days from the Termination Notice.

WHEREFORE, Plaintiff Schawbel Technologies LLC requests that this Court:

A.  On Count I, enter judgment in the total amount due to Schawbel as a result of Heat Factory's breach of the APA, plus such amounts as the Court determines that Schawbel is owed for interest, reasonable attorneys' fees and costs;

B.  On Count II, enter judgment in an amount sufficient to compensate Schawbel for the damages it has suffered as a result of Heat Factory's patent infringement, with such amount being no less than a reasonable royalty for Heat Factory's infringing use of the Patents, an award of up to three times the amount assessed as damages, plus such amounts as the Court determines that Plaintiff is owed for interest, reasonable attorneys' fees and costs;

C.  On Count II, enter an order preliminarily and permanently enjoining Heat Factory from continuing to infringe upon Schawbel's patent rights and from continuing to sell or offer for sale any Product and Inventory;

D.  On Count II, award Schawbel its reasonable attorneys' fees and costs pursuant to the prevailing parties provision in the License Agreement; and

E.  On Count III, enter a declaratory judgment that (1) the License Agreement has been terminated, (2) that Heat Factory no longer has any right to use the Patents, (3) that Heat Factory no longer has any right to use or sell any Products or Inventory, and (4) that all outstanding royalty amounts as of January 31, 2018 are due and payable within thirty (30) days from the Termination Notice; and

F.  Award Schawbel any further relief as the Court deems just and equitable.

**SCHAWBEL TECHNOLOGIES LLC**

By its attorneys,

  /s/ Anthony R. Leone
Michael P. Connolly, BBO #637642
mconnolly@murthalaw.com
Anthony R. Leone, BBO #681760
aleone@murthalaw.com
Murtha Cullina LLP
99 High Street
Boston, MA 02110-2320
617.457.4000

DATED:  February 6, 2018

8973698v1