**ASSET PURCHASE AGREEMENT**

by and between

**Schawbel Technologies LLC.**

as Seller

and

**Heat Factory, USA, Inc.**

as Purchaser

dated as of July  18  , 2017

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("**Agreement**") dated as of July __18__, 2017 (the "**Effective Date**") is made and entered into by and between Schawbel Technologies LLC, a Massachusetts limited liability company ("**Seller**") on one hand, and Heat Factory, USA, Inc., a Nevada corporation ("**Purchaser**") on the other hand. The Seller and Purchaser are collectively referred to as "**Parties**" and individually referred to as a "**Party**."

## RECITALS

Seller is in the business ("**Business**") of manufacturing, marketing, distributing and selling certain heated insoles, hand warmers, and related heating products (collectively "**Heating Products**") under the trademarked brand name of ThermaCELL ("**Brand**").

Seller is the owner of certain patents, technological information, and general know-how used in the manufacturing of the Heating Products.

Seller's rights to use and market the Heating Products under the Brand derive from that certain Transitional Trademark License dated July 2, 2014, by and between Seller and Schawbel Corporation, a Massachusetts corporation ("**Brand License**")

Seller has certain Heating Products in inventory, as set forth in **Schedule A** attached hereto and incorporated herein by reference ("**Inventory**").

Seller owns one hundred percent (100%) of the Inventory. The Inventory is currently stored by Seller in warehouses located in 6975 Pacific Circle Mississauga, ON L5T 2H3 Canada and 1100 Thorndale Ave, Elk Grove Village, IL 60007 (collectively "**Seller's Warehouses**").

Seller also owns certain Universal Product Codes associated with the Heating Products, as set forth in **Schedule B** attached hereto and incorporated herein by reference ("**UPC Codes**").

Seller desires to sell to Purchaser, and Purchaser desires to purchase from Seller, the Inventory, UPC Codes and other related assets on the terms and subject to the conditions as provided in this Agreement;

Purchaser will market, distribute, and resell the Inventory under the Brand.

Additionally, Seller desires to license to Purchaser, and Purchaser desires to license from Seller, the above referenced patents, technological information, and general know-how so that Purchaser can manufacture, market, distribute, and sell additional heating products under Purchaser's own brand name. The Parties agreement regarding the license is fully set forth in that certain licensing agreement of even date ("**License**").

Accordingly, in consideration of the foregoing and the mutual promises made in this Agreement and of the mutual benefits to be derived from such promises, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, Seller and Purchaser agree as follows:

## ARTICLE I.
## DEFINITIONS AND CONSTRUCTION

Section 1.01    Definitions.    For purposes of this Agreement, the following terms shall have the respective meanings set forth below:

"**Affiliate**" with respect to either Party shall mean any corporation or other legal entity other than that Party in whatever country organized, controlling, controlled by or under common control with that



Party. The term "control" shall mean (i) in the case of Licensee, direct or indirect ownership by Licensee or a relative of Licensee of fifty percent (50%) or more of the voting securities or membership interests having the right to elect directors or otherwise direct management and policies, and (ii) in the case of Licensor, the power, direct or indirect, to elect or appoint fifty percent (50%) or more of the directors or trustees, or to cause direction of management and policies, whether through the ownership of voting securities, by contract or otherwise

"**Agreement**" means this Asset Purchase Agreement.

"**Allocation Statement**" has the meaning set forth in Section 2.10.

"**Authorizations**" has the meaning set forth in 3.10.

"**Brand**" has the meaning set forth in the recitals.

"**Brand License**" has the meaning set forth in the recitals.

"**Bulk Sale Claims**" has the meaning set forth in Section 3.14.

"**Bulk Sale Notice**" has the meaning set forth in 2.15.

"**Business**" has the meaning set forth in the recitals.

"**Business Day**" means any day excluding Saturday, Sunday and any day which is a legal holiday under the laws of the State of New York, or is a day on which banking institutions located in the State of New York or in the city of New York are authorized or required by Law or other governmental action to close.

"**Cash Purchase Price**" has the meaning set forth in Section 2.02.

"**Certifications**" refer to those certifications identified on **Schedule C**.

"**Charter Documents**" means with respect to any Person, the certificate or articles of incorporation, organization or formation and by-laws, the limited partnership agreement, the partnership agreement or the operating or limited liability company agreement, equity holder agreements and other organizational and governance documents of such Person.

"**Claim**" means any demand, claim, action, legal proceeding (whether at Law or in equity) or arbitration, obligations, or reckonings of any kind or nature whatsoever, for compensatory or exemplary and punitive damages, or declaratory, equitable or injunctive relief, whether based on contract, tort, or other theories of recovery provided for by the common or statutory law, ascertained or unascertained, known or unknown, patent or latent, suspected or claimed.

"**Closing**" has the meaning set forth in Section 2.07.

"**Closing Date**" means the date on which the Closing occurs.

"**Code**" means the Internal Revenue Code of 1986.

"**Confidential Information**" has the meaning set forth in Section 5.05.

"**Contract**" means any contract, lease, option (including any option to purchase real property), license, evidence of indebtedness, mortgage, indenture, purchase order, binding bid, letter of credit, security agreement or other legally binding arrangement.

"**Delivery Date**" has the meaning set forth in Section 2.12.

"**Effective Date**" has the meaning set forth in the introductory paragraph to this Agreement.

"**Governmental Authority**" means any court, tribunal, arbitrator, authority, agency, commission, official or other instrumentality of the United States, Canada, or any state, county, city, province or other political subdivision or similar governing entity where the Heating Products are sold.



"**Governmental Authority Approvals**" means a permit, certification, order, decree or any other form of approval issued by a Governmental Authority.

"**Heating Products**" has the meaning set forth in the recitals.

"**Indemnified Party**" has the meaning set forth in Section 7.05(a).

"**Indemnifying Party**" has the meaning set forth in Section 7.05(a).

"**Inspection Period**" has the meaning set forth in Section 2.14(a).

"**Inventory**" has the meaning set forth in the recitals.

"**Inventory Secured Taxes**" has the meaning set forth in 3.11(a).

"**Laws**" means all laws, statutes, rules, regulations and ordinances, and any other pronouncements having the effect of law, of any Governmental Authority.

"**Liabilities**" has the meaning set forth in Section 2.05.

"**License**" means the Exclusive License Patent Agreement between the Seller and the Purchaser of even date.

"**Lien**" means any security interest, pledge, mortgage, lien, charge, encumbrance, conditional sale agreement, title retention contract, right of first refusal, option to purchase, proxy, voting trust or voting agreement or any similar interest.

"**Loss**" or "**Losses**" means any and all judgments, losses, liabilities, amounts paid in settlement, damages, fines, penalties, deficiencies, Taxes, losses and expenses (including interest, court costs, reasonable fees of attorneys, accountants and other experts or other reasonable expenses of litigation or other proceedings or of any Claim, default or assessment).

"**Party**" or "**Parties**" means Purchaser, on the one hand, and Seller, on the other hand.

"**Person**" means any natural person, corporation, general partnership, limited partnership, limited liability company, proprietorship, other business organization, trust, union, association or Governmental Authority.

"**Pre-Closing Orders**" has the meaning set forth in Section 2.13.

"**Purchase Price**" has the meaning set forth in Section 2.02.

"**Purchaser**" has the meaning set forth in the introductory paragraph to this Agreement.

"**Purchaser's Warehouse**" has the meaning set forth in Section 2.11.

"**Related Person**" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, financial advisors, Representatives, attorneys, accountants, investment bankers, Affiliates or Representatives of (i) any such Person or (ii) any Affiliate of such Person.

"**Representatives**" means, with respect to any Person, the officers, directors, managers, employees, counsel, accountants, financial advisers or consultants of such Person.

"**Restrictive Period**" has the meaning set forth in Section 5.07.

"**Schedule A-1 Value**" has the meaning set forth in 2.14(a).

"**Seller**" has the meaning set forth in the introductory paragraph to this Agreement.

"**Seller's Insurance**" has the meaning set forth in Section 3.12.

"**Seller's Warehouses**" has the meaning set forth in the recitals.



"**Senior Financing**" has the meaning set forth in <u>Section 2.03</u>.

"**Tax**" or "**Taxes**" means any federal, state, local or foreign income, profits, franchise, withholding, franchise, margin, environmental (including taxes under Code Section 59A), documentary, stamp, transfer, ad valorem, personal property (tangible and intangible), real property, employment, payroll, sales and use, social security, disability, occupation, property, severance, excise and other taxes (or other charges, fees, levies or other assessments in the nature of a tax), including any interest, penalty or addition thereto whether disputed or not.

"**Tax Return**" means any return, report, declaration, information return, statement or other document filed or required to be filed with any Taxing Authority in connection with the determination, assessment or collection of any Tax or the administration of any Laws relating to any Tax.

"**Taxing Authority**" means, with respect to any Tax, the governmental entity or political subdivision thereof that imposes such Tax, and the agency (if any) charged with the collection of such Tax for such entity or subdivision.

"**Territory**" has the meaning set forth in <u>Section 5.07</u>.

"**Third Party Purchaser**" has the meaning set forth in <u>Section 5.07</u>.

"**Transfer Taxes**" means all transfer, sales, use, goods and services, value added, documentary, stamp duty, gross receipts, excise, and conveyance Taxes and other similar Taxes, duties, fees or charges.

"**Transferred Assets**" has the meaning set forth in <u>Section 2.01</u>.

"**UPC Codes**" has the meaning set forth in the recitals.

Section 1.02   Construction.

   (a) All Article, Section, Subsection, Schedule and Exhibit references used in this Agreement are to Articles, Sections, Subsections, Schedules and Exhibits to this Agreement unless otherwise specified. The Exhibits and Schedules attached to this Agreement constitute a part of this Agreement and are incorporated herein for all purposes.

   (b) If a term is defined as one part of speech (such as a noun), it shall have a corresponding meaning when used as another part of speech (such as a verb). Unless the context of this Agreement clearly requires otherwise, words importing the masculine gender shall include the feminine and neutral genders and vice versa. The words "includes" or "including" shall mean "includes without limitation" or "including without limitation," the words "hereof," "hereby," "herein," "hereunder" and similar terms in this Agreement shall refer to this Agreement as a whole and not any particular Section or Article in which such words appear. Any reference to a Law shall include any amendment thereof or any successor thereto and any rules and regulations promulgated thereunder. Unless this context otherwise requires, any reference to an agreement or contract shall include any amendment, supplement or other modification thereto. Any reference to any Governmental Authority shall include any successor in function to such Governmental Authority. Currency amounts referenced herein are solely in U.S. Dollars.

   (c) Whenever this Agreement refers to a number of days, such number shall refer to calendar days unless Business Days are specified. Whenever any action must be taken hereunder on or by a day that is not a Business Day, then such action may be validly taken on or by the next day that is a Business Day.

   (d) Each Party acknowledges that it and its attorneys have been given an equal opportunity to negotiate the terms and conditions of this Agreement and that in the event an ambiguity of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and



no presumption shall arise favoring any Party by virtue of the authorship of any provisions of this Agreement.

## ARTICLE II.
## PURCHASE AND SALE AND CLOSING

Section 2.01     Purchase and Sale. Effective as of the Closing Date, Seller sells, assigns, and transfers to Purchaser, and Purchaser purchases from Seller, on the terms and conditions specified in this Agreement, all of Seller's rights, title, and interest in and to only the following (collectively the "**Transferred Assets**"):

    (a)  One hundred percent (100%) of all direct and indirect right and title to and in the Inventory, free and clear of all Liens, Claims, encumbrances and other interests; and

    (b)  One hundred percent (100%) of all direct and indirect right and title to and in the UPC Codes, free and clear of all Liens, Claims, encumbrances and other interests.

Section 2.02     Purchase Price. The purchase price for the Transferred Assets to be paid by Purchaser to Seller shall be $3,700,000 (the "**Purchase Price**"). The Purchase Price shall be payable by Purchaser to Seller as follows:

    (i)     $300,000 payable on or before October 10, 2017;

    (ii)    $450,000 payable on or before November 10, 2017;

    (iii)   $500,000 payable on or before December 10, 2017;

    (iv)   $600,000 payable on or before January 10, 2018;

    (v)    $600,000 payable on or before February 10, 2018;

    (vi)   $550,000 payable on or before March 10, 2018;

    (vii)  $550,000 payable on or before April 10, 2018; and

    (viii) $150,000 payable on or before May 10, 2018

Section 2.03     Security. To secure Purchaser's payment of the Purchase Price Purchaser grants to Seller as of the Closing Date a perfected lien on (a) the Inventory and (b) all accounts receivable arising from sales of the Inventory. Seller's liens on the Inventory and accounts receivable shall be subordinate and junior only to any liens held by any third party lender that has lent money to Purchaser, directly or in-directly, in relation to the purchase, handling and sale of the Inventory, including a business line-of-credit, which may also be used for other legitimate business purposes ("**Senior Financing**"). Notwithstanding the foregoing, the value of the Senior Financing shall not exceed the Purchase Price. Purchaser and Seller shall execute all instruments and documents reasonably required to evidence such liens and the perfection thereof and the subordination of such liens as provided immediately above no later than thirty (30) days after the Effective Date. Purchaser shall provide notice to Seller of any default on the Senior Financing.

Section 2.04     Retained Assets. The Transferred Assets shall not include, and Purchaser shall not acquire an interest in, any and all assets not specified in Section 2.01, including but not limited to the assets of Seller listed below ("**Retained Assets**"):

    (a)  All of Seller's cash or cash equivalents existing as of the Closing Date, including any line(s) of credit;

    (b)  Prepaid taxes, refunds, and deposits and earned revenue;

    (c)  All accounts receivable existing as of the Closing Date, but excluding an accounts receivable for Pre-Closing Orders (as further described in Section 2.13);



Section 2.05    No Assumption of Liabilities. Subject to the terms and conditions of Section 2.12, Purchaser does not assume and will not become responsible for any liability of Seller of any kind, character or description whatsoever, whether actual or contingent, known or unknown, intentional or unintentional, and whether statutory, in contract, tort, warranty or otherwise and whether with respect to the Business, the Transferred Assets, or otherwise arising prior to the Closing Date (collectively "**Liabilities**").

Section 2.06    Taxes.  Seller shall pay in a timely manner all sales and other Transfer Taxes, if any, levied on the Transferred Assets due to the sale to Purchaser under this Agreement, and shall release, indemnify, defend, and hold harmless Purchaser with respect to such Taxes. Seller shall file all necessary documentation and Tax Returns with respect to such Taxes.

Section 2.07    Closing.   The Closing of the transactions contemplated by this Agreement (the "**Closing**") shall take place at the offices of Seller at 10:00 A.M. local time, on the Effective Date, or on such other date and at such other time and place as the Parties mutually agree in writing.  All actions listed in Section 2.08, 2.09 or Section 2.10 that occur on the Closing Date shall be deemed to occur simultaneously at the Closing.

Section 2.08    Closing Deliveries by Seller to Purchaser.  At the Closing, Seller shall deliver, or shall cause to be delivered, to Purchaser the following:

(a)    a duly executed assignment of the intangible portion of the Transferred Assets by Seller to Purchaser, in form attached and incorporated as **Exhibit 2.08(a)**, together with such documents endorsed for transfer or executed in blank as are necessary to transfer the Transferred Assets;

(b)    a certificate of good standing with respect to Seller dated no more than three (3) days before the Closing, issued by the Secretary of State of Seller's formation;

(c)    a duly executed certificate in form attached and incorporated as **Exhibit 2.08(c)** by a manager of Seller, (i) certifying due authorization of the resolutions granting authority to execute and deliver this Agreement and the other agreements and instruments contemplated hereby and authorizing the consummation of the transactions contemplated hereby; and (ii) identifying the name and title and bearing the signatures of the officers of Seller authorized to execute and deliver this Agreement and the other agreements and instruments contemplated hereby, duly executed by Seller;

(d)    Recorded UCC-3s, mortgage releases and termination statements or any other documents necessary to deliver the Transferred Assets to Purchaser free and clear of all Liens, Claims, encumbrances and other interests;

(e)    a duly executed Bill of Sale selling the tangible portion of the Transferred Assets to Purchaser in the form attached and incorporated as **Exhibit 2.08(e)**;

(f)    the letters from the President of Schawbel Corporation, attached as Exhibit 2.08(f); and

(g)    any other agreement or instrument reasonably requested by Purchaser that is required to effect the transactions contemplated by this Agreement.

Section 2.09    Closing Deliveries by Purchaser to Seller.  At the Closing, Purchaser shall deliver, or shall cause to be delivered, to Seller the following:

(a)    a duly executed assignment of the Transferred Assets by Seller to Purchaser, referred to in Section 2.08(a);

(b)    a certificate of good standing with respect to Purchaser dated no more than three (3) days before the Closing, issued by the Secretary of State of Purchaser's incorporation;



(c) a true and correct copy of the resolutions of Purchaser's Board of Directors in form attached hereto and incorporated as **Exhibit 2.09(c)** granting authority to execute and deliver this Agreement and instruments contemplated hereby and authorizing the consummation of the transactions contemplated hereby; and

(d) any other agreement or instrument reasonably requested by Seller that is required to effect the transactions contemplated by this Agreement.

Section 2.10    Purchase Price Allocation.

(a) Within ninety (90) days after the Closing Date, Purchaser shall prepare and deliver to Seller a draft of a statement (the "**Allocation Statement**") setting forth its proposed allocation of the Purchase Price among the Transferred Assets. If within fifteen (15) days after Seller's receipt of the draft Allocation Statement, Seller shall not have objected in writing to such draft Allocation Statement, the draft Allocation Statement shall become the Allocation Statement. In the event that Seller objects in writing within such 15-day period, Seller and Purchaser shall negotiate in good faith to resolve the dispute. If Seller and Purchaser are unable to reach an agreement within thirty (30) days after Purchaser's receipt of Seller's written objection, the dispute shall be resolved and the Allocation Statement shall be determined by an independent, nationally recognized accounting firm mutually selected by the Parties. The Allocation Statement, as agreed upon by Purchaser and Seller and/or determined under this Section 2.10, shall be final and binding upon the Parties. Each of Seller and Purchaser shall bear all fees and costs incurred by it in connection with the determination of the Allocation Statement, except that the Parties shall each pay one-half (50%) of the fees and expenses of the accounting firm.

(b) The Allocation Statement will be prepared in accordance with Section 1060 of the Code and the rules and Treasury Regulations promulgated thereunder. Purchaser and Seller also shall allocate and report any adjustments to the Purchase Price (including any adjustment to the Purchase Price under the true-up process set forth in Section 2.14) in accordance with Treasury Regulations Section 1.1060-1(e), and any allocations made as a result of such adjustments shall become part of the Allocation Statement.

(c) The Parties agree to report the allocation of the Purchase Price (including the amount of any assumed liabilities) among the Transferred Assets in a manner consistent with the Allocation Statement and agree to act in accordance with the Allocation Statement in the preparation and filing of all Tax returns (including filing Form 8594 with their respective federal income tax returns for the taxable year that includes the Closing Date and any other forms or statements required by the Code, Treasury Regulations, the Internal Revenue Service or any applicable state or local Governmental Authority) and in the course of any Tax audit, Tax review or Tax litigation relating thereto; provided, however, that (i) Purchaser's cost for such assets may differ from the total amount allocated hereunder to reflect the inclusion in the total cost of items (for example, capitalized acquisition costs) not included in the amount so allocated, and (ii) the amount realized by Seller may differ from the total amount allocated hereunder to reflect transaction costs that reduce the amount realized for federal income tax purposes.

(d) The Parties will promptly inform one another of any challenge by any Governmental Authority to any allocation made pursuant to this Section 2.10 and agree to consult and keep one another informed with respect to the status of, and any discussion, proposal or submission with respect to, such challenge.

Section 2.11    Transportation of Inventory After Closing. Purchaser shall be responsible for arranging transportation of the Inventory from Seller's Warehouses to Purchaser's warehouses ("**Purchaser's Warehouse**"), and shall be solely responsible for all costs and expenses associated therewith.



(a) For purposes of removing and transporting the Inventory from Seller's Warehouses, Seller shall grant Purchaser and/or Purchaser's moving company with sufficient access to Seller's Warehouses to inspect, pack and remove the Inventory, provided that Purchaser shall provide at least 24 hours verbal or written notice in advance of any visit.

(b) Purchaser shall have all Inventory removed from Seller's Warehouses within 20 Business Days after the Closing Date.

Section 2.12   Risk of Loss. Seller has all risk of loss or damage to the Transferred Assets prior to Purchaser commencing the packing of the Inventory for removal at Seller's Warehouses ("**Delivery Date**"). From and after the Delivery Date, Purchaser has all risk of loss and damage to the Transferred Assets.

Section 2.13   Pre-Closing Orders.

(a) Prior to Closing, Seller has taken certain orders for some of the items in the Inventory, but has not shipped the items or billed the order ("**Pre-Closing Orders**"). Following Closing Seller shall use reasonable efforts to provide Purchaser with a list of Pre-Closing Orders and whatever relevant information is in the possession of Seller regarding the customers and Pre-Closing Orders.

(b) Purchaser may, but is not obligated to, fulfill any of the Pre-Closing Orders. Purchaser shall notify Seller in writing of which Pre-Closing Order Purchaser will fulfill. All accounts receivable arising from any of the Pre-Closing Orders that Purchaser fulfills shall be belong solely to Purchaser.

(c) Purchaser shall have no liability for any of Seller's Pre-Closing Orders which Purchaser is unable to fulfill as a result of insufficient information from Seller, or which Purchaser chooses, in its sole and absolute discretion, not to fulfill. For any such orders Seller agrees to release, indemnify, and hold Purchaser harmless for any liability related to or arising from such Pre-Closing Orders.

Section 2.14   True-Up.

(a) Purchaser shall have forty-five (45) days from the Closing Date ("**Inspection Period**") to fully inspect the delivered Inventory. Within such forty-five days period, Purchaser shall provide written notice to Seller of any items of Inventory that either: 1) were not delivered, or 2) were delivered but arrived damaged and such damage was incurred prior to the Delivery Date. "Damage" shall be assessed in Purchaser's reasonably exercised discretion. To the extent such undelivered/damaged items have an aggregate value, based on Schedule A-1 ("**Schedule A-1 Value**"), of $67,000 or more, the Purchase Price shall be adjusted downward by such aggregate value, and the Purchaser shall be entitled to offset such aggregate value against any payments due on the Purchase Price.

(b) The Purchase Price shall be further adjusted downward by, and Purchaser may deduct from the payments otherwise due pursuant to Section 2.02, all credit balances and defect deductions attributable to the sale of Heating Products by Seller prior to the Effective Date and all cash rebates awarded by Seller in relation to sale of Heating Products consummated prior to the Effective Date to the extent Purchaser is required to honor such items.

Section 2.15   Purchaser shall comply, at its sole cost and expense, with the provisions of any applicable "bulk sales," bulk transfer" or similar Laws in connection with the consummation of the transactions contemplated by this Agreement ("**Bulk Sale Notice**"), including the provisions set forth in Illinois Administrative Code Section 130.1701 and Illinois Unemployment Insurance Act, Section 2600.



## ARTICLE III.
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Purchaser that the following representations and warranties are true and correct as of the Closing Date:

Section 3.01    Organization and Qualification.  Seller is a limited liability company duly formed, validly existing and in good standing under the laws of Massachusetts.  Seller is duly qualified or licensed to carry on the Business as now conducted and duly qualified to conduct business in each other jurisdiction or country where the actions required to be performed by it under this Agreement makes such qualification or licensing necessary.

Section 3.02    Authority.  Seller has all requisite power and authority to execute and deliver this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby.  The execution and delivery by Seller of this Agreement, and the performance by Seller of its obligations hereunder, have been duly and validly authorized by all necessary proceedings on the part of Seller.  This Agreement has been duly and validly executed and delivered by Seller and constitutes the legal, valid and binding obligation of Seller enforceable against Seller in accordance with its terms, except as the same may be limited by bankruptcy, insolvency, reorganization, arrangement, moratorium or other similar Laws relating to or affecting the rights of creditors generally, or by general equitable principles regardless of whether considered in a proceeding at Law or in equity.

Section 3.03    No Conflicts; Consents and Approvals.  The execution and delivery by Seller of this Agreement does not, and the performance by Seller of its obligations under this Agreement and the consummation of the transactions contemplated hereby will not:

    (a)  conflict with or result in a violation or breach of any of the terms, conditions or provisions of the Charter Documents of Seller;

    (b)  violate or result in a default (or give rise to any right of termination, cancellation or acceleration) under any Contract to which Seller is a party or by which it is bound, or to which any of its assets are subject;

    (c)  (i) violate or breach any writ, judgment, order or decree applicable to Seller, (ii) violate any Law, (iii) require any consent, approval or clearance by, or any filing or registration with, any Governmental Authority or (iv) require the consent or approval of any third party; and

    (d)  violate the Brand License.

Section 3.04    Ownership of Transferred Assets.  Seller owns one hundred percent (100%) of the Transferred Assets directly, free and clear of all Liens, Claims, encumbrances and other interests.

Section 3.05    Transferred Assets.

    (a)  Seller has good and marketable title to the Transferred Assets and will convey the same to Purchaser free and clear of all Liens, Claims, interests and encumbrances.

    (b)  Purchaser's use of the Brand and the resale of the Inventory under the Brand will not violate the Brand License.

**Section 3.06**    Inventory. Except as set forth in **Schedule 3.06**, there have been no manufacturing or product defect Claims made or pending or, to Seller's actual knowledge, threatened (whether or not covered by insurance), related to the Heating Products or the items of the Inventory. Except as set forth in Schedule 3.06, none of the Claims set forth in **Schedule 3.06** resulted in Seller paying any sums, or otherwise settling with, the respective claimant. None of the Claims were tendered to any of Seller's insurers. To the actual knowledge of Seller, each item of Inventory was manufactured or made in compliance will all applicable Laws and the Certifications, as such Laws and Certifications were in effect



as of the time of manufacture. Each item of the Inventory was in Seller's inventory or in transit as of the effective date of the termination of the Brand License.

Section 3.07    Intellectual Property.

(a)  The Transferred Assets and Inventory, as used by Seller, do not infringe, misappropriate or otherwise violate the intellectual property rights of any third party.

(b)  Seller has not received any written charge, complaint, Claim, demand or notice alleging any such infringement, misappropriation or other violation (including any Claim that Seller must license or refrain from using any intellectual property of any third party).

(c)  To the actual knowledge of Seller, no third party has infringed upon, misappropriated or otherwise violated any Intellectual Property of Seller.

Section 3.08    No Brokers. Seller does not have any liability or obligation to pay fees or commissions to any broker, finder or agent with respect to the transactions contemplated by this Agreement for which Purchaser or any of its Affiliates are or could become liable or obligated. Seller will indemnify and hold Purchaser harmless from any and all Claims, suits, and actions for brokerage or other commissions, and from and against all expenses of any character, including reasonable attorney fees incurred by the other by reason of any Claim by any finder, broker, or other person claiming to have been engaged by, or on behalf of, Seller, or with whom Seller is claimed to have made any agreement for compensation

Section 3.09    Compliance with Laws: Litigation. The Transferred Assets are in conformity with all applicable federal, state and local laws, ordinances and regulations, and Seller has received no notice of alleged noncompliance. There is no litigation pending or threatened (whether or not covered by insurance), nor any order, injunction, or decree outstanding nor any proceeding, or governmental investigation existing or pending, involving Transferred Assets or the Heating Products, nor is there any basis for any such litigation. No event has occurred or circumstance exists that is reasonably likely to give rise to or serve as a basis for the commencement of any complaint, Claim, action, suit, litigation, proceeding or governmental or administrative investigation involving or relating to the Transferred Assets.

Section 3.10    Licenses and Rights. Seller possesses all franchises, licenses, easements, permits and other authorizations (collectively, "**Authorizations**") from all Governmental Authority or regulatory authorities and from all other persons or entities that are necessary to use the Transferred Assets in the manner presently done by Seller in and at all locations and places where it is presently operating, and Seller has not received any notice that any Governmental Authority or regulatory authority is considering or intends to cancel, terminate, modify or not renew such Authorizations

Section 3.11    Tax Matters As to the Transferred Assets.

(a)  All Taxes due and owing by Seller or its Affiliates (whether or not shown on any tax return), that if unpaid could be secured against the Transferred Assets ("**Inventory Secured Taxes**"), have been paid and Seller does not have any liability for such Inventory Secured Taxes.

(b)  As of the date of the Closing Date, there is no written Claim or assessment pending or, threatened against Seller or its Affiliates for any alleged deficiency in Inventory Secured Taxes, and there is no audit or investigation with respect to any liability of Seller or its Affiliates for Inventory Secured Taxes. Neither Seller nor or its Affiliates have waived any statute of limitations with respect to Inventory Secured Taxes or agreed to any extension of time with respect to any Inventory Secured Tax assessment or deficiency.

(c)  With respect to Inventory Secured Taxes, Seller has withheld (and timely paid to the appropriate Governmental Authority) proper and accurate amounts for all periods through the date hereof in compliance with all Tax withholding provisions of applicable federal, state, local and foreign Laws .



Section 3.12    Insurance. Seller maintains the policies of insurance identified on **Schedule 3.12** (collectively "**Seller's Insurance**"). Seller has provided Purchaser with complete copies of the policies for Seller's Insurance. There is no Claim pending under any of such policies or bonds as to which coverage has been questioned, denied or disputed. There is no threatened termination of, or announced pending material premium increase with respect to, any such policies or bonds. Seller shall maintain such insurance through the Delivery Date. For a period of twelve (12) months following the Closing Date, Seller will maintain the CGL coverage, and associated umbrella, in an amount and substantially similar to the policies identified in Section 3.12, and which shall each continue to provide coverage for Products-Completed Operations Liability.

Section 3.13    Solvency. Immediately after giving effect to all of the transactions contemplated by this Agreement, Seller will be able to pay all its debts and will own property which has a fair saleable value greater than the amounts required to pay its debts (including a reasonable estimate of the amount of all contingent liabilities). No transfer of property is being made and no obligation is being incurred in connection with the transactions contemplated by this Agreement with the intent to hinder, delay or defraud either present or future creditors of Seller.

Section 3.14    Bulk Sale Claims: There exist no actual third party Claims and, to the actual knowledge of Seller, Seller has not been made aware of any third party Claims which could be made in response to the Bulk Sales Notice ("**Bulk Sale Claims**").

Section 3.15    Disclosure. No representation or warranty of the Seller in this Agreement (including the exhibits and schedules hereto) or in any other agreement, instrument, certificate, or other document delivered by the Seller in connection with this Agreement or any of the other transactions contemplated hereby contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact required to be stated herein or therein or necessary to make the statements contained herein or therein not false or misleading. There is no fact that Seller has not disclosed to the Purchaser in writing that materially adversely affects, or (so far as Seller can now foresee) is reasonably likely to affect materially and adversely, the Transferred Assets or the ability of Seller to perform its obligations under this Agreement or to consummate any of the transactions contemplated hereby.

Section 3.16    No Material Change. There has been no material adverse change in the Transferred Assets since April 15, 2017 through Closing.

### ARTICLE IV.
### REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants that the following representations and warranties are true and correct as of the Closing Date:

Section 4.01    Organization and Qualification. Purchaser is a corporation company duly formed, validly existing and in good standing under the Laws of the State of Nevada. Purchaser is duly qualified or licensed to do business in each other jurisdiction where the actions required to be performed by it hereunder makes such qualification or licensing necessary, except as would not, in the aggregate, have a material adverse effect on its ability to consummate the transactions hereunder or otherwise perform its obligations hereunder.

Section 4.02    Authority. Purchaser has all requisite corporate power and authority to enter into this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby. The execution and delivery by Purchaser of this Agreement and the performance by Purchaser of its obligations hereunder have been duly and validly authorized by all corporate action on behalf of Purchaser. This Agreement has been duly and validly executed and delivered by Purchaser and constitutes the legal, valid and binding obligation of Purchaser enforceable against Purchaser in



accordance with its terms except as the same may be limited by bankruptcy, insolvency, reorganization, arrangement, moratorium or other similar Laws relating to or affecting the rights of creditors generally or by general equitable principles.

Section 4.03    No Conflicts; Consents and Approvals.  The execution and delivery by Purchaser of this Agreement does not, and the performance by Purchaser of its obligations under this Agreement and the consummation of the transactions contemplated hereby will not:

    (a)  conflict with or result in a violation or breach of any of the terms, conditions or provisions of its Charter Documents;

    (b)  violate or result in a default (or give rise to any right of termination, cancellation or acceleration) under any Contract to which Purchaser is a party, except for any such violations or defaults (or rights of termination, cancellation or acceleration) which would not, impair Purchaser's ability to perform its obligations hereunder; and

    (c)  assuming all required filings, approvals, consents, authorizations, clearances and notices set forth in Schedule 4.03(c) (collectively, the "**Purchaser Governmental Approvals**") have been made, obtained or given, (i) violate any Law applicable to Purchaser, (ii) violate or breach any writ, judgment, order or decree applicable to Purchaser, (iii) require the consent, clearance or approval of any Governmental Authority under any applicable Law, except where any such violation or breach or the failure to obtain any such consent, clearance or approval would not impair Purchaser's ability to perform its obligations hereunder or (iv) to the knowledge of Purchaser require the consent or approval of any other third party.

Section 4.04    Litigation.    There are no Claims pending or threatened in writing, before any Governmental Authority or any arbitrator, that would, in the aggregate, impair Purchaser's ability to perform its obligations hereunder.  Purchaser is not subject to any judgment, decree, injunction, rule or order of any Governmental Authority or any arbitrator that prohibits the consummation of the transactions contemplated by this Agreement or would impair Purchaser's ability to perform its obligations hereunder.

Section 4.05    Compliance with Laws.  Purchaser is not in violation of any Law, except for violations that would not, in the aggregate, impair Purchaser's ability to perform its obligations hereunder.

Section 4.06    Brokers.  Purchaser does not have any liability or obligation to pay fees or commissions to any broker, finder or agent with respect to the transactions contemplated by this Agreement for which Seller or its Affiliates could become liable or obligated. Purchaser will indemnify and hold Seller harmless from any and all Claims, suits, and actions for brokerage or other commissions, and from and against all expenses of any character, including reasonable attorney fees incurred by the other by reason of any Claim by any finder, broker, or other person claiming to have been engaged by, or on behalf of, Purchaser, or with whom Purchaser is claimed to have made any agreement for compensation.

Section 4.07    Disclosure. No representation or warranty of the Purchaser in this Agreement (including the exhibits and schedules hereto) or in any other agreement, instrument, certificate, or other document delivered by the Purchaser in connection with this Agreement or any of the other transactions contemplated hereby contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact required to be stated herein or therein or necessary to make the statements contained herein or therein not false or misleading. As it concerns the Transferred Assets, there is no fact that the Purchaser has not disclosed to the Seller in writing that materially adversely affects, or (so far as Purchaser can now foresee) is reasonably likely to affect materially and adversely, the business or condition (financial or otherwise) of Purchaser or the ability of Purchaser to perform its obligations under this Agreement or to consummate any of the transactions contemplated hereby.

Section 4.08    Sawyer Termination. As of Closing, and until termination of the Agreement, Purchaser shall have no business relationship with Sawyer Products, Inc., other than in the normal course of business of selling



Heat Factory USA, Inc. branded products. To Purchaser's actual knowledge, as of the Closing, Sawyer Products, Inc. has no claims against Purchaser.

## ARTICLE V.
## COVENANTS

Section 5.01    Public Announcements.  Prior to the Closing Date, neither Party shall issue any press release, disclose the Purchase Price or make any public statement with respect to this Agreement or any of the transactions contemplated hereby without the prior written consent of the other Party, except as may be required by applicable Law or any listing agreement with a national securities exchange or quotation system. Notwithstanding the foregoing, Purchaser may disclose the Purchase Price and this Agreement for purposes of complying with the Bulks Sales Notice or to secure commercial financing secured by the Inventory. After the Closing Date, the Parties may issue a press release or make a public statement with respect to this Agreement or any of the transactions contemplated hereby without the prior written consent of the other Party provided, however, that neither Party shall, without the prior written consent of the other Party, disclose publicly any of the financial terms of this Agreement.

Section 5.02    Expenses and Fees.  Except as expressly provided otherwise in this Agreement, all costs and expenses, including attorney's fees, incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the Party incurring such expenses.

Section 5.03    Further Assurances.  Subject to the terms and conditions of this Agreement, at any time or from time to time after the Closing, at any Party's request and without further consideration, the other Party shall execute and deliver to such Party such other instruments of sale, transfer, conveyance, assignment and confirmation, provide such information and take such other actions and execute and deliver such other documents as such Party may reasonably request in order to consummate the transaction contemplated in this Agreement, including but not limited to the transfer, registration, or assignment of the UPC Codes. As it regards the transfer, registration, or assignment of the UPC Codes, Purchaser shall be solely responsible for any expense or costs incurred. For all other further assurances, neither Seller nor Purchaser shall be required to undertake any action that is likely to result in a material expense for Party unless the requesting Party agrees to reimburse the Party for such expense.

Section 5.04    Financing Cooperation:  Seller shall provide Purchaser with such cooperation and information as Purchaser reasonably may request, from time to time, in refinancing or modifying any Senior Financing that is secured against the Transferred Assets provided, however, that to the extent such cooperation requires Seller to incur out of pocket costs, including without limitation compensation of employees and/or consultants, Purchaser shall promptly reimburse Seller for such reasonable costs upon receipt of an invoice requesting such reimbursement.

Section 5.05    Confidentiality.  Each Party has furnished and will continue to furnish to the other Party certain information relating, directly or indirectly, to Purchaser, Seller and Transferred Assets, which is either non-public, confidential or proprietary in nature. Such information, together with all analyses, compilations, data, studies or other documents containing or based in whole or in part on any such furnished information is hereinafter referred to as "**Confidential Information**." The terms of this Agreement shall be deemed to be Confidential Information. Subject to the requirements of applicable Laws or any order of a Governmental Authority, each of the Parties hereby agrees to (i) treat the Confidential Information as confidential and use the same standard of care in handling such information as they use with respect to their own confidential information, but in no event less than a reasonable standard of care, (ii) prior to Closing, use the Confidential Information solely in connection with the consummation of the transactions contemplated by this Agreement, and (iii) transmit the Confidential Information only to those Representatives who need to know the Confidential Information; provided that each Party may use Confidential Information, as required, in filings, submissions and other



correspondence to obtain Seller Governmental Approvals, Seller Third Party Consents, Purchaser Government Approvals and Purchaser Third Party Consents. Notwithstanding any other provisions hereof, after the Closing, (x) each Party agrees to maintain the confidentiality of and not to disclose to any other Person any of the Confidential Information it received from the other Party, and (y) each Party may disclose Confidential Information pursuant to its obligations under Law for purposes of filing tax returns, financial reporting, as required in connection with regulatory compliance, or in any action a Party may have to enforce its rights against the other Party relating to the transactions contemplated by this Agreement,.

Section 5.06    Insurance. As it concerns the Transferred Assets, Seller has secured and shall maintain, at Seller's sole expense, the insurance so identified in Schedule 3.12 for the period described therein.

Section 5.07    Restrictive Covenants.   As a condition and material inducement to Purchaser's willingness to enter into this Agreement and purchase the Transferred Assets, and in particular the Inventory, and to protect the value of the Inventory and Transferred Assets, Seller hereby covenants and agrees as follows: For a period (the "**Restrictive Period**") commencing on the Closing Date and ending on the second (2nd) anniversary of the Closing Date, neither Seller nor its Related Persons or their respective Affiliates shall directly or indirectly, own, control, operate, conduct, engage in, participate in, consult with, perform services for, or otherwise carry on, any heated product production, distribution, marketing or sales business or any other enterprise that competes with the Heating Products anywhere in the world (the "**Territory**").  During the Restrictive Period, neither Seller nor its Related Persons or their respective Affiliates shall, directly or indirectly, solicit any accounts of Purchaser related to the Heating Products for the purpose of attempting to interfere with or damage the business relationship between Purchaser, on the one hand, and any third party involved in the manufacturing, marketing, distribution or sale of the Heating Products. The Parties agree that a breach or threatened breach of any covenant set forth in this Section 5.07 could cause irreparable harm to Purchaser, that Purchaser's remedies at Law upon any such breach would be inadequate, and that, accordingly, upon any such breach or threatened breach Purchaser may seek a restraining order or injunction or both against the Seller, Seller's Affiliates or Related Persons, in addition to any other rights and remedies which are available at Law for beach of the covenant. If any provision of this Section 5.07 shall be determined to be invalid or unenforceable, such invalid or unenforceable term shall be deemed amended to allow as to such maximum time and territory and to such other extent as such court (or arbitral tribunal) may judicially determine or indicate to be reasonable.

Notwithstanding the foregoing, and for the avoidance of doubt, and provided Seller or its Related Persons and their Affiliates first obtains a commercially reasonable confidentiality agreement signed by the Third Party Purchaser, nothing shall restrict the Seller or its Related Persons and their Affiliates from (a) efforts to market and sell or otherwise assign patents or technological information to third parties ("**Third Party Purchaser**") in accordance with the License, and (b) following such sale or assignment of patents and/or technological information to the Third Party Purchaser, activities reasonably necessary to effectuate the intent of the sale or assignment of patents and/or technological information to the Third Party Purchaser.

### ARTICLE VI.
### CONDITIONS TO CLOSING

Section 6.01    Conditions to the Obligations of Each Party.  The obligations of the Parties to proceed with the Closing are subject to the satisfaction on or prior to the Closing Date of the following conditions, which may be waived in writing, in whole or in part, as to a Party by such Party:  no permanent judgment, injunction, order or decree of a court or other Governmental Authority of competent jurisdiction shall be in effect which has the effect of making the transactions contemplated by this Agreement illegal or otherwise restraining or prohibiting the consummation of the transactions contemplated by this



Agreement (each Party agreeing to use its reasonable commercial efforts, including appeals to higher courts, to have any judgment, injunction, order or decree lifted).

Section 6.02    Conditions to the Obligations of Purchaser.  The obligation of Purchaser to proceed with the Closing is subject to the satisfaction on or prior to the Closing Date of the following further conditions, any one or more of which may be waived, in whole or in part, by Purchaser:

(a)  Seller has performed all of its obligations and complied with all covenants, agreements, and conditions hereunder required to be performed by it at or prior to the Closing Date in all respects;

(b)  Seller shall have paid in full all outstanding debts and secured the release of all Liens against the Transferred Assets.

(c)  the representations and warranties of Seller contained in this Agreement (without regard to any materiality, material adverse effect or similar qualifiers)  are true and correct as of the Closing Date (except to the extent such representations and warranties expressly relate to an earlier date, in which case as of such earlier date); and

(d)  all required Government Approvals have been obtained and are in form and substance satisfactory to Purchaser.

(e)  Seller shall have secured consents of all third parties, if any, necessary for Seller to execute, deliver and perform this Agreement.

(f)  Purchaser has received the documents from Seller set forth in Section 2.08.

Section 6.03    Conditions to the Obligations of Seller.  The obligation of Seller to proceed with the Closing is subject to the satisfaction on or prior to the Closing Date of the following further conditions, any one or more of which may be waived, in whole or in part, by Seller:

(a)  Purchaser has performed all of its obligations and complied with all covenants, agreements, and conditions hereunder required to be performed by it at or prior to the Closing Date in all respects;

(b)  the representations and warranties of Purchaser contained in this Agreement (without regard to any materiality, material adverse effect or similar qualifiers) are true and correct as of the Closing Date (except to the extent such representations and warranties expressly relate to an earlier date, in which case as of such earlier date);

(c)  All Governmental Approvals, if any, have been obtained and are in form and substance satisfactory to Seller; and

(d)  Seller has received the documents from Purchaser set forth in Section 2. 09.

## ARTICLE VII.
## INDEMNIFICATION: LIMITATION OF WARRANTIES

Section 7.01    Survival.

(a)  All the representations and warranties set forth in this Agreement, are as of the date of Closing and not thereafter. All representations and warranties shall survive the execution and delivery hereof and the Closing Date but shall terminate two (2) years after the Closing Date.

(b)   No Party may make or assert any Claim under any representation or warranty of, or breach of covenant by, any other Party contained in this Agreement or in any agreement, instrument or other document delivered in connection herewith after the expiration of the survival period of such representation, warranty or covenant, except that any Claims made or asserted by a Party within the applicable time period prescribed above setting forth such Claim in reasonable detail (including a reasonable specification of the legal and factual basis for such Claim and the Loss



incurred) shall survive such expiration until such Claim is finally resolved and all obligations with respect thereto are fully satisfied.

Section 7.02    Indemnification.

(a) Subject to the provisions of this Article VII, Seller, from and after the Closing Date, shall indemnify, defend and hold harmless Purchaser and its Related Persons from and against any and all Loss or Claims that arise out of, relate to, or result from (i) any inaccuracy of any of the representations and warranties as of the date when made, or (ii) the breach of any of the covenants or agreements of Seller contained in this Agreement or any Ancillary Agreement; (iii) Claims arising from any manufacturing or product defects regarding the Inventory; (iv) any Bulk Sales Claims; (v) Liabilities; (vi) Transfer Taxes as provided in Section 2.06; or (vii) Claims arising from or related to the matters set forth in **Schedule 3.06**. Purchaser shall have the right to set off any Claim for indemnification from Seller against any payment of the Purchase Price to the extent that such Claim for indemnification: 1) has been agreed upon by the Parties; 2) has been determined by a non-appealable final order of a court with appropriate jurisdiction; or 3) relates to any Bulk Sales Claims. In addition, each calendar year, beginning with the calendar year of the Effective Date, Purchaser shall have the right to set off against the Purchase Price any Claims for indemnification, whose liability in the aggregate with any other Claims made during that same calendar year (excluding those Claims agreed to by the Parties, determined by a final order, or relating to Bulk Sales Claims, as set forth in preceding sentence) has been valued (in Purchaser's sole and absolute discretion) to be Twenty Thousand dollars ($20,000) or less. In the event that Purchaser is not entitled to a set off against the Purchase Price as provided in the preceding sentence, Purchaser shall be entitled to withhold from payment of the Purchase Price an amount equal to the value (as determined in Purchaser's sole and absolute discretion) of any Claim for indemnification (less any unused portion of the aggregate $20,000, which shall be offset against the Purchase Price as provided in the preceding sentence) and shall deposit such withholdings into escrow. Any sums deposited into escrow shall only be released in accordance with: 1) a written agreement of the Parties; or 2) a non-appealable final order of a court with appropriate jurisdiction. The Parties agree to execute all escrow instructions necessary, or reasonably requested by escrowholder, to ensure the escrowed funds are released from escrow in accordance with this Section 7.02(a). All escrow costs shall be shared equally by the Parties.

(b) Subject to the provisions of this Article VII, Purchaser, from and after the Closing Date, shall indemnify, defend and hold harmless Seller and its Related Persons from and against any and all Losses and Claims that arise out of, relate to, or result from the breach of any of Purchaser's (i) representations and warranties as of the date when made, (ii) covenants or agreements contained in this Agreement; and (iii) Purchaser's handling, distribution and/or sale of Inventory as of and after the Delivery Date, unless related to or arising from Claims arising from any defects in the Inventory not caused by Purchaser.

(c) The indemnification obligations of the parties set forth in this Agreement shall survive the termination of this Agreement and the consummation of the purchase and sale of the Transferred Assets.

(d) Any indemnification payment made pursuant to this Section 7.02 shall be treated as an adjustment to the Purchase Price for Tax purposes unless otherwise required by applicable Law.

Section 7.03    THE INDEMNIFICATION PROVISIONS IN THIS ARTICLE 7 SHALL BE ENFORCEABLE REGARDLESS OF WHETHER THE LIABILITY IS BASED UPON PAST, PRESENT OR FUTURE ACTS, CLAIMS OR LEGAL REQUIREMENTS (INCLUDING ANY PAST, PRESENT OR FUTURE FRAUDULENT TRANSFER ACT, PRODUCTS LIABILITY, OR OTHER LEGAL REQUIREMENT) AND REGARDLESS OF WHETHER ANY PERSON (INCLUDING THE PERSON FROM WHOM INDEMNIFICATION IS SOUGHT) ALLEGES OR PROVES THE SOLE,



CONCURRENT, CONTRIBUTORY OR COMPARATIVE NEGLIGENCE OF THE PERSON
SEEKING INDEMNIFICATION OR THE SOLE OR CONCURRENT STRICT LIABILITY IMPOSED
UPON THE PERSON SEEKING INDEMNIFICATION.

Section 7.04     Certain Limitations.  Notwithstanding anything in this Agreement to the contrary:

(a)  Except in the event of fraud, no Related Person of Seller shall have any personal liability to
Purchaser or any other Person as a result of the breach of any representation, warranty, covenant,
agreement or obligation of Seller in this Agreement and no Related Person of Purchaser shall
have any personal liability to Seller or any other Person as a result of the breach of any
representation, warranty, covenant, agreement or obligation of Purchaser in this Agreement; and

Section 7.05     Procedures for Indemnification.

(a)  Whenever a Claim shall arise for indemnification under Section 7.02(a) or Section 7.02(b) of this
Agreement, the Person entitled to indemnification (the "**Indemnified Party**") shall promptly
notify in writing the Party from which indemnification is sought (the "**Indemnifying Party**") of
such Claim and, when known, the facts constituting the basis of such Claim, and shall provide the
Indemnifying Party a reasonable opportunity to cure the Claim (a "reasonable opportunity" shall
in no event be longer than thirty (30) days).  In the event of a Claim for indemnification resulting
from or in connection with a Claim by a third party, the Indemnified Party shall give such written
notice thereof to the Indemnifying Party not later than ten (10) Business Days prior to the time
any response to the third party Claim is required, if possible, and in any event within fifteen (15)
Business Days following receipt of notice thereof; provided, that failure to timely notify the
Indemnifying Party shall not relieve the Indemnifying Party of any liability it may have to the
Indemnified Party, except to the extent that the Indemnifying Party has been actually prejudiced
by such failure.  Following receipt of notice of any such third party Claim, and unless counsel to
the Indemnifying Party shall have reasonably determined that the assumption of such defense by
the Indemnifying Party would be inappropriate due to a conflict of interest, the Indemnifying
Party shall have the option, at its sole cost and expense, to assume the defense of such matter and
to retain counsel to defend any such Claim or legal proceeding.  The Indemnifying Party shall be
liable for and pay all costs related to the defense against such third party Claim incurred by the
Indemnified Party (including reasonable and documented fees and expenses of counsel employed
by the Indemnified Party but excluding, for the avoidance of doubt, any amounts paid by the
Indemnified Party in settlement of such Claim without the express written consent of the
Indemnifying Party) for any period during which the Indemnifying Party has not assumed the
defense of such third party Claim and has agreed that it is obligated to indemnify the Indemnified
Party against such Claim.  The Indemnifying Party shall conduct the defense of any third party
Claim actively and diligently and in good faith.  The Indemnified Party shall have the option of
joining the Indemnifying Party's defense of such Claim (which shall be at the sole cost and
expense of the Indemnified Party) with its own counsel and counsel for each Party shall, to the
extent consistent with such counsel's professional responsibilities, cooperate with the other Party
and any counsel designated by that Party.

(b)  If (i) notice is given to the Indemnifying Party of the commencement of any third party legal
proceeding and the Indemnifying Party does not, within thirty (30) days after the Indemnified
Party's notice is given, give notice to the Indemnified Party of its election to assume the defense
of such legal proceeding; (ii) the Indemnifying Party fails to conduct the defense of such third
party Claim actively and diligently and in good faith (in the reasonable determination of the
Indemnified Party) or (iii) the Indemnifying Party reasonably determines in good faith that joint
representation would be inappropriate because of a conflict in interest, then in any such event the
Indemnified Party shall (upon notice from the Indemnifying Party) have the right to undertake the
defense, compromise or settlement of such third party Claim, and the Indemnifying Party shall



reimburse the Indemnified Party for the costs of defending against such third party Claim (including reasonable and documented attorneys' fees and expenses but excluding, for the avoidance of doubt, any amounts paid by the Indemnified Party in settlement of such Claim without the express written consent of the Indemnifying Party) and shall remain otherwise responsible for any liability with respect to amounts arising from or related to such third party Claim. The Indemnifying Party may elect to participate in such legal proceedings, negotiations or defense at any time at its own expense.

(c)  In effecting the settlement or compromise of, or consenting to the entry of any judgment with respect to, any third party Claim, the Indemnifying Party, or the Indemnified Party, as the case may be, shall act in good faith, shall consult with the other Party and shall enter into only such settlement or compromise or consent to the entry of any judgment as the other Party shall consent, such consent not to be unreasonably withheld, conditioned or delayed. An Indemnifying Party shall not be liable for any settlement, compromise or judgment not made in accordance with the preceding sentence.

## ARTICLE VIII.
## MISCELLANEOUS

Section 8.01   Notices.  All notices and other communications hereunder shall be in writing and shall be deemed given if delivered personally, or by nationally recognized overnight courier service, or sent via facsimile or email (return receipt requested) at the addresses (or at such other address for a Party as shall be specified by like notice) set forth below. If delivered personally, notice shall be deemed received when delivered, and if delivered  by nationally recognized overnight courier service, or sent via facsimile or email (return receipt requested) shall and deemed received by the Party 48 hours after mailing, or sending the facsimile or e-mail.

(a)  If to the Seller, to:

> Schawbel Technologies, LLC.
>
> 67 Bedford Street, Suite 400 W
>
> Burlington MA 01803
> Attention: William Schawbel
> Facsimile:
> Email: bill@schawbeltech.com

b)  If to Purchaser, to:

> Heat Factory, USA, Inc.
>
> 1958 Kellogg Ave.
>
> Carlsbad, CA 92008
> Attention: David Treptow
> Facsimile: 760-893-8301
> Email: dave@heatfactoryusa.com
>
> with a copy to:
>
> Murtaugh Meyer Nelson & Treglia LLP
>
> 2603 Main Street, 9th Fl.
>
> Irvine, CA 92614
>
> Attention: Michelle Generaux
> Facsimile: 949-794-4099



Email: mgeneraux@mmnt.com

Section 8.02    Headings.  The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

Section 8.03    Assignment.  Neither this Agreement nor any of the Parties' rights or obligations hereunder shall be assignable by any Party without the prior written consent of the other Party, and any such assignment without such consent shall be void and ineffective.

Section 8.04    Costs of Collection.  In the event that Purchaser shall fail to pay any installment of the Cash Purchase Price when due, interest on such payment, calculated at an annual compounded rate of fifteen percent (15%), shall accrue and be payable by Purchaser and Seller also shall be entitled to reimbursement by Purchaser of all costs incurred by Seller in collecting from Purchaser (including all reasonable fees of counsel to Seller).

Section 8.05    Governing Law; Jurisdiction; Waiver of Jury Trial.  This Agreement and any Claim, controversy or dispute arising under or in relation to this Agreement or the relationship of the Parties shall be governed by and construed in accordance with the Laws of the Commonwealth of Massachusetts, without regard to any conflict of Laws principles thereof that would require or permit the application of the Law of another jurisdiction. Each of the Parties hereto acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues, and therefore each such Party hereby irrevocably and unconditionally waives any right such Party may have to a trial by jury in respect of any litigation directly or indirectly arising or relating to this Agreement or the transactions contemplated by this Agreement. Each of the Parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law.  This consent to jurisdiction is being given solely for purposes of this Agreement and the transactions contemplated hereunder, and is not intended to, and shall not, confer consent to jurisdiction with respect to any other dispute in which a Party to this Agreement may become involved. Each of the Parties hereto hereby consents to process being served by any Party to this Agreement in any suit, action, or proceeding by the mailing of a copy thereof in the manner specified by the provisions of Section 9.01.

Section 8.06    Counterparts.  This Agreement may be executed in two (2) or more counterparts, and by facsimile, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

Section 8.07    Amendments.  This Agreement may not be amended, waived or modified except by an instrument in writing signed on behalf of each of Purchaser and Seller.

Section 8.08    Entire Agreement.  This Agreement and the Ancillary Agreements and the Schedules constitute the entire agreement between the Parties with respect to the subject matter hereof and supersede all prior agreements, understandings and negotiations, both written and oral, between the Parties with respect to the subject matter of this Agreement.  No representation, inducement, promise, understanding, condition or warranty not set forth herein has been made or relied upon by any Party.  Neither this Agreement nor any provision hereof is intended to confer upon any Person other than the Parties hereto any rights or remedies hereunder.

Section 8.09    No Waivers.  Except as otherwise expressly provided in this Agreement, no failure to exercise, delay in exercising, or single or partial exercise of any right, power or remedy by any Party and no course of dealing between the Parties, shall constitute a waiver of any such right, power or remedy. No waiver by a Party of any default, misrepresentation, or breach of warranty or covenant under this Agreement, whether intentional or not, shall be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or covenant under this Agreement or affect in any way any



rights arising by virtue of any prior or subsequent such occurrence. No waiver shall be valid unless in writing and signed by the Party against whom such waiver is sought to be enforced.

Section 8.10    Attorney Fees and Costs. In the event of any controversy, Claim or dispute between the parties to this Agreement, arising out of or relating to this Agreement, its enforcement or interpretation, or any breach of any provision of this Agreement, the prevailing party, in addition to its other remedies, shall be entitled to recover from the losing party the prevailing party's reasonable expenses, attorney fees, and costs, including those incurred on appeal and for enforcement of an award or judgment.

Section 8.11    Severability. If any provision of this Agreement is determined by a Court of competent jurisdiction to be unenforceable, the remaining provisions shall continue in full force and effect.

Section 8.12    Successors. This Agreement shall be binding upon and inure to the benefit of the heirs, and permitted successors and assigns of the parties of the Agreement.

*[signatures on next page]*



IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by their respective authorized Representative as of the Effective Date.

**SELLER:**

Schawbel Technologies LLC.

By:_____

Name:

Title:

**PURCHASER:**

Heat Factory, USA, Inc.

By:_____  7-19-17

Name:  David Treptow

Title: President

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by their respective authorized Representative as of the Effective Date.

**SELLER:**

Schawbel Technologies LLC.

By:
Name:
Title: C.E.O.

**PURCHASER:**

Heat Factory, USA, Inc.

By:
Name:  David Treptow

Title: President

Asset Purchase Agreement Documents

| Schedule/Exhibits | Description | Completed |
|---|---|---|
| Schedule A | Inventory | X |
| Schedule A-1 | Inventory True-Up Value | X |
| Schedule B | UPC Codes | X |
| Schedule C | Certifications | X |
| Exhibit 2.08(a) | Assignment of Intangible Assets | X |
| Exhibit 2.08(c) | Seller's Authority | X |
| Exhibit 2.08(e) | Seller's Bill of Sale | X |
| Exhibit 2.08(f) | Letters from President of Schawbel Corporation | X |
| Exhibit 2.09(c) | Purchaser's Authority | X |
| Schedule 3.06 | Inventory Claims | X |
| Schedule 3.12 | Seller's Insurance | X |
| Schedule 4.03(c) | Purchaser Governmental Approvals | X |

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC Asset Purchase Agreement

Buyer            Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

Asset Purchase Agreement Documents

| Schedule/Exhibits | Description | Completed |
|---|---|---|
| Schedule A | Inventory | x |
| Schedule A-1 | Inventory True-Up Value | x |
| Schedule B | UPC Codes | x |
| Schedule C | Certifications | x |
| Exhibit 2.08(a) | Assignment of Intangible Assets | x |
| Exhibit 2.08(c) | Seller's Authority | x |
| Exhibit 2.08(e) | Seller's Bill of Sale | x |
| Exhibit 2.08(f) | Letters from President of Schawbel Corporation | x |
| Exhibit 2.09(c) | Purchaser's Authority | x |
| Schedule 3.06 | Inventory Claims | x |
| Schedule 3.12 | Seller's Insurance | x |
| Schedule 4.03(c) | Purchaser Governmental Approvals | x |

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

_____     _____
Buyer                         Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

## SCHEDULE A

## INVENTORY

See attached list which is incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

Buyer          Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

## SCHEDULE A
## INVENTORY

See attached list which is incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

_____   _____
Buyer        Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

## SCHEDULE A

| | On Hand | Calculated Avg | Asset Value |
|---|---|---|---|
| HW-18MEN-DUMMY (Heated Insoles 18ProFLEX Dummy) | 0.00 | 0.00 | 0.00 |
| HW20-12MEN-D (Heated Insoles ProFLEX Display (4L 6XL 2XXL 6XB)) | 0.00 | 644.22 | 0.00 |
| HW20-12MEN-D(CA) (Heated Insoles ProFLEX Display (4L 6XL 2XXL 6XB)) | 0.00 | 649.38 | 0.00 |
| HW20-12MEN-DUMMY (Heated Insoles ProFLEX Dummy Display) | 0.00 | 0.00 | 0.00 |
| HW20-12MEN-DUMMY (CA) (Heated Insole ProFlex Dummy display) | 0.00 | 0.00 | 0.00 |
| HW20-12MWY-D (Heated Insole ProFLEX Display (2S, 2M, 2L, 4XL, 2XXL, 6XB)) | 0.00 | 654.75 | 0.00 |
| HW20-12MWY-D(CA) (Heated Insoles ProFLEX Sidekick Display (2S, 2M, 2L, 4XL, 2XXL,... | 0.00 | 690.26 | 0.00 |
| HW20-18MEN-D (Heated Insole ProFLEX Display (6L, 9XL, 3XXL, 9XB)) | 0.00 | 968.54 | 0.00 |
| HW20-18MEN-D(CA) (Heated Insole ProFLEX Display (6L, 9XL, 3XXL, 9XB)) | 0.00 | 994.67 | 0.00 |
| HW20-18MWY-D (Heated Insoles ProFLEX Sidekick Display (3S, 3M, 3L, 6XL, 3XXL, 9XB)) | 1.00 | 998.80 | 998.80 |
| HW20-18MWY-D(CA) (Heated Insoles ProFLEX Sidekick Display (3S, 3M, 3L, 6XL, 3XXL,... | 0.00 | 1,007.78 | 0.00 |
| HW20-L (Heated Insoles ProFLEX - Large) | -429.00 | 46.68 | -20,026.27 |
| HW20-L-06 (Heated Insoles ProFLEX - Large (6 HW20-L/Case)) | 1,439.00 | 278.78 | 401,164.36 |
| HW20-L-06 (CA) (Heated Insoles ProFLEX - Large (6 HW20-L/Case)) | 176.00 | 291.90 | 51,374.40 |
| HW20-L-06(AU) (Heated Insoles ProFLEX - Large (6 HW20-L/Case)(AU)) | 0.00 | 260.88 | 0.00 |
| HW20-L (CA) (Heated Insoles ProFLEX - Large) | -100.00 | 46.07 | -4,607.05 |
| HW20-M (Heated Insoles ProFLEX - Medium) | 368.00 | 46.57 | 17,136.05 |
| HW20-M-06 (Heated Insoles ProFLEX - Medium (6 HW20-M/Case)) | 1,126.00 | 278.78 | 313,906.24 |
| HW20-M-06 (CA) (Heated Insoles ProFLEX - Medium (6 HW20-M/Case)) | 55.00 | 291.90 | 16,054.50 |
| HW20-M-06(AU) (Heated Insoles ProFLEX - Medium (6 HW20-M/Case) (AU)) | 0.00 | 260.88 | 0.00 |
| HW20-M (CA) (Heated Insoles ProFLEX - Medium) | -60.00 | 48.65 | -2,919.00 |
| HW20-NXC (Heated Insoles ProFLEX Display (3M 5L 8XL 2XXL 9XB)) | 0.00 | 0.00 | 0.00 |
| HW20-P-LXB (Heated Insoles ProFLEX Pack - 1L, 1XB) | 0.00 | 0.00 | 0.00 |
| HW20-P-LXB-03 (Heated Insoles ProFLEX Pack - 3L, 3XB) | 0.00 | 181.84 | 0.00 |
| HW20-P-MXB (Heated Insoles ProFLEX Pack - 1M, 1XB) | 0.00 | 0.00 | 0.00 |
| HW20-P-MXB-03 (Heated Insoles ProFLEX Pack - 3M, 3XB) | 0.00 | 183.53 | 0.00 |
| HW20-P-SXB (Heated Insoles ProFLEX Pack - 1S, 1XB) | 0.00 | 0.00 | 0.00 |
| HW20-P-SXB-03 (Heated Insoles ProFLEX Pack - 3S, 3XB) | 0.00 | 182.15 | 0.00 |
| HW20-P-XLXB (Heated insoles ProFLEX Pack - 1XL, 1XB) | 0.00 | 0.00 | 0.00 |
| HW20-P-XLXB-03 (Heated Insoles ProFLEX Pack - 3XL, 3XB) | 0.00 | 182.25 | 0.00 |
| HW20-P-XXLXB (Heated Insoles ProFLEX Pack - 1XXL, 1XB) | 0.00 | 0.00 | 0.00 |
| HW20-P-XXLXB-03 (Heated Insoles ProFLEX Pack - 3XXL, 3XB) | 0.00 | 182.21 | 0.00 |
| HW20-S (Heated Insoles ProFLEX - Small) | 546.00 | 46.46 | 25,368.74 |
| HW20-S-06 (Heated Insoles ProFLEX - Small (6 HW20-S/Case)) | 521.00 | 278.78 | 145,244.32 |
| HW20-S-06 (CA) (Heated Insoles ProFLEX - Small (6 HW20-S/Case)) | 222.00 | 291.90 | 64,801.80 |
| HW20-S-06(AU) (Heated Insoles ProFLEX - Small (6 HW20-S/Case) (AU)) | 0.00 | 260.88 | 0.00 |
| HW20-S (CA) (Heated Insoles ProFLEX - Small) | 2.00 | 52.03 | 104.06 |
| HW20-XB (Heated Insoles ProFLEX - Battery Pack) | -284.00 | 14.29 | -4,058.36 |
| HW20-XB-06 (Heated Insoles ProFLEX - Battery Pack (6 HW20-XB/Case)) | 3,345.00 | 80.52 | 269,353.01 |
| HW20-XB-06 (CA) (Heated Insoles ProFLEX - Battery Pack (6 HW20-XB/Case)) | 1,089.00 | 78.26 | 85,220.16 |
| HW20-XB-06(AU) (Heated Insoles ProFLEX - Battery Pack (6HW20-XB/Case) (AU)) | 0.00 | 77.04 | 0.00 |
| HW20-XB-B2 (2-Pack ProFLEX Loose Batteries) | 3,364.00 | 7.68 | 25,835.52 |
| HW20-XB-B2 (CA) (2-Pack ProFLEX Loose Batteries) | 443.00 | 7.68 | 3,402.24 |
| HW20-XB (CA) (Heated Insoles ProFLEX - Battery Pack) | -42.00 | 13.50 | -567.00 |
| HW20-XB84365 (ProFLEX Battery Packs OUPC) | 413.00 | 14.29 | 5,901.77 |
| HW20-XL (Heated Insoles ProFLEX - X-Large) | -891.00 | 46.47 | -41,404.72 |

## SCHEDULE A

| | On Hand | Calculated Avg | Asset Value |
|---|---|---|---|
| HW20-XL-06 (Heated Insoles ProFLEX - X-Large (6 HW20-XL/Case)) | 839.00 | 251.08 | 210,659.35 |
| HW20-XL-06 (CA) (Heated Insoles ProFLEX - X-Large (6 HW20-XL/Case)) | 218.00 | 291.90 | 63,634.20 |
| HW20-XL-06(AU) (Heated Insoles ProFLEX - XLarge (6 HW20-XL/Case) (AU)) | 0.00 | 260.88 | 0.00 |
| HW20-XL (CA) (Heated Insoles ProFLEX - X-Large) | -83.00 | 46.62 | -3,869.54 |
| HW20-XXL (Heated Insoles ProFLEX - XX-Large) | -152.00 | 46.46 | -7,061.91 |
| HW20-XXL-06 (Heated Insoles ProFLEX - XX-Large (6 HW20-XXL/Case)) | 491.00 | 278.78 | 136,881.01 |
| HW20-XXL-06 (CA) (Heated Insoles ProFLEX - XX-Large (6 HW20-XXL/Case)) | 596.00 | 291.90 | 173,972.40 |
| HW20-XXL-06(AU) (Heated Insoles ProFlex - XXLarge (6 HW20-XXL/Case) (AU)) | 0.00 | 260.88 | 0.00 |
| HW20-XXL (CA) (Heated Insoles ProFLEX - XX-Large) | 14.00 | 49.10 | 687.44 |
| INSDISPLAY-MT (Empty Display) | 0.00 | 0.00 | 0.00 |
| INSDISPLAY-MT-P (Empty ProFlex displays) | 0.00 | 0.00 | 0.00 |
| INSLDISPLAY-DUMMY-GANDER (DUMMY DISPLAY) | 0.00 | 0.00 | 0.00 |
| INSLDISPLAY-MT-P(CA) (Empty Proflex display) | 0.00 | 0.00 | 0.00 |
| INSLDISPLAY-MT(CA) (Empty base model display CA) | 0.00 | 0.00 | 0.00 |
| PAK-3S3L (Heat Packs - 3 Hand Warmers (2 pack) and 3 Pocket Warmers (1 pack)) | 0.00 | 0.00 | 0.00 |
| PAK-BL (Heat Packs - Bluetooth Pocket Warmer (1 pack) ) | -55.00 | 29.54 | -1,624.82 |
| PAK-BL-6 (Heat Packs - Bluetooth Pocket Warmer (1 pack) (6-L/Case) ) | 235.00 | 177.26 | 41,656.10 |
| PAK-BL-6(CA) (Heat Packs - Bluetooth Pocket Warmer (1 pack) (6-L/Case) ) | 0.00 | 0.00 | 0.00 |
| PAK-BL(CA) (Heat Packs - Bluetooth Pocket Warmer (1 pack) ) | 0.00 | 0.00 | 0.00 |
| PAK-L (Heat Packs - Pocket Warmer (1 pack)) | -2.00 | 20.71 | -41.42 |
| PAK-L-06 (Heat Packs - Pocket Warmer [1 pack] (6 PAK-L/Case)) | 5,002.00 | 124.26 | 621,548.52 |
| PAK-L-06(AU) (Heat Packs - Hand Warmers [1 pack] (6 PAK-L/Case) (AU)) | 0.00 | 127.92 | 0.00 |
| PAK-L-06(CA) (Heat Packs - Pocket Warmer [1 pack] (6 PAK-AL/Case)) | 1,509.00 | 121.68 | 183,615.12 |
| PAK-L-06NT | 405.00 | 124.26 | 50,325.30 |
| PAK-L (CA) (Heat Packs - Pocket Warmer (1 pack)) | 38.00 | 20.28 | 770.64 |
| PAK-P-1S1L (Heat Pack Bundle (1 Hand Warmer, 1 Pocket Warmer)) | 0.00 | 0.00 | 0.00 |
| PAK-P-1S1L-03 (Heat Pack Bundle (1 Hand Warmer, 1 Pocket Warmer) Case of 3) | 0.00 | 136.11 | 0.00 |
| PAK-S (Heat Packs - Hand Warmers (2 pack)) | -604.00 | 25.39 | -15,335.56 |
| PAK-S-06 (Heat Packs - Hand Warmers [2 pack] (6 PAK-S/Case)) | 4,114.00 | 152.33 | 626,685.62 |
| PAK-S-06 (CA) (Heat Packs - Hand Warmers [2 pack] (6 PAK-S/Case)) | 1,346.00 | 149.04 | 200,607.84 |
| PAK-S-06(AU) (Heat Packs - Hand Warmers [2 pack] (6 PAK-S/Case) (AU)) | 0.00 | 155.28 | 0.00 |
| PAK-S-06NT | 131.00 | 152.33 | 19,955.23 |
| PAK-S (CA) (Heat Packs - Hand Warmers (2 pack)) | -13.00 | 24.84 | -322.92 |
| PAK-S12L6-D (Heat Packs - 12 Hand Warmers (2 pack) 6 Pocket Warmers (1 pack)) | 0.00 | 0.00 | 0.00 |
| PFHD-12MEN-D (ThermaCELL Heated Insoles ProFLEX Heavy Duty Sidekick Display) | 0.00 | 692.04 | 0.00 |
| PFHD-12MEN-D(CA) (ProFLEX Heavy Duty Sidekick (4L, 6XL, 2XXL, 6XB)) | 0.00 | 0.00 | 0.00 |
| PFHD-12MWY-D (ThermaCELL Heated Insoles ProFLEX Heavy Duty Sidekick Display) | 0.00 | 0.00 | 0.00 |
| PFHD-12MWY-D(CA) (ProFLEX Heavy Duty Sidekick (2S, 2M, 2L, 4XL, 2XXL, 6XB)) | 0.00 | 0.00 | 0.00 |
| PFHD-18MEN-D (ThermaCELL Heated Insoles ProFLEX Heavy Duty Sidekick Display) | 0.00 | 0.00 | 0.00 |
| PFHD-18MEN-D(CA) (ProFLEX Heavy Duty Sidekick (6L, 9XL, 3XXL, 9XB)) | 0.00 | 0.00 | 0.00 |
| PFHD-18MWY-D (ThermaCELL Heated Insoles ProFLEX Heavy Duty Sidekick Display) | 0.00 | 0.00 | 0.00 |
| PFHD-18MWY-D(CA) (ProFLEX Heavy Duty Sidekick (3S, 3M, 3L, 6XL, 3XXL, 9XB)) | 0.00 | 0.00 | 0.00 |
| PFHD-L (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Large ) | 544.00 | 48.81 | 26,551.08 |
| PFHD-L-6 (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Large (6-L/Case) ) | 278.00 | 288.87 | 80,306.76 |
| PFHD-L-6(CA) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Large (6-L/Case) ) | 214.00 | 294.65 | 63,055.10 |
| PFHD-L-6(SWD) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Large (6-L/Case... | 0.00 | 297.42 | 0.00 |

# SCHEDULE A

| | On Hand | Calculated Avg | Asset Value |
|---|---|---|---|
| PFHD-L(CA) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Large ) | -19.00 | 52.62 | -999.69 |
| PFHD-L(SWD) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Large ) | 0.00 | 49.57 | 0.00 |
| PFHD-M (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Medium ) | -41.00 | 48.27 | -1,978.97 |
| PFHD-M-6 (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Medium (6-M/Case) ) | 84.00 | 289.01 | 24,277.08 |
| PFHD-M-6(CA) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Medium (6-M/Case... | 74.00 | 294.65 | 21,804.10 |
| PFHD-M-6(SWD) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Medium (6-M/Cas... | 0.00 | 297.42 | 0.00 |
| PFHD-M(CA) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Medium ) | -19.00 | 49.11 | -933.07 |
| PFHD-M(SWD) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Medium ) | 0.00 | 49.57 | 0.00 |
| PFHD-S (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Small ) | 43.00 | 48.83 | 2,099.51 |
| PFHD-S-6 (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Small (6-S/Case) ) | -7.00 | 293.22 | -2,052.54 |
| PFHD-S-6(CA) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Small (6-S/Case) ) | -1.00 | 294.65 | -294.65 |
| PFHD-S-6(SWD) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Small (6-S/Case... | 0.00 | 297.42 | 0.00 |
| PFHD-S(CA) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Small ) | 86.00 | 49.11 | 4,223.41 |
| PFHD-S(SWD) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Small ) | 0.00 | 49.57 | 0.00 |
| PFHD-XB (Heated Insoles ProFLEX Heavy Duty Battery Pack ) | -72.00 | 17.60 | -1,267.20 |
| PFHD-XB-6 (Heated Insoles ProFLEX Heavy Duty Battery Pack (6-XB/Case) ) | 1,240.00 | 98.03 | 121,561.71 |
| PFHD-XB-6(CA) (Heated Insoles ProFLEX Heavy Duty Battery Pack (6-XB/Case) ) | 385.00 | 92.46 | 35,597.10 |
| PFHD-XB-6(SWD) (Heated Insoles ProFLEX Heavy Duty Battery Pack (6-XB/Case) ) | 0.00 | 101.70 | 0.00 |
| PFHD-XB(CA) (Heated Insoles ProFLEX Heavy Duty Battery Pack ) | -13.00 | 15.41 | -200.33 |
| PFHD-XB(SWD) (Heated Insoles ProFLEX Heavy Duty Battery Pack ) | 0.00 | 0.00 | 0.00 |
| PFHD-XL (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - X-Large ) | 506.00 | 48.83 | 24,709.22 |
| PFHD-XL-6 (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - X-Large (6-XL/Case) ) | 696.00 | 289.78 | 201,687.12 |
| PFHD-XL-6(CA) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - X-Large (6-XL/C... | 292.00 | 291.06 | 84,989.69 |
| PFHD-XL-6(SWD) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - X-Large (6-XL/... | 0.00 | 297.42 | 0.00 |
| PFHD-XL(CA) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - X-Large ) | -25.00 | 50.94 | -1,273.45 |
| PFHD-XL(SWD) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - X-Large ) | 0.00 | 49.57 | 0.00 |
| PFHD-XXL (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XX-Large ) | -5.00 | 47.92 | -239.60 |
| PFHD-XXL-6 (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XX-Large (6-XXL/Ca... | 303.00 | 289.80 | 87,808.26 |
| PFHD-XXL-6(CA) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XX-Large (6-XX... | 92.00 | 294.65 | 27,107.80 |
| PFHD-XXL-6(SWD) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XX-Large (6-X... | 0.00 | 297.42 | 0.00 |
| PFHD-XXL(CA) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XX-Large ) | 19.00 | 49.11 | 933.02 |
| PFHD-XXL(SWD) (Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XX-Large ) | 0.00 | 49.57 | 0.00 |
| QPUNASSEMBLED(CA) (QP components for display only, no shipping material) | 0.00 | 0.00 | 0.00 |
| SLSKIT (Custom Sales Kit) | 0.00 | 0.00 | 0.00 |
| THS-12DISP-G (Heated Insole Display (1M, 3L, 5XL, 3XXL, 3CC)) | 0.00 | 418.51 | 0.00 |
| THS-12MEN-D (Heated Insole Display(4L, 6XL, 2XXL, 3CC)) | 0.00 | 364.53 | 0.00 |
| THS-12MEN-D(CA) (Heated Insole Display (4L, 6XL, 2XXL, 3CC)) | 0.00 | 418.50 | 0.00 |
| THS-12MWY-D (Heated Insole Display (2S, 2M, 2L, 4XL, 2XXL, 3CC)) | 0.00 | 365.16 | 0.00 |
| THS-12MWY-D(CA) (Heated Insole Display (2S, 2M, 2L, 4XL, 2XXL, 3CC)) | 0.00 | 372.84 | 0.00 |
| THS-18MEN-D (Heated Insole Display (6L, 9XL, 3XXL, 3CC)) | 0.00 | 538.90 | 0.00 |
| THS-18MEN-D(CA) (Heated Insoles Display (6L, 9XL,3XXL,3CC)) | 0.00 | 608.23 | 0.00 |
| THS-18MEN-DUMMY (Heated Insoles 18Dummy Display (original)) | 0.00 | 0.00 | 0.00 |
| THS-18MWY-D (Heated Insole Display (3S, 3M, 3L, 6XL, 3XXL, 3CC)) | 0.00 | 537.69 | 0.00 |
| THS-18MWY-D (CA) (Heated Insole Display (3S, 3M, 3L, 6XL, 3XXL, 3CC)) | 0.00 | 563.81 | 0.00 |
| THS-DSG-18MEN-D (DSG Heated Insole Display (6L, 9XL, 3XXL, 3CC)) | 0.00 | 538.90 | 0.00 |
| THS01-12MEN-DUMMY (Heated Insole Dummy display (original)) | 0.00 | 0.00 | 0.00 |



# SCHEDULE A

|  | On Hand | Calculated Avg | Asset Value |
|---|---|---|---|
| THS01-12MEN-DUMMY (CA) (Heated Insole Dummy display (original)) | 0.00 | 0.00 | 0.00 |
| THS01-GC (Base Model Wall Charger) | -20.00 | 2.34 | -46.80 |
| THS01-GC(CA) (Base Model Wall Charger(CA)) | 19.00 | 0.00 | 0.00 |
| THS01-L (Heated Insoles - Large) | 5.00 | 29.31 | 146.54 |
| THS01-L-02 (Rechargeable Heated Insoles (2 THS01-L/case)) | 0.00 | 63.68 | 0.00 |
| THS01-L-06 (Heated Insoles - Large (6 THS01-L/Case)) | -1.00 | 175.84 | -175.84 |
| THS01-L-06 (CA) (Heated Insoles - Large (6 THS01-L/Case)) | -1.00 | 182.92 | -182.92 |
| THS01-L-06(NOR) (ThermaCELL Heated Insoles - Large (6 THS01-L/Case)) | 0.00 | 187.98 | 0.00 |
| THS01-L-06(SWD) (ThermaCELL Heated Insoles - Large (6 THS01-L/Case) ) | 0.00 | 187.98 | 0.00 |
| THS01-L (CA) (Heated Insoles - Large) | 6.00 | 30.36 | 182.16 |
| THS01-L(NOR) (THS01-L(NOR)) | 0.00 | 31.33 | 0.00 |
| THS01-L(SWD) (ThermaCELL Heated Insoles - Large   ) | 0.00 | 31.33 | 0.00 |
| THS01-LCC (Heated Insoles - Large with Car Charger) | 0.00 | 34.61 | 0.00 |
| THS01-M (Heated Insoles - Medium) | 5.00 | 29.01 | 145.03 |
| THS01-M-06 (Heated Insoles - Medium (6 THS01-M/Case)) | 0.00 | 173.79 | 0.00 |
| THS01-M-06 (CA) (Heated Insoles - Medium (6 THS01-M/Case)) | -1.00 | 182.77 | -182.77 |
| THS01-M-06(NOR) (ThermaCELL Heated Insoles - Medium (6 THS01-M/Case)) | 0.00 | 187.98 | 0.00 |
| THS01-M-06(SWD) (ThermaCELL Heated Insoles - Medium (6 THS01-M/Case) ) | 0.00 | 187.98 | 0.00 |
| THS01-M-CA (converted THS01-M to THS01-M-CA - being sent to ABC) | 0.00 | 0.00 | 0.00 |
| THS01-M (CA) (Heated Insoles - Medium) | 6.00 | 30.33 | 181.96 |
| THS01-M(NOR) (THS01-M(NOR)) | 0.00 | 31.33 | 0.00 |
| THS01-M(SWD) (ThermaCELL Heated Insoles - Medium  ) | 0.00 | 31.33 | 0.00 |
| THS01-MCC (Heated Insoles - Medium with Car Charger) | 0.00 | 37.79 | 0.00 |
| THS01-MEN-06 (Heated Insoles - Men's Flight (1L, 3XL, 2XXL))  ) | 0.00 | 190.44 | 0.00 |
| THS01-P-LCC (Heated Insoles Pack (1L, 1CC)) | 0.00 | 0.00 | 0.00 |
| THS01-P-LCC-03 (Heated Insoles Pack (3L, 3CC)) | 0.00 | 103.68 | 0.00 |
| THS01-P-MCC (Heated Insoles Pack (1M, 1CC)) | 0.00 | 33.90 | 0.00 |
| THS01-P-MCC-03 (Heated Insoles Pack (3M, 3CC)) | 0.00 | 107.14 | 0.00 |
| THS01-P-SCC (Heated Insoles Pack (1S, 1CC)) | 0.00 | 0.00 | 0.00 |
| THS01-P-SCC-03 (Heated Insoles Pack (3S, 3CC)) | 0.00 | 96.15 | 0.00 |
| THS01-P-XLCC (Heated Insoles Pack (1XL, 1CC)) | 0.00 | 0.00 | 0.00 |
| THS01-P-XLCC-03 (Heated Insoles Pack (3XL, 3CC)) | 0.00 | 102.48 | 0.00 |
| THS01-P-XXLCC (Heated Insoles Pack (1XXL, 1CC)) | 0.00 | 34.89 | 0.00 |
| THS01-P-XXLCC-03 (Heated Insoles Pack (3XXL, 3CC)) | 0.00 | 103.23 | 0.00 |
| THS01-RC (Remote Control) | -17.00 | 0.00 | 0.00 |
| THS01-RC(CA) (Remote Control (CA)) | 28.00 | 0.00 | 0.00 |
| THS01-S (Heated Insoles - Small) | 1,067.00 | 29.14 | 31,091.55 |
| THS01-S-06 (Heated Insoles - Small (6 THS01-S/Case)) | 172.00 | 173.93 | 29,916.61 |
| THS01-S-06 (CA) (Heated Insoles - Small (6 THS01-S/Case)) | 0.00 | 162.86 | 0.00 |
| THS01-S-06(NOR) (ThermaCELL Heated Insoles - Small (6 THS01-S/Case)) | 0.00 | 187.98 | 0.00 |
| THS01-S-06(SWD) (ThermaCELL Heated Insoles - Small (6 THS01-S/Case) ) | 0.00 | 187.98 | 0.00 |
| THS01-S (CA) (Heated Insoles - Small) | 2.00 | 30.55 | 61.10 |
| THS01-S(NOR) (THS01-S(NOR)) | 0.00 | 31.33 | 0.00 |
| THS01-S(SWD) (ThermaCELL Heated Insoles - Small  ) | 0.00 | 31.33 | 0.00 |
| THS01-SCC (Heated Insoles - Small with Car Charger) | 0.00 | 37.79 | 0.00 |
| THS01-Wall Charger (Heated Insoles - Wall Charger) | 0.00 | 2.74 | 0.00 |

# SCHEDULE A

| | On Hand | Calculated Avg | Asset Value |
|---|---|---|---|
| THS01-XL (Heated Insoles - X-Large) | 10.00 | 28.95 | 289.47 |
| THS01-XL-02 (Rechargeable Heated Insoles (2 THS01-XL/case)) | 0.00 | 63.68 | 0.00 |
| THS01-XL-06 (Heated Insoles - X-Large (6 THS01-XL/Case)) | -1.00 | 21.38 | -21.38 |
| THS01-XL-06 (CA) (Heated Insoles - X-Large (6 THS01-XL/Case)) | 0.00 | 91.43 | 0.00 |
| THS01-XL-06(NOR) (ThermaCELL Heated Insoles - XLarge (6 THS01-XL/Case)) | 0.00 | 187.98 | 0.00 |
| THS01-XL-06(SWD) (ThermaCELL Heated Insoles - X-Large (6 THS01-XL/Case) ) | 0.00 | 187.98 | 0.00 |
| THS01-XL (CA) (Heated Insoles - X-Large) | 2.00 | 15.70 | 31.40 |
| THS01-XL(NOR) (THS01-XL(NOR)) | 0.00 | 31.33 | 0.00 |
| THS01-XL(SWD) (ThermaCELL Heated Insoles - X-Large ) | 0.00 | 31.33 | 0.00 |
| THS01-XLCC (Heated Insole w/Car Charger) | 0.00 | 37.79 | 0.00 |
| THS01-XXL (Heated Insoles - XX-Large) | 3.00 | 0.00 | 0.00 |
| THS01-XXL-02 | 0.00 | 58.02 | 0.00 |
| THS01-XXL-06 (Heated Insoles - XX-Large (6 THS01-XXL/Case)) | -1.00 | -1.16 | 1.16 |
| THS01-XXL-06 (CA) (Heated Insoles - XX-Large (6 THS01-XXL/Case)) | -4.00 | 182.78 | -731.13 |
| THS01-XXL-06(SWD) (ThermaCELL Heated Insoles - XX-Large (6 THS01-XXL/Case) ) | 0.00 | 187.98 | 0.00 |
| THS01-XXL (CA) (Heated Insoles - XX-Large) | 25.00 | 21.54 | 538.39 |
| THS01-XXL(NOR) (THS01-XXL(NOR)) | 0.00 | 0.00 | 0.00 |
| THS01-XXL(SWD) (ThermaCELL Heated Insoles - XX-Large ) | 0.00 | 31.33 | 0.00 |
| THS01-XXLCC (Heated Insoles XXL w/Car Charger) | 0.00 | 34.45 | 0.00 |
| THS01L-P-PAKS (Heated Insoles-Pack-Large with Hand Warmer ) | 0.00 | 0.00 | 0.00 |
| THS01L-P-PAKS-03 (Heated Insoles-Pack-Large with Hand Warmer (Case of 3) ) | 0.00 | 0.00 | 0.00 |
| THS01M-P-PAKS (Heated Insoles-Pack-Medium with Hand Warmer ) | 0.00 | 0.00 | 0.00 |
| THS01M-P-PAKS-03 (Heated Insoles-Pack-Medium with Hand Warmer (Case of 3) ) | 0.00 | 0.00 | 0.00 |
| THS01S-P-PAKS (Heated Insoles-Pack-Small with Hand Warmer) | 0.00 | 0.00 | 0.00 |
| THS01S-P-PAKS-03 (Heated Insoles-Pack-Small with Hand Warmer (Case of 3) ) | 0.00 | 0.00 | 0.00 |
| THS01XL-P-PAKS (Heated Insoles-Pack-XLarge with Hand Warmer ) | 0.00 | 0.00 | 0.00 |
| THS01XL-P-PAKS-03 (Heated Insoles-Pack-XLarge with Hand Warmer (Case of 3) ) | 0.00 | 0.00 | 0.00 |
| THS01XXL-P-PAKS (Heated Insoles-Pack-XXLarge with Hand Warmer ) | 0.00 | 0.00 | 0.00 |
| THS01XXL-P-PAKS-03 (Heated Insoles-Pack-XXLarge with Hand Warmer (Case of 3) ) | 0.00 | 0.00 | 0.00 |
| THSALL16-QP (Quarter Pallet Display All Product 16 ) | 0.00 | 2,495.72 | 0.00 |
| THSCC-1 (Heated Insoles - Car Charger) | 1,397.00 | 5.26 | 7,354.70 |
| THSCC-1-06 (Heated Insoles - Car Charger (6 TSCC-1/Case)) | 265.00 | 31.59 | 8,372.43 |
| THSCC-1-06 (CA) (Heated Insoles - Car Charger (6 TSCC-1/Case)) | 101.00 | 35.64 | 3,599.64 |
| THSCC-1 (CA) (Heated Insoles - Car Charger) | 16.00 | 2.53 | 40.48 |
| THSPAK-NXC (Heated Insoles Sidekick Display (3M, 6L, 9XL, 9PAK-S)) | 0.00 | 0.00 | 0.00 |
| THSPKXHD16-QP(CA) (Quarter Pallet Display w Heat Packs No HD 16) | 0.00 | 0.00 | 0.00 |
| THSXHD16-QP (Quarter Pallet Display No HD 16 ) | 0.00 | 2,135.53 | 0.00 |
| | 33,070.00 | | 4,533,109.41 |
| | 33,070.00 | | 4,533,109.41 |



## SCHEDULE A-1
## INVENTORY TRUE-UP VALUE

See attached list which is incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

Buyer        Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

## SCHEDULE A-1

## INVENTORY TRUE-UP VALUE

See attached list which is incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

|  |  |
|---|---|
| Buyer | Seller |

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

Schedule A-1
Inventory True-Up Values

|  | Per Unit True-Up Value |
|---|---|
| Base Model Insoles | $25.89 |
| Base Model Car Charger | $4.21 |
| Base Model Loose Remotes | $0.03 |
| Base Model Wall Chargers | $2.19 |
| ProFLEX Insoles | $39.49 |
| ProFLEX XB Battery Packs | $11.41 |
| ProFLEX XB replacement batteries | $6.14 |
| ProFLEX HD Insoles | $40.93 |
| ProFLEX HD Battery Packs | $14.96 |
| Heat Packs - Small | $20.30 |
| Heat Packs - Large | $16.57 |
| Heat Packs - BLE | $23.63 |

## SCHEDULE B
## UPC CODES

See attached list which is incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC Asset Purchase Agreement

Buyer          Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

## SCHEDULE B

## UPC CODES

See attached list which is incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

_____     _____
Buyer                          Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

| PRODUCT | SKU | Country | GTIN | GTIN-12 (U.P.C.) | Brand Name | Product Description |
|---|---|---|---|---|---|---|
| BASE MODEL | THS01-L(CA) | CANADA | 00813134020314 | 813134020314 | ThermaCELL | ThermaCELL Heated Insoles - Large |
| BASE MODEL | THS01-L-06(CA) | CANADA | 10813134020311 | | ThermaCELL | ThermaCELL Heated Insoles - Large (6 THS( |
| BASE MODEL | THS01-M(CA) | CANADA | 00813134020307 | 813134020307 | ThermaCELL | ThermaCELL Heated Insoles - Medium |
| BASE MODEL | THS01-M-06(CA) | CANADA | 10813134020304 | | ThermaCELL | ThermaCELL Heated Insoles - Medium (6 T |
| BASE MODEL | THS01-MEN-06(CA) | CANADA | 00813134020475 | | ThermaCELL | ThermaCELL Heated Insoles - Men's Flight |
| BASE MODEL | THS01-MWY-06(CA) | CANADA | 00813134020482 | | ThermaCELL | ThermaCELL Heated Insoles - Men/Women |
| BASE MODEL | THS01-S(CA) | CANADA | 00813134020291 | 813134020291 | ThermaCELL | ThermaCELL Heated Insoles - Small |
| BASE MODEL | THS01-S-06(CA) | CANADA | 10813134020298 | | ThermaCELL | ThermaCELL Heated Insoles - Small (6 THS( |
| BASE MODEL | THS01-XL(CA) | CANADA | 00813134020321 | 813134020321 | ThermaCELL | ThermaCELL Heated Insoles - X-Large |
| BASE MODEL | THS01-XL-06(CA) | CANADA | 10813134020328 | | ThermaCELL | ThermaCELL Heated Insoles - X-Large (6 TH |
| BASE MODEL | THS01-XXL(CA) | CANADA | 00813134020338 | 813134020338 | ThermaCELL | ThermaCELL Heated Insoles - XX-Large |
| BASE MODEL | THS01-XXL-06(CA) | CANADA | 10813134020335 | | ThermaCELL | ThermaCELL Heated Insoles - XX-Large (6 T |
| BASE MODEL | THS-12MEN-D (CA) | CANADA | 00813134020451 | | ThermaCELL | Heated Insoles Sidekick Display (4L, 6XL, 2) |
| BASE MODEL | THS-12MWY-D (CA) | CANADA | 00813134020468 | | ThermaCELL | Heated Insoles Sidekick Display (2S, 2M, 2| |
| BASE MODEL | THS-18MEN-D (CA) | CANADA | 00813134020437 | | ThermaCELL | Heated Insoles Sidekick Display (6L, 9XL, 3) |
| BASE MODEL | THS-18MWY-D (CA) | CANADA | 00813134020444 | | ThermaCELL | Heated Insoles Sidekick Display (3S, 3M, 3| |
| BASE MODEL | THSCC-1(CA) | CANADA | 00813134020345 | 813134020345 | ThermaCELL | ThermaCELL Heated Insoles - Car Charger |
| BASE MODEL | THSCC-1-06(CA) | CANADA | 10813134020342 | | ThermaCELL | ThermaCELL Heated Insoles - Car Charger ( |
| BASE MODEL | THSPKXHD16-QP(CA) | CANADA | 00813134021090 | | ThermaCELL | Quarter Pallet Display w Heat Packs No HD |
| BASE MODEL | THS01-S-(IHI) | INTERNATIONAL (OLD) | 00813134020048 | 813134020048 | ThermaCELL | ThermaCELL Heated Insoles - Small |
| BASE MODEL | THS01-S-06(IHI) | INTERNATIONAL (OLD) | 10813134020045 | | ThermaCELL | ThermaCELL Heated Insoles - Small (6 THS( |
| BASE MODEL | THS01-L(NOR) | Norway | 00813134021182 | 813134021182 | ThermaCELL | ThermaCELL Heated Insoles - Large |
| BASE MODEL | THS01-L-06(NOR) | Norway | 10813134021189 | | ThermaCELL | ThermaCELL Heated Insoles - Large (6 THS( |
| BASE MODEL | THS01-M(NOR) | Norway | 00813134021175 | 813134021175 | ThermaCELL | ThermaCELL Heated Insoles - Medium |
| BASE MODEL | THS01-M-06(NOR) | Norway | 10813134021172 | | ThermaCELL | ThermaCELL Heated Insoles - Medium (6 T |
| BASE MODEL | THS01-S(NOR) | Norway | 00813134021168 | 813134021168 | ThermaCELL | ThermaCELL Heated Insoles - Small |
| BASE MODEL | THS01-S-06(NOR) | Norway | 10813134021165 | | ThermaCELL | ThermaCELL Heated Insoles - Small (6 THS( |
| BASE MODEL | THS01-XL(NOR) | Norway | 00813134021199 | 813134021199 | ThermaCELL | ThermaCELL Heated Insoles - XLarge |
| BASE MODEL | THS01-XL-06(NOR) | Norway | 10813134021196 | | ThermaCELL | ThermaCELL Heated Insoles - XLarge (6 TH: |
| BASE MODEL | THS01-XXL(NOR) | Norway | 00813134021205 | 813134021205 | ThermaCELL | ThermaCELL Heated Insoles - XXLarge |
| BASE MODEL | THS01-XXL-06(NOR) | Norway | 10813134021202 | | ThermaCELL | ThermaCELL Heated Insoles - XXLarge (6 T| |
| BASE MODEL | THSCC-1(NOR) | Norway | 00813134021212 | 813134021212 | ThermaCELL | ThermaCELL Heated Insoles - Car Charger |
| BASE MODEL | THSCC-1-06(NOR) | Norway | 10813134021219 | | ThermaCELL | ThermaCELL Heated Insoles - Car Charger ( |
| BASE MODEL | THS01-L-(SWD) | SWEDEN | 00813134020550 | 813134020550 | ThermaCELL | ThermaCELL Heated Insoles - Large |
| BASE MODEL | THS01-L-06(SWD) | SWEDEN | 10813134020557 | | ThermaCELL | ThermaCELL Heated Insoles - Large (6 THS( |
| BASE MODEL | THS01-M-(SWD) | SWEDEN | 00813134020543 | 813134020543 | ThermaCELL | ThermaCELL Heated Insoles - Medium |
| BASE MODEL | THS01-M-06(SWD) | SWEDEN | 10813134020540 | | ThermaCELL | ThermaCELL Heated Insoles - Medium (6 T |
| BASE MODEL | THS01-S-(SWD) | SWEDEN | 00813134020055 | 813134020055 | ThermaCELL | ThermaCELL Heated Insoles - Small |
| BASE MODEL | THS01-S-06(SWD) | SWEDEN | 10813134020052 | | ThermaCELL | ThermaCELL Heated Insoles - Small (6 THS( |
| BASE MODEL | THS01-XL-(SWD) | SWEDEN | 00813134020604 | 813134020604 | ThermaCELL | ThermaCELL Heated Insoles - X-Large |
| BASE MODEL | THS01-XL-06(SWD) | SWEDEN | 10813134020601 | | ThermaCELL | ThermaCELL Heated Insoles - XLarge (6 TH: |
| BASE MODEL | THS01-XXL-(SWD) | SWEDEN | 00813134020611 | 813134020611 | ThermaCELL | ThermaCELL Heated Insoles - XX-Large |
| BASE MODEL | THS01-XXL-06(SWD) | SWEDEN | 10813134020618 | | ThermaCELL | ThermaCELL Heated Insoles - XXLarge (6 T| |

SCHEDULE B

| PRODUCT | SKU | Country | GTIN | GTIN-12 (U.P.C.) | Brand Name | Product Description |
|---------|-----|---------|------|------------------|------------|---------------------|
| BASE MODEL | THS01-L | UNITED STATES | 00813134020079 | 813134020079 | ThermaCELL | ThermaCELL Heated Insoles - Large |
| BASE MODEL | THS01-L-02 | UNITED STATES | 20813134020073 | | ThermaCELL | ThermaCELL Heated Insoles - Large (2 THS( |
| BASE MODEL | THS01-L-06 | UNITED STATES | 10813134020076 | | ThermaCELL | ThermaCELL Heated Insoles - Large (6 THS( |
| BASE MODEL | THS01-LCC | UNITED STATES | 00813134020574 | 813134020574 | ThermaCELL | ThermaCELL Heated Insoles - Large with Ca |
| BASE MODEL | THS01L-P-PAKS | UNITED STATES | 00813134020925 | 813134020925 | ThermaCell | Heated Insoles-Pack-Large with Hand Wari |
| BASE MODEL | THS01L-P-PAKS-03 | UNITED STATES | 10813134020922 | | ThermaCell | Heated Insoles-Pack-Large with Hand Wari |
| BASE MODEL | THS01-M | UNITED STATES | 00813134020062 | 813134020062 | ThermaCELL | ThermaCELL Heated Insoles - Medium |
| BASE MODEL | THS01-M-02 | UNITED STATES | 20813134020066 | | ThermaCELL | ThermaCELL Heated Insoles - Medium (2 T |
| BASE MODEL | THS01-M-06 | UNITED STATES | 10813134020069 | | ThermaCELL | ThermaCELL Heated Insoles - Medium (6 T |
| BASE MODEL | THS01-MCC | UNITED STATES | 00813134020567 | 813134020567 | ThermaCELL | ThermaCELL Heated Insoles - Medium with |
| BASE MODEL | THS01-MEN-06 | UNITED STATES | 00813134020192 | | ThermaCELL | ThermaCELL Heated Insoles - Men's Flight |
| BASE MODEL | THS01M-P-PAKS | UNITED STATES | 00813134020918 | 813134020918 | ThermaCell | Heated Insoles-Pack-Medium with Hand W |
| BASE MODEL | THS01M-P-PAKS-03 | UNITED STATES | 10813134020915 | | ThermaCell | Heated Insoles-Pack-Medium with Hand W |
| BASE MODEL | THS01-MWY-06 | UNITED STATES | 00813134020208 | | ThermaCELL | ThermaCELL Heated Insoles - Men/Womer |
| BASE MODEL | THS01-P-LCC | UNITED STATES | 00813134020666 | 813134020666 | ThermaCell | Heated Insoles-Pack-Large with Car Charge |
| BASE MODEL | THS01-P-LCC-03 | UNITED STATES | 10813134020663 | | ThermaCell | Heated Insoles-Pack-Large with Car Charge |
| BASE MODEL | THS01-P-MCC | UNITED STATES | 00813134020673 | 813134020673 | ThermaCell | Heated Insoles-Pack-Medium with Car Cha |
| BASE MODEL | THS01-P-MCC-03 | UNITED STATES | 10813134020670 | | ThermaCell | Heated Insoles-Pack-Medium with Car Cha |
| BASE MODEL | THS01-P-SCC | UNITED STATES | 00813134020680 | 813134020680 | ThermaCell | Heated Insoles-Pack-Small with Car Charge |
| BASE MODEL | THS01-P-SCC-03 | UNITED STATES | 10813134020687 | | ThermaCell | Heated Insoles-Pack-Small with Car Charge |
| BASE MODEL | THS01-P-XLCC | UNITED STATES | 00813134020659 | 813134020659 | ThermaCell | Heated Insoles-Pack-XLarge with Car Charg |
| BASE MODEL | THS01-P-XLCC-03 | UNITED STATES | 10813134020656 | | ThermaCell | Heated Insoles-Pack-XLarge with Car Charg |
| BASE MODEL | THS01-P-XXLCC | UNITED STATES | 00813134020642 | 813134020642 | ThermaCell | Heated Insoles-Pack-XXLarge with Car Cha |
| BASE MODEL | THS01-P-XXLCC-03 | UNITED STATES | 10813134020649 | | ThermaCell | Heated Insoles-Pack-XXLarge with Car Cha |
| BASE MODEL | THS01-RC | UNITED STATES | 00813134021229 | 813134021229 | ThermaCELL | Remote Control |
| BASE MODEL | THS01-S | UNITED STATES | 00813134020000 | 813134020000 | ThermaCell | ThermaCELL Heated Insoles - Small |
| BASE MODEL | THS01-S-02 | UNITED STATES | 20813134020004 | | ThermaCell | ThermaCELL Heated Insoles - Small (2 THS( |
| BASE MODEL | THS01-S-06 | UNITED STATES | 10813134020007 | | ThermaCell | ThermaCELL Heated Insoles - Small (6 THS( |
| BASE MODEL | THS01-SCC | UNITED STATES | 00813134020031 | 813134020031 | ThermaCell | ThermaCELL Heated Insoles - Small with Ca |
| BASE MODEL | THS01S-P-PAKS | UNITED STATES | 00813134020901 | 813134020901 | ThermaCell | Heated Insoles-Pack-Small with Hand Wari |
| BASE MODEL | THS01S-P-PAKS-03 | UNITED STATES | 10813134020908 | | ThermaCell | Heated Insoles-Pack-Small with Hand Wari |
| BASE MODEL | THS01-XL | UNITED STATES | 00813134020086 | 813134020086 | ThermaCell | ThermaCELL Heated Insoles - X-Large |
| BASE MODEL | THS01-XL-02 | UNITED STATES | 20813134020080 | | ThermaCELL | ThermaCELL Heated Insoles - X-Large (2 TH |
| BASE MODEL | THS01-XL-06 | UNITED STATES | 10813134020083 | | ThermaCELL | ThermaCELL Heated Insoles - X-Large (6 TH |
| BASE MODEL | THS01-XLCC | UNITED STATES | 00813134020581 | 813134020581 | ThermaCell | ThermaCELL Heated Insoles - XLarge with ( |
| BASE MODEL | THS01XL-P-PAKS | UNITED STATES | 00813134020932 | 813134020932 | ThermaCell | Heated Insoles-Pack-XLarge with Hand Wa |
| BASE MODEL | THS01XL-P-PAKS-03 | UNITED STATES | 10813134020939 | | ThermaCell | Heated Insoles-Pack-XLarge with Hand Wa |
| BASE MODEL | THS01-XXL | UNITED STATES | 00813134020093 | 813134020093 | ThermaCELL | ThermaCELL Heated Insoles - XX-Large |
| BASE MODEL | THS01-XXL-02 | UNITED STATES | 20813134020097 | | ThermaCELL | ThermaCELL Heated Insoles - XXLarge (2 TI |
| BASE MODEL | THS01-XXL-06 | UNITED STATES | 10813134020090 | | ThermaCELL | ThermaCELL Heated Insoles - XX-Large (6 T |
| BASE MODEL | THS01-XXLCC | UNITED STATES | 00813134020598 | 813134020598 | ThermaCELL | ThermaCELL Heated Insoles - XXLarge with |
| BASE MODEL | THS01XXL-P-PAKS | UNITED STATES | 00813134020949 | 813134020949 | ThermaCell | Heated Insoles-Pack-XXLarge with Hand W |
| BASE MODEL | THS01XXL-P-PAKS-03 | UNITED STATES | 10813134020946 | | ThermaCell | Heated Insoles-Pack-XXLarge with Hand W |

SCHEDULE B

| PRODUCT | SKU | Country | GTIN | GTIN-12 (U.P.C.) | Brand Name | Product Description |
|---|---|---|---|---|---|---|
| BASE MODEL | THS-12MEN-D | UNITED STATES | 00813134020239 | | ThermaCELL | Heated Insoles Sidekick Display (4L, 6XL, 2) |
| BASE MODEL | THS-12MWY-D | UNITED STATES | 00813134020246 | | ThermaCELL | Heated Insoles Sidekick Display (2S, 2M, 2) |
| BASE MODEL | THS-18MEN-D | UNITED STATES | 00813134020215 | | ThermaCELL | Heated Insoles Sidekick Display (6L, 9XL, 3) |
| BASE MODEL | THS-18MWY-D | UNITED STATES | 00813134020222 | | ThermaCELL | Heated Insoles Sidekick Display (3S, 3M, 3) |
| BASE MODEL | THSALL16-QP | UNITED STATES | 00813134021076 | | ThermaCELL | Quarter Pallet Display All Product 16 |
| BASE MODEL | THSCC-1 | UNITED STATES | 00813134020109 | 813134020109 | ThermaCELL | ThermaCELL Heated Insoles - Car Charger |
| BASE MODEL | THSCC-1-06 | UNITED STATES | 10813134020106 | | ThermaCELL | ThermaCELL Heated Insoles - Car Charger ( |
| BASE MODEL | THSHWPAK-QP1 | UNITED STATES | 00813134020741 | | ThermaCELL | Heated Insoles Quarter Pallet Display |
| BASE MODEL | THSHW-QP1 | UNITED STATES | 00813134020758 | | ThermaCELL | Heated Insoles Quarter Pallet Display |
| BASE MODEL | THSPAK-NXC | UNITED STATES | 00813134020024 | | ThermaCELL | Heated Insoles Sidekick Display (3M, 6L, 9) |
| BASE MODEL | THSXHD16-QP | UNITED STATES | 00813134021083 | | ThermaCELL | Quarter Pallet Display No HD 16 |
| HEAT PACKS | PAK-3S3L (CA) | CANADA | 00813134020536 | | ThermaCELL | ThermaCELL Heat Pack Multi Pack 3S3L (C/ |
| HEAT PACKS | PAK-BL(CA) | CANADA | 00813134020833 | 813134020833 | ThermaCell | Heat Packs - Bluetooth Pocket Warmer (1 |
| HEAT PACKS | PAK-BL-6(CA) | CANADA | 10813134020830 | | ThermaCell | Heat Packs - Bluetooth Pocket Warmer (1 |
| HEAT PACKS | PAK-L(CA) | CANADA | 00813134020420 | 813134020420 | ThermaCELL | ThermaCELL Heat Packs - Pocket Warmer ( |
| HEAT PACKS | PAK-L-06(CA) | CANADA | 10813134020427 | | ThermaCELL | ThermaCELL Heat Packs - Pocket Warmer | |
| HEAT PACKS | PAK-S(CA) | CANADA | 00813134020413 | 813134020413 | ThermaCELL | ThermaCELL Heat Packs - Hand Warmers ( |
| HEAT PACKS | PAK-S-06(CA) | CANADA | 10813134020410 | | ThermaCELL | ThermaCELL Heat Packs - Hand Warmers [ |
| HEAT PACKS | PAK-3S3L | UNITED STATES | 00813134020529 | | ThermaCELL | ThermaCELL Heat Pack Multi Pack 3S3L |
| HEAT PACKS | PAK-BL | UNITED STATES | 00813134020826 | 813134020826 | ThermaCell | Heat Packs - Bluetooth Pocket Warmer (1 |
| HEAT PACKS | PAK-BL-6 | UNITED STATES | 10813134020823 | | ThermaCell | Heat Packs - Bluetooth Pocket Warmer (1 |
| HEAT PACKS | PAK-L | UNITED STATES | 00813134020185 | 813134020185 | ThermaCELL | ThermaCELL Heat Packs - Pocket Warmer ( |
| HEAT PACKS | PAK-L-06 | UNITED STATES | 10813134020182 | | ThermaCELL | ThermaCELL Heat Packs - Pocket Warmer | |
| HEAT PACKS | PAK-P-1S1L | UNITED STATES | 00813134020635 | 813134020635 | ThermaCELL | Heat Pack Bundle 1S1L |
| HEAT PACKS | PAK-P-1S1L-03 | UNITED STATES | 10813134020632 | | ThermaCELL | Heat Pack Bundle 1S1L (Case of 3) |
| HEAT PACKS | PAK-S | UNITED STATES | 00813134020178 | 813134020178 | ThermaCELL | ThermaCELL Heat Packs - Hand Warmers [. |
| HEAT PACKS | PAK-S-06 | UNITED STATES | 10813134020175 | | ThermaCELL | ThermaCELL Heat Packs - Hand Warmers [ |
| HEAT PACKS | PAK-S12L6-D | UNITED STATES | 00813134020628 | | ThermaCELL | Heat Pack 18 Unit Display (S12, L6) |
| HEAVY DUTY | PFHD-12MEN-D(CA) | CANADA | 00813134021298 | | ThermaCELL | ProFLEX Heavy Duty Sidekick |
| HEAVY DUTY | PFHD-12MWY-D(CA) | CANADA | 00813134021304 | | ThermaCELL | ProFLEX Heavy Duty Sidekick |
| HEAVY DUTY | PFHD-18MEN-D (CA) | CANADA | 00813134021274 | | ThermaCELL | ProFLEX Heavy Duty Sidekick Display |
| HEAVY DUTY | PFHD-18MWY-D(CA) | CANADA | 00813134021281 | | ThermaCELL | ProFLEX Heavy Duty Sidekick |
| HEAVY DUTY | PFHD-L(CA) | CANADA | 00813134020871 | 813134020871 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bl |
| HEAVY DUTY | PFHD-L-6(CA) | CANADA | 10813134020878 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bl |
| HEAVY DUTY | PFHD-M(CA) | CANADA | 00813134020864 | 813134020864 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bl |
| HEAVY DUTY | PFHD-M-6(CA) | CANADA | 10813134020861 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bl |
| HEAVY DUTY | PFHD-S(CA) | CANADA | 00813134020857 | 813134020857 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bl |
| HEAVY DUTY | PFHD-S-6(CA) | CANADA | 10813134020854 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bl |
| HEAVY DUTY | PFHD-XB(CA) | CANADA | 00813134020840 | 813134020840 | ThermaCell | Heated Insoles ProFLEX Heavy Duty Batter |
| HEAVY DUTY | PFHD-XB-6(CA) | CANADA | 10813134020847 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty Batter |
| HEAVY DUTY | PFHD-XL(CA) | CANADA | 00813134020888 | 813134020888 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bl |
| HEAVY DUTY | PFHD-XL-6(CA) | CANADA | 10813134020885 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bl |
| HEAVY DUTY | PFHD-XXL(CA) | CANADA | 00813134020895 | 813134020895 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bl |

SCHEDULE B

| PRODUCT | SKU | Country | GTIN | GTIN-12 (U.P.C.) | Brand Name | Product Description |
|---|---|---|---|---|---|---|
| HEAVY DUTY | PFHD-XXL-6(CA) | CANADA | 10813134020892 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-L(NOR) | Norway | 00813134021106 | 813134021106 | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-L-6(NOR) | Norway | 10813134021103 | | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-M(NOR) | Norway | 00813134021113 | 813134021113 | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-M-6(NOR) | Norway | 10813134021110 | | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-S(NOR) | Norway | 00813134021120 | 813134021120 | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-S-6(NOR) | Norway | 10813134021127 | | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-XB(NOR) | Norway | 00813134021151 | 813134021151 | ThermaCELL | Heated Insoles ProFLEX Heavy Duty Batter |
| HEAVY DUTY | PFHD-XB-6(NOR) | Norway | 10813134021158 | | ThermaCELL | Heated Insoles ProFLEX Heavy Duty Batter |
| HEAVY DUTY | PFHD-XL(NOR) | Norway | 00813134021137 | 813134021137 | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-XL-6(NOR) | Norway | 10813134021134 | | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-XXL(NOR) | Norway | 00813134021144 | 813134021144 | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-XXL-6(NOR) | Norway | 10813134021141 | | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-L(SWD) | SWEDEN | 00813134020970 | 813134020970 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-L-6(SWD) | SWEDEN | 10813134020977 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-M(SWD) | SWEDEN | 00813134020963 | 813134020963 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-M-6(SWD) | SWEDEN | 10813134020960 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-S(SWD) | SWEDEN | 00813134020956 | 813134020956 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-S-6(SWD) | SWEDEN | 10813134020953 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-XB(SWD) | SWEDEN | 00813134021014 | 813134021014 | ThermaCell | Heated Insoles ProFLEX Heavy Duty Batter |
| HEAVY DUTY | PFHD-XB-6(SWD) | SWEDEN | 10813134021011 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty Batter |
| HEAVY DUTY | PFHD-XL(SWD) | SWEDEN | 00813134020987 | 813134020987 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-XL-6(SWD) | SWEDEN | 10813134020984 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-XXL(SWD) | SWEDEN | 00813134021007 | 813134021007 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-XXL-6(SWD) | SWEDEN | 10813134021004 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-12MEN-D | UNITED STATES | 00813134021250 | | ThermaCELL | ProFLEX Heavy Duty Sidekick Display Copy |
| HEAVY DUTY | PFHD-12MWY-D | UNITED STATES | 00813134021267 | | ThermaCELL | ProFLEX Heavy Duty Sidekick Display Copy |
| HEAVY DUTY | PFHD-18MEN-D | UNITED STATES | 00813134021243 | | ThermaCELL | ProFLEX Heavy Duty Sidekick Display Copy |
| HEAVY DUTY | PFHD-18MWY-D | UNITED STATES | 00813134021236 | | ThermaCELL | ProFLEX Heavy Duty Sidekick Display |
| HEAVY DUTY | PFHD-L | UNITED STATES | 00813134020789 | 813134020789 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-L-6 | UNITED STATES | 10813134020786 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-M | UNITED STATES | 00813134020772 | 813134020772 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-M-6 | UNITED STATES | 10813134020779 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-S | UNITED STATES | 00813134020765 | 813134020765 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-S-6 | UNITED STATES | 10813134020762 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-XB | UNITED STATES | 00813134020819 | 813134020819 | ThermaCell | Heated Insoles ProFLEX Heavy Duty Batter |
| HEAVY DUTY | PFHD-XB-6 | UNITED STATES | 10813134020816 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty Batter |
| HEAVY DUTY | PFHD-XL | UNITED STATES | 00813134020796 | 813134020796 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-XL-6 | UNITED STATES | 10813134020793 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-XXL | UNITED STATES | 00813134020802 | 813134020802 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| HEAVY DUTY | PFHD-XXL-6 | UNITED STATES | 10813134020809 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Blu |
| PROFLEX | HW20-12MEN-D(CA) | CANADA | 00813134020505 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (4 |
| PROFLEX | HW20-12MWY-D(CA) | CANADA | 00813134020512 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (2 |

SCHEDULE B

| PRODUCT | SKU | Country | GTIN | GTIN-12 (U.P.C.) | Brand Name | Product Description |
|---|---|---|---|---|---|---|
| PROFLEX | HW20-18MEN-D(CA) | CANADA | 00813134020017 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (6 |
| PROFLEX | HW20-18MWY-D(CA) | CANADA | 00813134020499 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (3 |
| PROFLEX | HW20-L(CA) | CANADA | 00813134020376 | 813134020376 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Larg |
| PROFLEX | HW20-L-06(CA) | CANADA | 10813134020373 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Larg |
| PROFLEX | HW20-M(CA) | CANADA | 00813134020369 | 813134020369 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Mec |
| PROFLEX | HW20-M-06(CA) | CANADA | 10813134020366 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Mec |
| PROFLEX | HW20-S(CA) | CANADA | 00813134020352 | 813134020352 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Sma |
| PROFLEX | HW20-S-06(CA) | CANADA | 10813134020359 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Sma |
| PROFLEX | HW20-XB(CA) | CANADA | 00813134020406 | 813134020406 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Batt |
| PROFLEX | HW20-XB-06(CA) | CANADA | 10813134020403 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Batt |
| PROFLEX | HW20-XL(CA) | CANADA | 00813134020383 | 813134020383 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - X-La |
| PROFLEX | HW20-XL-06(CA) | CANADA | 10813134020380 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - X-La |
| PROFLEX | HW20-XXL(CA) | CANADA | 00813134020390 | 813134020390 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - XX-L |
| PROFLEX | HW20-XXL-06(CA) | CANADA | 10813134020397 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - XX-L |
| PROFLEX | HW20-L(SWD) | SWEDEN | 00813134020994 | 813134020994 | ThermaCELL | Heated Insoles ProFLEX - Large |
| PROFLEX | HW20-L-06(SWD) | SWEDEN | 10813134020991 | | ThermaCELL | Heated Insoles ProFLEX - Large (6 HW20-L/ |
| PROFLEX | HW20-M(SWD) | SWEDEN | 00813134021021 | | ThermaCELL | Heated Insoles ProFLEX - Medium |
| PROFLEX | HW20-M-06(SWD) | SWEDEN | 10813134021028 | | ThermaCELL | Heated Insoles ProFLEX - Medium (6 HW2( |
| PROFLEX | HW20-S(SWD) | SWEDEN | 00813134021038 | 813134021038 | ThermaCELL | Heated Insoles ProFLEX - Small |
| PROFLEX | HW20-S-06(SWD) | SWEDEN | 10813134021035 | | ThermaCELL | Heated Insoles ProFLEX - Small (6 HW20-S/ |
| PROFLEX | HW20-XB(SWD) | SWEDEN | 00813134021045 | 813134021045 | ThermaCELL | Heated Insoles ProFLEX - Battery Pack |
| PROFLEX | HW20-XB-06(SWD) | SWEDEN | 10813134021042 | | ThermaCELL | Heated Insoles ProFLEX - Battery Pack (6 H |
| PROFLEX | HW20-XL(SWD) | SWEDEN | 00813134021052 | 813134021052 | ThermaCELL | Heated Insoles ProFLEX - X-Large |
| PROFLEX | HW20-XL-06(SWD) | SWEDEN | 10813134021059 | | ThermaCELL | Heated Insoles ProFLEX - X-Large (6 HW20- |
| PROFLEX | HW20-XXL(SWD) | SWEDEN | 00813134021069 | 813134021069 | ThermaCELL | Heated Insoles ProFLEX - XX-Large |
| PROFLEX | HW20-XXL-06(SWD) | SWEDEN | 10813134021066 | | ThermaCELL | Heated Insoles ProFLEX - XX-Large (6 HW2/ |
| PROFLEX | HW20-12MEN-D | UNITED STATES | 00813134020277 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (4 |
| PROFLEX | HW20-12MWY-D | UNITED STATES | 00813134020284 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (2 |
| PROFLEX | HW20-18MEN-D | UNITED STATES | 00813134020253 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (6 |
| PROFLEX | HW20-18MWY-D | UNITED STATES | 00813134020260 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (3 |
| PROFLEX | HW20-L | UNITED STATES | 00813134020130 | 813134020130 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Larg |
| PROFLEX | HW20-L-06 | UNITED STATES | 10813134020137 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Larg |
| PROFLEX | HW20-M | UNITED STATES | 00813134020123 | 813134020123 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Mec |
| PROFLEX | HW20-M-06 | UNITED STATES | 10813134020120 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Mec |
| PROFLEX | HW20-NXC | UNITED STATES | 00813134021311 | | ThermaCELL | Heated Insoles Sidekick Display (3M, 5L, 8) |
| PROFLEX | HW20-P-LXB | UNITED STATES | 00813134020710 | 813134020710 | ThermaCELL | ProFlex-Pack-Large with Extra Battery Pack |
| PROFLEX | HW20-P-LXB-03 | UNITED STATES | 10813134020717 | | ThermaCELL | ProFlex-Pack-Large with Extra Battery Pack |
| PROFLEX | HW20-P-MXB | UNITED STATES | 00813134020727 | 813134020727 | ThermaCELL | ProFlex-Pack-Medium with Extra Battery P |
| PROFLEX | HW20-P-MXB-03 | UNITED STATES | 10813134020724 | | ThermaCELL | ProFlex-Pack-Medium with Extra Battery P |
| PROFLEX | HW20-P-SXB | UNITED STATES | 00813134020734 | 813134020734 | ThermaCELL | ProFlex-Pack-Small with Extra Battery Pack |
| PROFLEX | HW20-P-SXB-03 | UNITED STATES | 10813134020731 | | ThermaCELL | ProFlex-Pack-Small with Extra Battery Pack |
| PROFLEX | HW20-P-XLXB | UNITED STATES | 00813134020703 | 813134020703 | ThermaCELL | ProFlex-Pack-XLarge with Extra Battery Pa |
| PROFLEX | HW20-P-XLXB-03 | UNITED STATES | 10813134020700 | | ThermaCELL | ProFlex-Pack-XLarge with Extra Battery Pa |



SCHEDULE B

| PRODUCT | SKU | Country | GTIN | GTIN-12 (U.P.C.) | Brand Name | Product Description |
|---------|-----|---------|------|------------------|------------|---------------------|
| PROFLEX | HW20-P-XXLXB | UNITED STATES | 00813134020697 | 813134020697 | ThermaCELL | ProFlex-Pack-XXLarge with Extra Battery Pa |
| PROFLEX | HW20-P-XXLXB-03 | UNITED STATES | 10813134020694 | | ThermaCELL | ProFlex-Pack-XXLarge with Extra Battery Pa |
| PROFLEX | HW20-S | UNITED STATES | 00813134020116 | 813134020116 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Sma |
| PROFLEX | HW20-S-06 | UNITED STATES | 10813134020113 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Sma |
| PROFLEX | HW20-XB | UNITED STATES | 00813134020161 | 813134020161 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Batt |
| PROFLEX | HW20-XB-06 | UNITED STATES | 10813134020168 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Batt |
| PROFLEX | HW20-XL | UNITED STATES | 00813134020147 | 813134020147 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - X-La |
| PROFLEX | HW20-XL-06 | UNITED STATES | 10813134020144 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - X-La |
| PROFLEX | HW20-XXL | UNITED STATES | 00813134020154 | 813134020154 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - XX-L |
| PROFLEX | HW20-XXL-06 | UNITED STATES | 10813134020151 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - XX-L |



SCHEDULE B

| PRODUCT | SKU | Country | GTIN | GTIN-12 (U.P.C.) | Brand Name | Product Description |
|---|---|---|---|---|---|---|
| BASE MODEL | THS01-L(CA) | CANADA | 00813134020314 | 813134020314 | ThermaCELL | ThermaCELL Heated Insoles - Large |
| BASE MODEL | THS01-L-06(CA) | CANADA | 10813134020311 | | ThermaCELL | ThermaCELL Heated Insoles - Large (6 THS01-L/Case) |
| BASE MODEL | THS01-M(CA) | CANADA | 00813134020307 | 813134020307 | ThermaCELL | ThermaCELL Heated Insoles - Medium |
| BASE MODEL | THS01-M-06(CA) | CANADA | 10813134020304 | | ThermaCELL | ThermaCELL Heated Insoles - Medium (6 THS01-M/Case) |
| BASE MODEL | THS01-MEN-06(CA) | CANADA | 00813134020475 | | ThermaCELL | ThermaCELL Heated Insoles - Men's Flight (1L, 3XL, 2XXL) |
| BASE MODEL | THS01-MWY-06(CA) | CANADA | 00813134020482 | | ThermaCELL | ThermaCELL Heated Insoles - Men/Women/Youth Flight (1S, 1M, 1L, 2XL, 1XXL) |
| BASE MODEL | THS01-S(CA) | CANADA | 00813134020291 | 813134020291 | ThermaCELL | ThermaCELL Heated Insoles - Small |
| BASE MODEL | THS01-S-06(CA) | CANADA | 10813134020298 | | ThermaCELL | ThermaCELL Heated Insoles - Small (6 THS01-S/Case) |
| BASE MODEL | THS01-XL(CA) | CANADA | 00813134020321 | 813134020321 | ThermaCELL | ThermaCELL Heated Insoles - X-Large |
| BASE MODEL | THS01-XL-06(CA) | CANADA | 10813134020328 | | ThermaCELL | ThermaCELL Heated Insoles - X-Large (6 THS01-XL/Case) |
| BASE MODEL | THS01-XXL(CA) | CANADA | 00813134020338 | 813134020338 | ThermaCELL | ThermaCELL Heated Insoles - XX-Large |
| BASE MODEL | THS01-XXL-06(CA) | CANADA | 10813134020335 | | ThermaCELL | ThermaCELL Heated Insoles - XX-Large (6 THS01-XXL/Case) |
| BASE MODEL | THS-12MEN-D (CA) | CANADA | 00813134020451 | | ThermaCELL | Heated Insoles Sidekick Display (4L, 6XL, 2XXL, 3CC) |
| BASE MODEL | THS-12MWY-D (CA) | CANADA | 00813134020468 | | ThermaCELL | Heated Insoles Sidekick Display (2S, 2M, 2L, 4XL, 2XXL, 3CC) |
| BASE MODEL | THS-18MEN-D (CA) | CANADA | 00813134020437 | | ThermaCELL | Heated Insoles Sidekick Display (6L, 9XL, 3XXL, 3CC) |
| BASE MODEL | THS-18MWY-D (CA) | CANADA | 00813134020444 | | ThermaCELL | Heated Insoles Sidekick Display (3S, 3M, 3L, 6XL, 3XXL, 3CC) |
| BASE MODEL | THSCC-1(CA) | CANADA | 00813134020345 | 813134020345 | ThermaCELL | ThermaCELL Heated Insoles - Car Charger |
| BASE MODEL | THSCC-1-06(CA) | CANADA | 10813134020342 | | ThermaCELL | ThermaCELL Heated Insoles - Car Charger (6 TSCC-1/Case) |
| BASE MODEL | THSPKXHD16-QP(CA) | CANADA | 00813134021090 | | ThermaCELL | Quarter Pallet Display w Heat Packs No HD 16 |
| BASE MODEL | THS01-S-(IHI) | INTERNATIONAL (OLD) | 00813134020048 | 813134020048 | ThermaCELL | ThermaCELL Heated Insoles - Small |
| BASE MODEL | THS01-S-06(IHI) | INTERNATIONAL (OLD) | 10813134020045 | | ThermaCELL | ThermaCELL Heated Insoles - Small (6 THS01-S/Case) |
| BASE MODEL | THS01-L(NOR) | Norway | 00813134021182 | 813134021182 | ThermaCELL | ThermaCELL Heated Insoles - Large |
| BASE MODEL | THS01-L-06(NOR) | Norway | 10813134021189 | | ThermaCELL | ThermaCELL Heated Insoles - Large (6 THS01-L/Case) |
| BASE MODEL | THS01-M(NOR) | Norway | 00813134021175 | 813134021175 | ThermaCELL | ThermaCELL Heated Insoles - Medium |
| BASE MODEL | THS01-M-06(NOR) | Norway | 10813134021172 | | ThermaCELL | ThermaCELL Heated Insoles - Medium (6 THS01-M/Case) |
| BASE MODEL | THS01-S(NOR) | Norway | 00813134021168 | 813134021168 | ThermaCELL | ThermaCELL Heated Insoles - Small |
| BASE MODEL | THS01-S-06(NOR) | Norway | 10813134021165 | | ThermaCELL | ThermaCELL Heated Insoles - Small (6 THS01-S/Case) |
| BASE MODEL | THS01-XL(NOR) | Norway | 00813134021199 | 813134021199 | ThermaCELL | ThermaCELL Heated Insoles - XLarge |
| BASE MODEL | THS01-XL-06(NOR) | Norway | 10813134021196 | | ThermaCELL | ThermaCELL Heated Insoles - XLarge (6 THS01-XL/Case) |
| BASE MODEL | THS01-XXL(NOR) | Norway | 00813134021205 | 813134021205 | ThermaCELL | ThermaCELL Heated Insoles - XXLarge |
| BASE MODEL | THS01-XXL-06(NOR) | Norway | 10813134021202 | | ThermaCELL | ThermaCELL Heated Insoles - XXLarge (6 THS01-XXL/Case) |
| BASE MODEL | THSCC-1(NOR) | Norway | 00813134021212 | 813134021212 | ThermaCELL | ThermaCELL Heated Insoles - Car Charger |
| BASE MODEL | THSCC-1-06(NOR) | Norway | 10813134021219 | | ThermaCELL | ThermaCELL Heated Insoles - Car Charger (6 TSCC-1/Case) |
| BASE MODEL | THS01-L-(SWD) | SWEDEN | 00813134020550 | 813134020550 | ThermaCELL | ThermaCELL Heated Insoles - Large |
| BASE MODEL | THS01-L-06(SWD) | SWEDEN | 10813134020557 | | ThermaCELL | ThermaCELL Heated Insoles - Large (6 THS01-S/Case) |
| BASE MODEL | THS01-M-(SWD) | SWEDEN | 00813134020543 | 813134020543 | ThermaCELL | ThermaCELL Heated Insoles - Medium |
| BASE MODEL | THS01-M-06(SWD) | SWEDEN | 10813134020540 | | ThermaCELL | ThermaCELL Heated Insoles - Medium (6 THS01-S/Case) |
| BASE MODEL | THS01-S-(SWD) | SWEDEN | 00813134020055 | 813134020055 | ThermaCELL | ThermaCELL Heated Insoles - Small |
| BASE MODEL | THS01-S-06(SWD) | SWEDEN | 10813134020052 | | ThermaCELL | ThermaCELL Heated Insoles - Small (6 THS01-S/Case) |
| BASE MODEL | THS01-XL-(SWD) | SWEDEN | 00813134020604 | 813134020604 | ThermaCELL | ThermaCELL Heated Insoles - X-Large |
| BASE MODEL | THS01-XL-06(SWD) | SWEDEN | 10813134020601 | | ThermaCELL | ThermaCELL Heated Insoles - XLarge (6 THS01-S/Case) |
| BASE MODEL | THS01-XXL-(SWD) | SWEDEN | 00813134020611 | 813134020611 | ThermaCELL | ThermaCELL Heated Insoles - XX-Large |
| BASE MODEL | THS01-XXL-06(SWD) | SWEDEN | 10813134020618 | | ThermaCELL | ThermaCELL Heated Insoles - XXLarge (6 THS01-S/Case) |

SCHEDULE B

| PRODUCT | SKU | Country | GTIN | GTIN-12 (U.P.C.) | Brand Name | Product Description |
|---|---|---|---|---|---|---|
| BASE MODEL | THS01-L | UNITED STATES | 00813134020079 | 813134020079 | ThermaCELL | ThermaCELL Heated Insoles - Large |
| BASE MODEL | THS01-L-02 | UNITED STATES | 20813134020073 | | ThermaCELL | ThermaCELL Heated Insoles - Large (2 THS01-L/Case) |
| BASE MODEL | THS01-L-06 | UNITED STATES | 10813134020076 | | ThermaCELL | ThermaCELL Heated Insoles - Large (6 THS01-L/Case) |
| BASE MODEL | THS01-LCC | UNITED STATES | 00813134020574 | 813134020574 | ThermaCELL | ThermaCELL Heated Insoles - Large with Car Charger |
| BASE MODEL | THS01L-P-PAKS | UNITED STATES | 00813134020925 | 813134020925 | ThermaCell | Heated Insoles-Pack-Large with Hand Warmer |
| BASE MODEL | THS01L-P-PAKS-03 | UNITED STATES | 10813134020922 | | ThermaCell | Heated Insoles-Pack-Large with Hand Warmer (Case of 3) |
| BASE MODEL | THS01-M | UNITED STATES | 00813134020062 | 813134020062 | ThermaCELL | ThermaCELL Heated Insoles - Medium |
| BASE MODEL | THS01-M-02 | UNITED STATES | 20813134020066 | | ThermaCELL | ThermaCELL Heated Insoles - Medium (2 THS01-M/Case) |
| BASE MODEL | THS01-M-06 | UNITED STATES | 10813134020069 | | ThermaCELL | ThermaCELL Heated Insoles - Medium (6 THS01-M/Case) |
| BASE MODEL | THS01-MCC | UNITED STATES | 00813134020567 | 813134020567 | ThermaCELL | ThermaCELL Heated Insoles - Medium with Car Charger |
| BASE MODEL | THS01-MEN-06 | UNITED STATES | 00813134020192 | | ThermaCELL | ThermaCELL Heated Insoles - Men's Flight (1L, 3XL, 2XXL) |
| BASE MODEL | THS01M-P-PAKS | UNITED STATES | 00813134020918 | 813134020918 | ThermaCell | Heated Insoles-Pack-Medium with Hand Warmer |
| BASE MODEL | THS01M-P-PAKS-03 | UNITED STATES | 10813134020915 | | ThermaCell | Heated Insoles-Pack-Medium with Hand Warmer (Case of 3) |
| BASE MODEL | THS01-MWY-06 | UNITED STATES | 00813134020208 | | ThermaCELL | ThermaCELL Heated Insoles - Men/Women/Youth Flight (1S, 1M, 1L, 2XL, 1XXL) |
| BASE MODEL | THS01-P-LCC | UNITED STATES | 00813134020666 | 813134020666 | ThermaCELL | Heated Insoles-Pack-Large with Car Charger |
| BASE MODEL | THS01-P-LCC-03 | UNITED STATES | 10813134020663 | | ThermaCELL | Heated Insoles-Pack-Large with Car Charger (Case of 3) |
| BASE MODEL | THS01-P-MCC | UNITED STATES | 00813134020673 | 813134020673 | ThermaCELL | Heated Insoles-Pack-Medium with Car Charger |
| BASE MODEL | THS01-P-MCC-03 | UNITED STATES | 10813134020670 | | ThermaCELL | Heated Insoles-Pack-Medium with Car Charger (Case of 3) |
| BASE MODEL | THS01-P-SCC | UNITED STATES | 00813134020680 | 813134020680 | ThermaCELL | Heated Insoles-Pack-Small with Car Charger |
| BASE MODEL | THS01-P-SCC-03 | UNITED STATES | 10813134020687 | | ThermaCELL | Heated Insoles-Pack-Small with Car Charger (Case of 3) |
| BASE MODEL | THS01-P-XLCC | UNITED STATES | 00813134020659 | 813134020659 | ThermaCELL | Heated Insoles-Pack-XLarge with Car Charger |
| BASE MODEL | THS01-P-XLCC-03 | UNITED STATES | 10813134020656 | | ThermaCELL | Heated Insoles-Pack-XLarge with Car Charger (Case of 3) |
| BASE MODEL | THS01-P-XXLCC | UNITED STATES | 00813134020642 | 813134020642 | ThermaCELL | Heated Insoles-Pack-XXLarge with Car Charger |
| BASE MODEL | THS01-P-XXLCC-03 | UNITED STATES | 10813134020649 | | ThermaCELL | Heated Insoles-Pack-XXLarge with Car Charger (Case of 3) |
| BASE MODEL | THS01-RC | UNITED STATES | 00813134021229 | 813134021229 | ThermaCELL | Remote Control |
| BASE MODEL | THS01-S | UNITED STATES | 00813134020000 | 813134020000 | ThermaCELL | ThermaCELL Heated Insoles - Small |
| BASE MODEL | THS01-S-02 | UNITED STATES | 20813134020004 | | ThermaCELL | ThermaCELL Heated Insoles - Small (2 THS01-S/Case) |
| BASE MODEL | THS01-S-06 | UNITED STATES | 10813134020007 | | ThermaCELL | ThermaCELL Heated Insoles - Small (6 THS01-S/Case) |
| BASE MODEL | THS01-SCC | UNITED STATES | 00813134020031 | 813134020031 | ThermaCELL | ThermaCELL Heated Insoles - Small with Car Charger |
| BASE MODEL | THS01S-P-PAKS | UNITED STATES | 00813134020901 | 813134020901 | ThermaCell | Heated Insoles-Pack-Small with Hand Warmer |
| BASE MODEL | THS01S-P-PAKS-03 | UNITED STATES | 10813134020908 | | ThermaCell | Heated Insoles-Pack-Small with Hand Warmer (Case of 3) |
| BASE MODEL | THS01-XL | UNITED STATES | 00813134020086 | 813134020086 | ThermaCELL | ThermaCELL Heated Insoles - X-Large |
| BASE MODEL | THS01-XL-02 | UNITED STATES | 20813134020080 | | ThermaCELL | ThermaCELL Heated Insoles - XLarge (2 THS01-XL/Case) |
| BASE MODEL | THS01-XL-06 | UNITED STATES | 10813134020083 | | ThermaCELL | ThermaCELL Heated Insoles - X-Large (6 THS01-XL/Case) |
| BASE MODEL | THS01-XLCC | UNITED STATES | 00813134020581 | 813134020581 | ThermaCELL | ThermaCELL Heated Insoles - XLarge with Car Charger |
| BASE MODEL | THS01XL-P-PAKS | UNITED STATES | 00813134020932 | 813134020932 | ThermaCell | Heated Insoles-Pack-XLarge with Hand Warmer |
| BASE MODEL | THS01XL-P-PAKS-03 | UNITED STATES | 10813134020939 | | ThermaCell | Heated Insoles-Pack-XLarge with Hand Warmer (Case of 3) |
| BASE MODEL | THS01-XXL | UNITED STATES | 00813134020093 | 813134020093 | ThermaCELL | ThermaCELL Heated Insoles - XX-Large |
| BASE MODEL | THS01-XXL-02 | UNITED STATES | 20813134020097 | | ThermaCELL | ThermaCELL Heated Insoles - XXLarge (2 THS01-XXL/Case) |
| BASE MODEL | THS01-XXL-06 | UNITED STATES | 10813134020090 | | ThermaCELL | ThermaCELL Heated Insoles - XX-Large (6 THS01-XXL/Case) |
| BASE MODEL | THS01-XXLCC | UNITED STATES | 00813134020598 | 813134020598 | ThermaCELL | ThermaCELL Heated Insoles - XXLarge with Car Charger |
| BASE MODEL | THS01XXL-P-PAKS | UNITED STATES | 00813134020949 | 813134020949 | ThermaCell | Heated Insoles-Pack-XXLarge with Hand Warmer |
| BASE MODEL | THS01XXL-P-PAKS-03 | UNITED STATES | 10813134020946 | | ThermaCell | Heated Insoles-Pack-XXLarge with Hand Warmer (Case of 3) |

| PRODUCT | SKU | Country | GTIN | GTIN-12 (U.P.C.) | Brand Name | Product Description |
|---|---|---|---|---|---|---|
| BASE MODEL | THS-12MEN-D | UNITED STATES | 00813134020239 | | ThermaCELL | Heated Insoles Sidekick Display (4L, 6XL, 2XXL, 3CC) |
| BASE MODEL | THS-12MWY-D | UNITED STATES | 00813134020246 | | ThermaCELL | Heated Insoles Sidekick Display (2S, 2M, 2L, 4XL, 2XXL, 3CC) |
| BASE MODEL | THS-18MEN-D | UNITED STATES | 00813134020215 | | ThermaCELL | Heated Insoles Sidekick Display (6L, 9XL, 3XXL, 3CC) |
| BASE MODEL | THS-18MWY-D | UNITED STATES | 00813134020222 | | ThermaCELL | Heated Insoles Sidekick Display (3S, 3M, 3L, 6XL, 3XXL, 3CC) |
| BASE MODEL | THSALL16-QP | UNITED STATES | 00813134021076 | | ThermaCELL | Quarter Pallet Display All Product 16 |
| BASE MODEL | THSCC-1 | UNITED STATES | 00813134020109 | 813134020109 | ThermaCELL | ThermaCELL Heated Insoles - Car Charger |
| BASE MODEL | THSCC-1-06 | UNITED STATES | 10813134020106 | | ThermaCELL | ThermaCELL Heated Insoles - Car Charger (6 TSCC-1/Case) |
| BASE MODEL | THSHWPAK-QP1 | UNITED STATES | 00813134020741 | | ThermaCELL | Heated Insoles Quarter Pallet Display |
| BASE MODEL | THSHW-QP1 | UNITED STATES | 00813134020758 | | ThermaCELL | Heated Insoles Quarter Pallet Display |
| BASE MODEL | THSPAK-NXC | UNITED STATES | 00813134020024 | | ThermaCELL | Heated Insoles Sidekick Display (3M, 6L, 9XL, 9PAK-S) |
| BASE MODEL | THSXHD16-QP | UNITED STATES | 00813134021083 | | ThermaCELL | Quarter Pallet Display No HD 16 |
| HEAT PACKS | PAK-3S3L (CA) | CANADA | 00813134020536 | | ThermaCELL | ThermaCELL Heat Pack Multi Pack 3S3L (CA) |
| HEAT PACKS | PAK-BL(CA) | CANADA | 00813134020833 | 813134020833 | ThermaCell | Heat Packs - Bluetooth Pocket Warmer (1 pack) |
| HEAT PACKS | PAK-BL-6(CA) | CANADA | 10813134020830 | | ThermaCell | Heat Packs - Bluetooth Pocket Warmer (1 pack) (6 XXX-L/Case) |
| HEAT PACKS | PAK-L(CA) | CANADA | 00813134020420 | 813134020420 | ThermaCELL | ThermaCELL Heat Packs - Pocket Warmer (1 pack) |
| HEAT PACKS | PAK-L-06(CA) | CANADA | 10813134020427 | | ThermaCELL | ThermaCELL Heat Packs - Pocket Warmer [1 pack] (6 PAK-L/Case) |
| HEAT PACKS | PAK-S(CA) | CANADA | 00813134020413 | 813134020413 | ThermaCELL | ThermaCELL Heat Packs - Hand Warmers (2 pack) |
| HEAT PACKS | PAK-S-06(CA) | CANADA | 10813134020410 | | ThermaCELL | ThermaCELL Heat Packs - Hand Warmers [2 pack] (6 PAK-S/Case) |
| HEAT PACKS | PAK-3S3L | UNITED STATES | 00813134020529 | | ThermaCELL | ThermaCELL Heat Pack Multi Pack 3S3L |
| HEAT PACKS | PAK-BL | UNITED STATES | 00813134020826 | 813134020826 | ThermaCell | Heat Packs - Bluetooth Pocket Warmer (1 pack) |
| HEAT PACKS | PAK-BL-6 | UNITED STATES | 10813134020823 | | ThermaCell | Heat Packs - Bluetooth Pocket Warmer (1 pack) (6 XXX-L/Case) |
| HEAT PACKS | PAK-L | UNITED STATES | 00813134020185 | 813134020185 | ThermaCELL | ThermaCELL Heat Packs - Pocket Warmer (1 pack) |
| HEAT PACKS | PAK-L-06 | UNITED STATES | 10813134020182 | | ThermaCELL | ThermaCELL Heat Packs - Pocket Warmer [1 pack] (6 PAK-L/Case) |
| HEAT PACKS | PAK-P-1S1L | UNITED STATES | 00813134020635 | 813134020635 | ThermaCELL | Heat Pack Bundle 1S1L |
| HEAT PACKS | PAK-P-1S1L-03 | UNITED STATES | 10813134020632 | | ThermaCELL | Heat Pack Bundle 1S1L (Case of 3) |
| HEAT PACKS | PAK-S | UNITED STATES | 00813134020178 | 813134020178 | ThermaCELL | ThermaCELL Heat Packs - Hand Warmers (2 pack) |
| HEAT PACKS | PAK-S-06 | UNITED STATES | 10813134020175 | | ThermaCELL | ThermaCELL Heat Packs - Hand Warmers [2 pack] (6 PAK-S/Case) |
| HEAT PACKS | PAK-S12L6-D | UNITED STATES | 00813134020628 | | ThermaCELL | Heat Pack 18 Unit Display (S12, L6) |
| HEAVY DUTY | PFHD-12MEN-D(CA) | CANADA | 00813134021298 | | ThermaCELL | ProFLEX Heavy Duty Sidekick |
| HEAVY DUTY | PFHD-12MWY-D(CA) | CANADA | 00813134021304 | | ThermaCELL | ProFLEX Heavy Duty Sidekick |
| HEAVY DUTY | PFHD-18MEN-D (CA) | CANADA | 00813134021274 | | ThermaCELL | ProFLEX Heavy Duty Sidekick Display |
| HEAVY DUTY | PFHD-18MWY-D(CA) | CANADA | 00813134021281 | | ThermaCELL | ProFLEX Heavy Duty Sidekick |
| HEAVY DUTY | PFHD-L(CA) | CANADA | 00813134020871 | 813134020871 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Large |
| HEAVY DUTY | PFHD-L-6(CA) | CANADA | 10813134020878 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Large (6 XXXX-L/Case) |
| HEAVY DUTY | PFHD-M(CA) | CANADA | 00813134020864 | 813134020864 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Medium |
| HEAVY DUTY | PFHD-M-6(CA) | CANADA | 10813134020861 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Medium (6 XXXX-M/Case) |
| HEAVY DUTY | PFHD-S(CA) | CANADA | 00813134020857 | 813134020857 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Small |
| HEAVY DUTY | PFHD-S-6(CA) | CANADA | 10813134020854 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Small (6 XXXX-S/Case) |
| HEAVY DUTY | PFHD-XB(CA) | CANADA | 00813134020840 | 813134020840 | ThermaCell | Heated Insoles ProFLEX Heavy Duty Battery Pack |
| HEAVY DUTY | PFHD-XB-6(CA) | CANADA | 10813134020847 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty Battery Pack (6 XXXX-XB/Case) |
| HEAVY DUTY | PFHD-XL(CA) | CANADA | 00813134020888 | 813134020888 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - X-Large |
| HEAVY DUTY | PFHD-XL-6(CA) | CANADA | 10813134020885 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - X-Large (6 XXXX-XL/Case) |
| HEAVY DUTY | PFHD-XXL(CA) | CANADA | 00813134020895 | 813134020895 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XX-Large |

SCHEDULE B

| PRODUCT | SKU | Country | GTIN | GTIN-12 (U.P.C.) | Brand Name | Product Description |
|---|---|---|---|---|---|---|
| HEAVY DUTY | PFHD-XXL-6(CA) | CANADA | 10813134020892 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XX-Large (6 XXXX-XXL/Cas |
| HEAVY DUTY | PFHD-L(NOR) | Norway | 00813134021106 | 813134021106 | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Large |
| HEAVY DUTY | PFHD-L-6(NOR) | Norway | 10813134021103 | | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Large (6-L/Case) |
| HEAVY DUTY | PFHD-M(NOR) | Norway | 00813134021113 | 813134021113 | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Medium |
| HEAVY DUTY | PFHD-M-6(NOR) | Norway | 10813134021110 | | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Medium (6-M/Case) |
| HEAVY DUTY | PFHD-S(NOR) | Norway | 00813134021120 | 813134021120 | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Small |
| HEAVY DUTY | PFHD-S-6(NOR) | Norway | 10813134021127 | | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Small (6-S/Case) |
| HEAVY DUTY | PFHD-XB(NOR) | Norway | 00813134021151 | 813134021151 | ThermaCELL | Heated Insoles ProFLEX Heavy Duty Battery Pack |
| HEAVY DUTY | PFHD-XB-6(NOR) | Norway | 10813134021158 | | ThermaCELL | Heated Insoles ProFLEX Heavy Duty Battery Pack (6-XB/Case) |
| HEAVY DUTY | PFHD-XL(NOR) | Norway | 00813134021137 | 813134021137 | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XLarge |
| HEAVY DUTY | PFHD-XL-6(NOR) | Norway | 10813134021134 | | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XLarge (6-XL/Case) |
| HEAVY DUTY | PFHD-XXL(NOR) | Norway | 00813134021144 | 813134021144 | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XXLarge |
| HEAVY DUTY | PFHD-XXL-6(NOR) | Norway | 10813134021141 | | ThermaCELL | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XXLarge (6-XXL/Case) |
| HEAVY DUTY | PFHD-L(SWD) | SWEDEN | 00813134020970 | 813134020970 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Large |
| HEAVY DUTY | PFHD-L-6(SWD) | SWEDEN | 10813134020977 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Large (6-L/Case) |
| HEAVY DUTY | PFHD-M(SWD) | SWEDEN | 00813134020963 | 813134020963 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Medium |
| HEAVY DUTY | PFHD-M-6(SWD) | SWEDEN | 10813134020960 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Medium (6-M/Case) |
| HEAVY DUTY | PFHD-S(SWD) | SWEDEN | 00813134020956 | 813134020956 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Small |
| HEAVY DUTY | PFHD-S-6(SWD) | SWEDEN | 10813134020953 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Small (6-S/Case) |
| HEAVY DUTY | PFHD-XB(SWD) | SWEDEN | 00813134021014 | 813134021014 | ThermaCell | Heated Insoles ProFLEX Heavy Duty Battery Pack |
| HEAVY DUTY | PFHD-XB-6(SWD) | SWEDEN | 10813134021011 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty Battery Pack (6-XB/Case) |
| HEAVY DUTY | PFHD-XL(SWD) | SWEDEN | 00813134020987 | 813134020987 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - X-Large |
| HEAVY DUTY | PFHD-XL-6(SWD) | SWEDEN | 10813134020984 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - X-Large (6-XL/Case) |
| HEAVY DUTY | PFHD-XXL(SWD) | SWEDEN | 00813134021007 | 813134021007 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XX-Large |
| HEAVY DUTY | PFHD-XXL-6(SWD) | SWEDEN | 10813134021004 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XX-Large (6-XXL/Case) |
| HEAVY DUTY | PFHD-12MEN-D | UNITED STATES | 00813134021250 | | ThermaCELL | ProFLEX Heavy Duty Sidekick Display Copy Copy |
| HEAVY DUTY | PFHD-12MWY-D | UNITED STATES | 00813134021267 | | ThermaCELL | ProFLEX Heavy Duty Sidekick Display Copy |
| HEAVY DUTY | PFHD-18MEN-D | UNITED STATES | 00813134021243 | | ThermaCELL | ProFLEX Heavy Duty Sidekick Display Copy |
| HEAVY DUTY | PFHD-18MWY-D | UNITED STATES | 00813134021236 | | ThermaCELL | ProFLEX Heavy Duty Sidekick Display |
| HEAVY DUTY | PFHD-L | UNITED STATES | 00813134020789 | 813134020789 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Large |
| HEAVY DUTY | PFHD-L-6 | UNITED STATES | 10813134020786 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Large (6 XXXX-L/Case) |
| HEAVY DUTY | PFHD-M | UNITED STATES | 00813134020772 | 813134020772 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Medium |
| HEAVY DUTY | PFHD-M-6 | UNITED STATES | 10813134020779 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Medium (6 XXXX-M/Case) |
| HEAVY DUTY | PFHD-S | UNITED STATES | 00813134020765 | 813134020765 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Small |
| HEAVY DUTY | PFHD-S-6 | UNITED STATES | 10813134020762 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - Small (6 XXXX-S/Case) |
| HEAVY DUTY | PFHD-XB | UNITED STATES | 00813134020819 | 813134020819 | ThermaCell | Heated Insoles ProFLEX Heavy Duty Battery Pack |
| HEAVY DUTY | PFHD-XB-6 | UNITED STATES | 10813134020816 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty Battery Pack (6 XXXX-XB/Case) |
| HEAVY DUTY | PFHD-XL | UNITED STATES | 00813134020796 | 813134020796 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - X-Large |
| HEAVY DUTY | PFHD-XL-6 | UNITED STATES | 10813134020793 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - X-Large (6 XXXX-XL/Case) |
| HEAVY DUTY | PFHD-XXL | UNITED STATES | 00813134020802 | 813134020802 | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XX-Large |
| HEAVY DUTY | PFHD-XXL-6 | UNITED STATES | 10813134020809 | | ThermaCell | Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) - XX-Large (6 XXXX-XXL/Cas |
| PROFLEX | HW20-12MEN-D(CA) | CANADA | 00813134020505 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (4L, 6XL, 2XXL, 6XB)CA |
| PROFLEX | HW20-12MWY-D(CA) | CANADA | 00813134020512 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (2S, 2M, 2L, 4XL, 2XXL, 6XB)CA |

SCHEDULE B

| PRODUCT | SKU | Country | GTIN | GTIN-12 (U.P.C.) | Brand Name | Product Description |
|---|---|---|---|---|---|---|
| PROFLEX | HW20-18MEN-D(CA) | CANADA | 00813134020017 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (6L, 9XL, 3XXL, 9XB)CA |
| PROFLEX | HW20-18MWY-D(CA) | CANADA | 00813134020499 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (3S, 3M, 3L, 6XL, 3XXL, 9XB)CA |
| PROFLEX | HW20-L(CA) | CANADA | 00813134020376 | 813134020376 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Large |
| PROFLEX | HW20-L-06(CA) | CANADA | 10813134020373 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Large (6 HW20-L/Case) |
| PROFLEX | HW20-M(CA) | CANADA | 00813134020369 | 813134020369 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Medium |
| PROFLEX | HW20-M-06(CA) | CANADA | 10813134020366 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Medium (6 HW20-M/Case) |
| PROFLEX | HW20-S(CA) | CANADA | 00813134020352 | 813134020352 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Small |
| PROFLEX | HW20-S-06(CA) | CANADA | 10813134020359 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Small (6 HW20-S/Case) |
| PROFLEX | HW20-XB(CA) | CANADA | 00813134020406 | 813134020406 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Battery Pack |
| PROFLEX | HW20-XB-06(CA) | CANADA | 10813134020403 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Battery Pack (6 HW20-XB/Case) |
| PROFLEX | HW20-XL(CA) | CANADA | 00813134020383 | 813134020383 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - X-Large |
| PROFLEX | HW20-XL-06(CA) | CANADA | 10813134020380 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - X-Large (6 HW20-XL/Case) |
| PROFLEX | HW20-XXL(CA) | CANADA | 00813134020390 | 813134020390 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - XX-Large |
| PROFLEX | HW20-XXL-06(CA) | CANADA | 10813134020397 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - XX-Large (6 HW20-XXL/Case) |
| PROFLEX | HW20-L(SWD) | SWEDEN | 00813134020994 | 813134020994 | ThermaCELL | Heated Insoles ProFLEX - Large |
| PROFLEX | HW20-L-06(SWD) | SWEDEN | 10813134020991 | | ThermaCELL | Heated Insoles ProFLEX - Large (6 HW20-L/Case) |
| PROFLEX | HW20-M(SWD) | SWEDEN | 00813134021021 | | ThermaCELL | Heated Insoles ProFLEX - Medium |
| PROFLEX | HW20-M-06(SWD) | SWEDEN | 10813134021028 | | ThermaCELL | Heated Insoles ProFLEX - Medium (6 HW20-M/Case) |
| PROFLEX | HW20-S(SWD) | SWEDEN | 00813134021038 | 813134021038 | ThermaCELL | Heated Insoles ProFLEX - Small |
| PROFLEX | HW20-S-06(SWD) | SWEDEN | 10813134021035 | | ThermaCELL | Heated Insoles ProFLEX - Small (6 HW20-S/Case) |
| PROFLEX | HW20-XB(SWD) | SWEDEN | 00813134021045 | 813134021045 | ThermaCELL | Heated Insoles ProFLEX - Battery Pack |
| PROFLEX | HW20-XB-06(SWD) | SWEDEN | 10813134021042 | | ThermaCELL | Heated Insoles ProFLEX - Battery Pack (6 HW20-XB/Case) |
| PROFLEX | HW20-XL(SWD) | SWEDEN | 00813134021052 | 813134021052 | ThermaCELL | Heated Insoles ProFLEX - X-Large |
| PROFLEX | HW20-XL-06(SWD) | SWEDEN | 10813134021059 | | ThermaCELL | Heated Insoles ProFLEX - X-Large (6 HW20-XL/Case) |
| PROFLEX | HW20-XXL(SWD) | SWEDEN | 00813134021069 | 813134021069 | ThermaCELL | Heated Insoles ProFLEX - XX-Large |
| PROFLEX | HW20-XXL-06(SWD) | SWEDEN | 10813134021066 | | ThermaCELL | Heated Insoles ProFLEX - XX-Large (6 HW20-XXL/Case) |
| PROFLEX | HW20-12MEN-D | UNITED STATES | 00813134020277 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (4L, 6XL, 2XXL, 6XB) |
| PROFLEX | HW20-12MWY-D | UNITED STATES | 00813134020284 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (2S, 2M, 2L, 4XL, 2XXL, 6XB) |
| PROFLEX | HW20-18MEN-D | UNITED STATES | 00813134020253 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (6L, 9XL, 3XXL, 9XB) |
| PROFLEX | HW20-18MWY-D | UNITED STATES | 00813134020260 | | ThermaCELL | Heated Insoles ProFLEX Sidekick Display (3S, 3M, 3L, 6XL, 3XXL, 9XB) |
| PROFLEX | HW20-L | UNITED STATES | 00813134020130 | 813134020130 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Large |
| PROFLEX | HW20-L-06 | UNITED STATES | 10813134020137 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Large (6 HW20-L/Case) |
| PROFLEX | HW20-M | UNITED STATES | 00813134020123 | 813134020123 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Medium |
| PROFLEX | HW20-M-06 | UNITED STATES | 10813134020120 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Medium (6 HW20-M/Case) |
| PROFLEX | HW20-NXC | UNITED STATES | 00813134021311 | | ThermaCELL | Heated Insoles Sidekick Display (3M, 5L, 8XL, 2XXL, 9XB) |
| PROFLEX | HW20-P-LXB | UNITED STATES | 00813134020710 | 813134020710 | ThermaCELL | ProFlex-Pack-Large with Extra Battery Pack |
| PROFLEX | HW20-P-LXB-03 | UNITED STATES | 10813134020717 | | ThermaCELL | ProFlex-Pack-Large with Extra Battery Pack (Case of 3) |
| PROFLEX | HW20-P-MXB | UNITED STATES | 00813134020727 | 813134020727 | ThermaCELL | ProFlex-Pack-Medium with Extra Battery Pack |
| PROFLEX | HW20-P-MXB-03 | UNITED STATES | 10813134020724 | | ThermaCELL | ProFlex-Pack-Medium with Extra Battery Pack (Case of 3) |
| PROFLEX | HW20-P-SXB | UNITED STATES | 00813134020734 | 813134020734 | ThermaCELL | ProFlex-Pack-Small with Extra Battery Pack |
| PROFLEX | HW20-P-SXB-03 | UNITED STATES | 10813134020731 | | ThermaCELL | ProFlex-Pack-Small with Extra Battery Pack (Case of 3) |
| PROFLEX | HW20-P-XLXB | UNITED STATES | 00813134020703 | 813134020703 | ThermaCELL | ProFlex-Pack-XLarge with Extra Battery Pack |
| PROFLEX | HW20-P-XLXB-03 | UNITED STATES | 10813134020700 | | ThermaCELL | ProFlex-Pack-XLarge with Extra Battery Pack (Case of 3) |

**SCHEDULE B**

| PRODUCT | SKU | Country | GTIN | GTIN-12 (U.P.C.) | Brand Name | Product Description |
|---|---|---|---|---|---|---|
| PROFLEX | HW20-P-XXLXB | UNITED STATES | 00813134020697 | 813134020697 | ThermaCELL | ProFlex-Pack-XXLarge with Extra Battery Pack |
| PROFLEX | HW20-P-XXLXB-03 | UNITED STATES | 10813134020694 | | ThermaCELL | ProFlex-Pack-XXLarge with Extra Battery Pack (Case of 3) |
| PROFLEX | HW20-S | UNITED STATES | 00813134020116 | 813134020116 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Small |
| PROFLEX | HW20-S-06 | UNITED STATES | 10813134020113 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Small (6 HW20-S/Case) |
| PROFLEX | HW20-XB | UNITED STATES | 00813134020161 | 813134020161 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Battery Pack |
| PROFLEX | HW20-XB-06 | UNITED STATES | 10813134020168 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - Battery Pack (6 HW20-XB/Case) |
| PROFLEX | HW20-XL | UNITED STATES | 00813134020147 | 813134020147 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - X-Large |
| PROFLEX | HW20-XL-06 | UNITED STATES | 10813134020144 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - X-Large (6 HW20-XL/Case) |
| PROFLEX | HW20-XXL | UNITED STATES | 00813134020154 | 813134020154 | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - XX-Large |
| PROFLEX | HW20-XXL-06 | UNITED STATES | 10813134020151 | | ThermaCELL | ThermaCELL Heated Insoles ProFLEX - XX-Large (6 HW20-XXL/Case) |

## SCHEDULE C
## CERTIFICATIONS

See attached list which is incorporated by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC, Asset Purchase Agreement

Buyer          Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

## SCHEDULE C

## CERTIFICATIONS

See attached list which is incorporated by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

_____     _____
       Buyer                    Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

Schedule C

## Certifications

### Heated Insoles (THS01)

**US**
Power supply UL certified
Car charger UL certified
Battery UR certified and UN DOT 38.3 certified
FCC Class B.  Remote is FCC Licensed.
CEC Compliant
Prop 65 compliant

**Canada**
Power Supply  cUL Certified
Car charger UL certified
Battery UR certified and UN DOT 38.3 certified
ICES Class B.  Remote is ICES Licensed.

**Europe**
Power Supply CE certified
Car charger CE certified
Battery CE Certified
Power Supply, remote and insoles – CE certified
Directives Applied for CE: Low Voltage, EMC, RTT&E (transitioning to RED), ROHS, ErP, Packaging and Packaging Waste

**Russia**
Power Supply EAC certified
Car Charger EAC certified

**India**
Remote Certified

### Heated Insoles ProFLEX (HW20)

**US**
Power supply UL certified
Battery UR certified and UN DOT 38.3 certified
FCC Class B.  Remote is FCC Licensed.
Mag 141 is CEC Compliant
Prop 65 compliant

**Canada**
Power Supply  cUL Certified
Battery UR certified and UN DOT 38.3 certified
ICES Class B.  Remote is ICES Licensed.

**Europe**
Power Supply CE certified
Battery CE Certified
Power Supply, remote and insoles – CE certified
Directives Applied for CE: Low Voltage, EMC, RTT&E (transitioning to RED), ROHS, WEEE

### Heated Insoles ProFLEX Heavy Duty (w/ Bluetooth) (PFHD)

**US**
Power supply UL certified
Battery UR certified and UN DOT 38.3 certified
Insole is FCC Licensed.
MAG 143 is CEC Compliant
Prop 65 compliant

**Canada**
Power Supply cUL Certified
Battery UR certified and UN DOT 38.3 certified
Insole is ICES Licensed.

**Europe**
Power Supply CE certified
Battery CE Certified

Directives Applied for CE: Low Voltage, EMC, RTT&E (transitioning to RED), ROHS

### Heat Packs - Hand Warmers (2 pack) (PAK-S)

**US**
Power supply is UL certified
Battery is UR certified and UN DOT 38.3 compliant
FCC Tested for Class B
CEC Energy Efficient compliant
Prop 65 compliant

**Canada**
Power supply is cUL certified
ICES Tested for Class B
CEC Energy Efficient

**Europe**
Power supply is CE certified
Battery is CE certified
CISPR 14 compliant
Directives Applied for CE: Low Voltage, EMC, ROHS

### Heat Packs - Pocket Warmer (1 pack) (PAK-L)

**US**
Power supply is UL certified
Battery is UR certified and UN DOT 38.3 compliant
FCC Tested for Class B
CEC Energy Efficient compliant
Prop 65 compliant

**Canada**
Power supply is cUL certified
ICES Tested for Class B
CEC Energy Efficient

**Europe**
Power supply is CE certified
Battery is CE certified
CISPR 14 compliant
Directives Applied for CE: Low Voltage, EMC, ROHS

### Heat Packs - Bluetooth Pocket Warmer (1 pack) (PAK-BL)

**US**
Power supply is UL certified
Battery is UR certified and UN DOT 38.3 compliant
FCC Licensed for BT
CEC compliant

**Canada**
Power supply is cUL certified
ICES Licensed for BT

**Europe**
Power supply is CE certified
Battery is CE certified
CISPR 22 compliant



**EXHIBIT 2.08(a)**

**ASSIGNMENT OF TRANSFERRED ASSETS**

See attached Assignment incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

Buyer          Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

**EXHIBIT 2.08(a)**

**ASSIGNMENT OF TRANSFERRED ASSETS**

See attached Assignment incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

_____     _____
       Buyer              Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

## ASSIGNMENT

THIS ASSIGNMENT (the "**Assignment**") is made effective as of July  18 , 2017, by and between Schawbel Technologies LLC, a Massachusetts corporation (the "**Seller**") and Heat Factory USA, Inc., a Nevada corporation (the "**Purchaser**").

### RECITALS

A.   Pursuant to an Asset Purchase Agreement (the "**Purchase Agreement**") among the parties, as of the Effective Date the Seller agrees to sell to the Purchaser, and the Purchaser agreed to purchase from the Seller, certain tangible and intangible assets pertaining to Seller's business, which assets are more specifically described in the Purchase Agreement and defined as the "**Transferred Assets**," upon the terms and conditions set out therein;

B.   All capitalized terms used herein and not otherwise defined herein shall have the same meanings herein as in the Purchase Agreement.

**NOW THEREFORE,** in consideration of the closing of the aforementioned transaction as contemplated in the Purchase Agreement, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all parties, the parties hereto agree as follows:

### AGREEMENT

1.   **Assignment.**  Subject to and with the benefit of the provisions of the Purchase Agreement, the Seller hereby assigns, grants, bargains, sells, transfers, conveys, and sets over unto the Purchaser, all of its rights, titles, interests, benefits, and privileges in and to the intangible portion of the Transferred Assets, such transfer to be free and clear of all Liens, Claims and encumbrances.  Purchaser hereby accepts such assignment of the intangible portion of the Transferred.  This Assignment shall operate as a transfer and assignment by the Seller to the Purchaser of the intangible portion of the Transferred Assets as and from the Effective Date, subject to any limitations set forth in the Purchase Agreement.

2.   **Entitlement to Assets.**  The Seller is now rightfully and absolutely possessed of and entitled to the intangible portion of the Transferred Assets and has in it good right, title, and authority to assign the same unto the Purchaser, according to the true intent and meaning of this Assignment. The Purchaser shall immediately upon the execution and delivery of this Assignment have possession of and may from time to time and at all times hereafter peaceably and quietly have, hold, possess, and enjoy the intangible portion of the Transferred Assets and every part thereof for its own use and benefit, free of all liens as provided in the Purchase Agreement.

3.   **Further Acts.**  The Seller shall promptly do, make, execute or deliver, or cause to be done, made, executed or delivered, all such further acts, documents and things as the Purchaser may reasonably require from time to time for the purpose of giving effect to this Assignment and shall take all such steps as may be reasonably within its power to implement to their full extent the provisions of this Assignment.  If the Seller fails to execute and deliver any documents that the Purchaser may reasonably require pursuant to this section within a period of fifteen (15) calendar days after request therefor has been made by the Purchaser, then the Purchaser shall be entitled to execute and deliver such documents as the attorney of the Seller for such purpose the Seller hereby appoint the Purchaser, as the Seller's attorneys, with full power of substitution, in the name of the Seller but on behalf of and for the benefit and at the expense of the Purchaser, to execute and do any deeds, transfers, conveyances, assignments, assurances and things which the Seller ought to do under the provisions hereof.  This appointment, coupled with an interest, is irrevocable by the Seller and shall not be revoked by the insolvency or bankruptcy of the Seller or by the dissolution, liquidation, or other termination of the existence of the Seller or for any other reason.



4.      **Successors and Assigns.** This Assignment shall inure to the benefit of the Purchaser, its successors and assigns and shall be binding upon the Seller, its respective heirs, executors, administrators, personal representatives, successors, and permitted assigns.

5.      **Conflict in Terms.** The Assignment is subject to, is entered into and under the terms of, and is not in derogation of or in addition to any of the rights which the parties hereto may have under the Purchase Agreement. In the event of any conflict or inconsistency between the provisions of this Assignment and the provisions of the Purchase Agreement, the provisions of the Agreement shall prevail.

6.      **Counterparts.** This Assignment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same instrument. The delivery of an executed counterpart copy of this Assignment by facsimile or telecopy shall be deemed to be the equivalent of the delivery of an original executed copy thereof.

7.   **Governing Law.** This Bill of Sale shall be governed by the laws of the State of Massachusetts.

**IN WITNESS WHEREOF** this Assignment has been executed effective as of July _18_, 2017.

**PURCHASER:**                                  **SELLER:**

Heat Factory, USA, Inc.                         Schawbel Technologies LLC

By: _____                  By: _____
Name:  David Treptow    _7-18-17_               Name:
Title: President                                Title:

4.      **Successors and Assigns.**  This Assignment shall inure to the benefit of the Purchaser, its successors and assigns and shall be binding upon the Seller, its respective heirs, executors, administrators, personal representatives, successors, and permitted assigns.

5.      **Conflict in Terms.**  The Assignment is subject to, is entered into and under the terms of, and is not in derogation of or in addition to any of the rights which the parties hereto may have under the Purchase Agreement.  In the event of any conflict or inconsistency between the provisions of this Assignment and the provisions of the Purchase Agreement, the provisions of the Agreement shall prevail.

6.      **Counterparts.**  This Assignment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.  The delivery of an executed counterpart copy of this Assignment by facsimile or telecopy shall be deemed to be the equivalent of the delivery of an original executed copy thereof.

7.  **Governing Law.**  This Bill of Sale shall be governed by the laws of the State of Massachusetts.

**IN WITNESS WHEREOF** this Assignment has been executed effective as of July 18 , 2017.

**PURCHASER:**                          **SELLER:**

Heat Factory, USA, Inc.                 Schawbel Technologies LLC

By: _____        By: _____
Name:  David Treptow                    Name:
Title: President                        Title:   C.E.O

## EXHIBIT 2.08(c)
## SELLER'S AUTHORITY

See attached Seller's Authority incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

Buyer        Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

**EXHIBIT 2.08(c)**

**SELLER'S AUTHORITY**

See attached Seller's Authority incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

_____        _____
Buyer                          Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

# SCHAWBEL TECHNOLOGIES, LLC

## MANAGER'S CERTIFICATE

July  18 , 2017

This Certificate is delivered pursuant to the Asset Purchase Agreement (the "APA"), dated as of July18, 2017, by and between Schawbel Technologies LLC, ("ST") a Massachusetts limited liability company ("Seller"), and Heat Factory, USA, Inc. ("HF"), a Delaware corporation, and the Exclusive License Agreement dated as of July 18 , 2017, by and between ST and HF ("License") .  Capitalized terms used and not otherwise defined herein shall have the meanings assigned to them in the APA and the License.

The undersigned hereby certifies that he is a Manager and the Director of Seller and as such is authorized to execute and deliver this Certificate on behalf of Seller and hereby further certifies, solely in his capacity as a Manager and Director of the Seller, on behalf of Seller as follows:

1.      Attached hereto as Annex A is a true and correct copy of the resolution granting this Director the Authority to execute and deliver the APA and the License and authorizing the consummation of the transactions contemplated thereby.

2.      The undersigned is the duly qualified Director of Seller and is duly authorized to execute and deliver on behalf of Seller the APA and the License and the other agreements and instruments contemplated thereby.

**IN WITNESS WHEREOF,** this Certificate is executed by the undersigned on the date first written above.

By: _____

Name: William Schawbel

Title:  Manager/Director

# ANNEX A

## Resolution

**SCHAWBEL TECHNOLOGIES LLC.**
**a Massachusetts Limited Liability Company**

WRITTEN CONSENT AND RESOLUTION OF THE MEMBERS

The undersigned, being the members of Schawbel Technologies LLC, a Massachusetts limited liability company (the "Company"), acting by written consent in lieu of a meeting, hereby adopt the following resolutions:

Whereas, William Schawbel and Josh A. Schawbel, the Members of the Company (the "Members"), have deemed it advisable and in the best interests of the Company and the Members of the Company to enter into, and consummate the transactions contemplated by, that certain Asset Purchase Agreement (the "APA") by and between the Company and Heat Factory, USA, Inc. (the "Purchaser" or "HF") , substantially in the form presented to the Members, and that certain Exclusive License Agreement between the Company and HF (the "License"), substantially in the form presented to the Members; and

NOW, THEREFORE, BE IT RESOLVED, that, the APA and the License and the transactions contemplated thereby are hereby approved; and

FURTHER RESOLVED, that the form, terms and provisions of the APA and the License and each of the other documents and agreements completed thereby (collectively, the "Transaction Documents") are hereby approved, each with such changes, amendments or modifications as the Director of the Company may deem necessary or desirable and approve, the execution and delivery thereof being conclusive evidence of that approval; and

FURTHER RESOLVED, that the Manager of the Company and the Director (the "Authorized Person") is hereby authorized and directed to sign and deliver the Transaction Documents, and to execute and deliver all such further documents, certificates or instructions, to take all such further actions, and to pay all such expense that the Authorized Person may deem necessary or desirable and approve in order to carry out the foregoing resolutions, the execution and delivery of any such documents, certificates or instructions, the taking of any such action, and the payment of any such expenses being conclusive evidence of that approval, with all previous actions taken by the Authorized Person being hereby ratified, confirmed and approved.

Executed as of July 18 , 2017.

By: _William Schawbel_
     William Schawbel

By: _J. Schawbel_
     Josh A. Schawbel

**EXHIBIT 2.08(e)**

**BILL OF SALE**

See attached Bill of Sale incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

Buyer        Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

**EXHIBIT 2.08(e)**

**BILL OF SALE**


See attached Bill of Sale incorporated herein by reference.


Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

<table>
<tr><td>_____</td><td>_____</td></tr>
<tr><td>Buyer</td><td>Seller</td></tr>
</table>

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

## BILL OF SALE

THIS BILL OF SALE (the "**Bill of Sale**") is made effective as of July  18 , 2017, by and between Schawbel Technologies LLC, a Massachusetts corporation (the "**Seller**") and Heat Factory USA, Inc., a Nevada corporation (the "**Purchaser**").

### Recitals

A.      Pursuant to an Asset Purchase Agreement (the "**Purchase Agreement**") among the parties, as of the Effective Date the Seller agrees to sell to the Purchaser, and the Purchaser agreed to purchase from the Seller, certain tangible and intangible assets pertaining to Seller's business, which assets are more specifically described in the Purchase Agreement and defined as the "**Transferred Assets**," upon the terms and conditions set out therein;

B.      All capitalized terms used herein and not otherwise defined herein shall have the same meanings herein as in the Purchase Agreement;

**NOW THEREFORE,** in consideration of the closing of the aforementioned transaction as contemplated in the Purchase Agreement, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all parties, the parties hereto agree as follows:

### Agreement

1.      **Bill of Sale.**  Subject to and with the benefit of the provisions of the Purchase Agreement, and effective as and from the Effective Date, the Seller hereby sells, assigns, transfers, and conveys all of its rights, title, interest, property, and claim of, in and to the tangible portion of the Transferred  Assets and every part thereof unto and to the use of the Purchaser, its successors and assigns, to have and to hold the tangible portion of the Transferred Assets and every part thereof, and all of the right, title, and interest of the Seller therein and thereto, such transfer to be free and clear of all Liens, Claims and encumbrances.

2.      **Entitlement to Assets.**  The Seller is now rightfully and absolutely possessed of and entitled to the tangible portion of the Transferred Assets and has in it good right, title, and authority to assign the same unto the Purchaser, according to the true intent and meaning of this Bill of Sale.  The Purchaser shall immediately upon the execution and delivery of this Bill of Sale have possession of and may from time to time and at all times hereafter peaceably and quietly have, hold, possess, and enjoy the tangible portion of the Transferred Assets and every part thereof for its own use and benefit, free of all liens as provided in the Purchase Agreement.

3.      **Further Acts.**  The Seller covenants and agrees with the Purchaser, its successors and assigns, that the Seller will from time to time and at all times hereafter, upon every reasonable request of the Purchaser, its successors or assigns, make, do and execute, or cause or procure to be made, done, and executed, all such further acts, deeds, and assurances as may be reasonably required by the Purchaser, its successors or assigns, in order to effect the complete vesting in the Purchaser, its successors and assigns, of the tangible portion of the Transferred Assets in accordance with the terms hereof.

4.      **Successors and Assigns.**  The provisions hereof shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.

5.      **Conflicting Provisions.**  This Bill of Sale is entered into under the terms of the Purchase Agreement and is not in derogation of any of the rights which the Parties have thereunder.  In the event of any conflict or inconsistency between the provisions of this Bill of Sale and the provisions of the Purchase Agreement, the provisions of the Purchase Agreement shall govern.

6.      **Counterparts.**  This Bill of Sale may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.  The delivery of an

executed counterpart copy of this Bill of Sale by facsimile or telecopy shall be deemed to be the equivalent of the delivery of an original executed copy thereof.

7.    **Governing Law.**  This Bill of Sale shall be governed by the laws of the State of Massachusetts.

**IN WITNESS WHEREOF** this Bill of Sale has been duly executed by the parties on July 18, 2017.

**PURCHASER:**                                        **SELLER:**

Heat Factory, USA, Inc.                               Schawbel Technologies LLC

By: _____                        By: _____
Name: David Treptow     7-18-17                       Name:
Title: President                                      Title:

executed counterpart copy of this Bill of Sale by facsimile or telecopy shall be deemed to be the equivalent of the delivery of an original executed copy thereof.

      7.    **Governing Law.**  This Bill of Sale shall be governed by the laws of the State of Massachusetts.

      **IN WITNESS WHEREOF** this Bill of Sale has been duly executed by the parties on July  18 , 2017.

**PURCHASER:**

Heat Factory, USA, Inc.


By: _____
Name: David Treptow
Title: President

**SELLER:**

Schawbel Technologies LLC


By: _____
Name:
Title:

**EXHIBIT 2.08(f)**

**LETTERS FROM PRESIDENT OF SCHAWBEL CORPORATION**


See attached letters which are incorporated herein by reference.

Buyer           Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

**EXHIBIT 2.08(f)**

**LETTERS FROM PRESIDENT OF SCHAWBEL CORPORATION**


See attached letters which are incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

_____    _____
Buyer          Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753



2400 District Avenue • Suite 150
Burlington, MA 01803
P: 781-522-5020 • 877-687-3741

June 1, 2017

The Schawbel Corporation (d/b/a Thermacell Repellents)
26 Crosby Drive
Bedford, MA 01730
Attention: Stephen Hill, President and Chief Executive Officer

Re:   Transitional Trademark License, Stock Contribution and Purchase Agreement

Reference is made to that certain Transitional Trademark License, dated as of July 2, 2014, as amended by that letter agreement dated November 11, 2015 (together, the "License Agreement"), by and between Schawbel Technologies LLC, a Massachusetts limited liability company ("Licensee"), and the Schawbel Corporation, a Massachusetts corporation ("Licensor"), as well as the Stock Contribution and Purchase Agreement, dated as of July 2, 2014 (the "SPA"), between Licensor, William Schawbel, Josh A. Schawbel, The Schawbel Family Foundation, Inc., TMR Merger Sub Co., a Delaware corporation, and TM Repellent Group, LLC, a Delaware limited liability company. Capitalized terms have the meanings assigned to them pursuant to the License Agreement or SPA unless otherwise noted.

Licensee is currently contemplating an asset sale transaction (the "Asset Sale") with Heat Factory USA or its affiliates ("HF") in which Schawbel Technologies will sell to HF certain products that used the Licensed Trademark and were in inventory as of March 31, 2017 (the "Inventory").

Licensee is also contemplating a license agreement (the "Heated Products License") with HF, whereby HF would license certain intellectual property that is not subject to the License Agreement or any other agreements with the Licensor, TM Repellent Group, LLC or affiliated entities. All future products manufactured by or for HF in connection with the Heated Products License will bear a new mark and will not bear the Licensed Trademark.

In connection with the Asset Sale and Heated Products License, Licensee and/or its affiliates and employees also anticipate providing certain transition services to HF with respect to the Licensee's Heated Products business and aspects of the Asset Sale and Heated Products License (the "Transition Agreement").

Licensee understands that HF has in the past, and may in the future, have activities that engage in or otherwise compete with the TMR Business, including distributing certain products for Sawyer Products (although we understand any prior formal relationship with Sawyer Products has been terminated).

For the avoidance of doubt, all payments due to Licensee pursuant to the Asset Sale, Heated Products License and Transition Agreement, and any services provided to HF by License or its affiliates and employees pursuant to the Transition Agreement or otherwise will be limited to the heated insoles and related business and technology and will in no way relate to the TMR Business.
Nevertheless, out of an abundance of caution, and pursuant to 6.6(a) of the SPA, Licensee hereby requests your written consent to engage in the foregoing relationship with HF.



I am glad to personally call or sit down with you to discuss further and provide final documentation for your records.

Please acknowledge your receipt of the foregoing by executing this letter in the space provided below.

Schawbel Technologies LLC

By: _____, *Pres*

William Schawbel, President

Acknowledged received by

The Schawbel Corporation

By: _____

Name: Steve Hill

Title: President

TM Merger Sub Co.

By: _____

Name: Steve Hill

Title: President

TM Repellent Group, LLC

By: _____

Name: Steve Hill

Title: President



2400 District Avenue • Ste. 150<br>
Burlington, MA 01803<br>
P: 781-522-5055 • 877-687-3741

June 1, 2017

The Schawbel Corporation (d/b/a Thermacell Repellents)
26 Crosby Drive
Bedford, MA 01730
Attention:  Stephen Hill, President and Chief Executive Officer

      Re:      <u>Sale of Licensed Inventory with Licensed Trademark to Heat Factory</u>

Reference is made to that certain Transitional Trademark License, dated as of July 2, 2014, as amended by that letter agreement dated November 11, 2015 (together, the "License Agreement"), by and between Schawbel Technologies LLC, a Massachusetts limited liability company ("Licensee"), and the Schawbel Corporation, a Massachusetts corporation ("Licensor"), as well as the Stock Contribution and Purchase Agreement, dated as of July 2, 2014 (the "SPA"), between Licensor, William Schawbel, Josh A. Schawbel, The Schawbel Family Foundation, Inc., TMR Merger Sub Co., a Delaware corporation, and TM Repellent Group, LLC, a Delaware limited liability company.  Capitalized terms have the meanings assigned to them pursuant to the License Agreement or SPA unless otherwise noted.

Licensee is currently contemplating an asset sale transaction (the "Asset Sale") with Heat Factory USA or its affiliates ("HF") in which Schawbel Technologies will sell to HF certain products that bear the Licensed Trademark and were in inventory as of March 31, 2017 (the "Inventory").

Heat Factory anticipates marketing, distributing and selling this purchased Inventory under the Licensed Trademark until such time as it is sold through.

Licensee and HF have requested your acknowledgment to the foregoing.

I am glad to personally call or sit down with you to discuss further and provide final documentation for your records.

Please acknowledge your receipt of the foregoing by executing this letter in the space provided below.

<em>[Signature page follows]</em>



Schawbel Technologies LLC

By: _____

William Schawbel, President

Receipt acknowledged by

The Schawbel Corporation

By: _____

Name: Steve Hill

Title: President

TM Merger Sub Co.

By: _____

Name: Steve Hill

Title: President

TM Repellent Group, LLC

By: _____

Name: Steve Hill

Title: President

## EXHIBIT 2.09(c)

## PURCHASER'S AUTHORITY

See attached Purchaser's Authority incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

Buyer      Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

## EXHIBIT 2.09(c)

## PURCHASER'S AUTHORITY

See attached Purchaser's Authority incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

| | |
|---|---|
| _____ | _____ |
| Buyer | Seller |

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

**HEAT FACTORY, USA, INC, a Nevada corporation**
**UNANIMOUS WRITTEN CONSENT OF DIRECTORS**
**IN LIEU OF SPECIAL MEETING**

Effective as of July 18, 2017

The undersigned, being all of the directors of Heat Factory, USA, Inc., a Nevada corporation (the "**Corporation**"), do hereby vote for, consent to and authorize the following actions effective July 18, 2017, it being understood that the execution of this consent is in lieu of holding a special meeting of the Board of Directors:

I.

AUTHORIZATION TO EXECUTE FINAL CLOSING DOCUMENTS FOR
ASSET PURCHASE AGREEMENT

WHEREAS, the officers of the Corporation have presented the Board of Directors with the proposed Asset Purchase Agreement (the "**Purchase Agreement**") to purchase assets from Schawbel Technologies LLC, a Massachusetts limited liability company, upon the terms and conditions contained in the Purchase Agreement.

WHEREAS, the Purchase Agreement anticipates that the asset purchase will be effective as of July 18, 2017 (the "**Purchase**");

WHEREAS, the Board of Directors believe the Purchase and the Purchase Agreement are in the best interest of the Corporation;

RESOLVED, that the officers of the Corporation are authorized to execute the Purchase Agreement and any and all documents necessary to affect the Purchase as provided in the Purchase Agreement, and all ancillary matters, for the benefit of the Corporation and on behalf of the Corporation.

II.

CLOSING

RESOLVED FURTHER, that upon execution of these Minutes, the Secretary of this Corporation is instructed to cause said Minutes to be inserted in their proper place in the Corporate Minute Book.

_____   7-18-17

David Treptow , Director

## SCHEDULE 3.06

## PRODUCT DEFECT CLAIMS

See attached Claim List which is incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

Buyer        Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

## SCHEDULE 3.06

## PRODUCT DEFECT CLAIMS

See attached Claim List which is incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

‾‾‾‾‾‾‾‾      ‾‾‾‾‾‾‾‾
Buyer            Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

Schedule 3.06

Dispute with Weistech – Seller had a relationship with a Taiwanese firm, Weistech Technology Co. LTD ("Weistech") which manufactured the base model of Seller's heated insoles in China.  Seller became aware of problems with the quality of the insole products, and independent testing SATRA, the leading independent testing laboratory for footwear, revealed that the problems were due to defects in workmanship by Weistech.   The parties worked together to try and address and resolve the problems, but they continued and worsened.  Consequently, Seller rejected two shipments of products and cancelled purchase orders for three other shipments.  Seller and Weistech met in December 2015 to negotiate an agreement to resolve the situation and indeed it appeared that the parties had agreed upon a resolution.  Weistech reneged on the agreement however and has been issuing invoices to Seller for products that were rejected and purchase orders that were cancelled.   Weistech claims that Borrower owes them $632,815 for the shipments that were rejected and cancelled.  Seller denies any liability to Weistech and has placed Weistech on notice that it is liable for the damages Seller has sustained as a result of Weistech's breach of the parties agreement.    No proceedings have been initiated.

Consumer Claim - In 2014 a consumer made a claim against the Company for a defective product.   The consumer no longer had the product or packaging at the time the claim was made, and although the Company believed that the defective item was actually that of a competitor a settlement of $8,000 was offered in order to save the cost of a prolonged legal proceeding. That offer accepted and the matter was settled in 2014.



## SCHEDULE 3.12

## SELLER'S INSURANCE

See attached Certificate of Insurance which is incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC, Asset Purchase Agreement

Buyer          Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

## SCHEDULE 3.12

## SELLER'S INSURANCE

See attached Certificate of Insurance which is incorporated herein by reference.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

_____    _____
Buyer                        Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753



# CERTIFICATE OF PROPERTY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 3/1/2016 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

If this certificate is being prepared for a party who has an insurable interest in the property, do not use this form. Use ACORD 27 or ACORD 28.

| PRODUCER | CONTACT NAME: Michael Edwards |
|---|---|
| Lawrence Carlin Insurance Agency<br>230 Jones Road<br><br>Falmouth          MA 02540 | PHONE (A/C, No, Ext): (508) 540-7100 / FAX (A/C, No): (508) 540-8426 |
| | E-MAIL ADDRESS: Michael@lawrencecarlin.com |
| | PRODUCER CUSTOMER ID: 00004571 |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED | INSURER A : Hartford Fire Insurance Co | |
| Schawbel Technologies LLC | INSURER B : Hartford Canada | |
| 2400 District Ave | INSURER C : | |
| Ste 150 | INSURER D : | |
| Burlington          MA 01803 | INSURER E : | |
| | INSURER F : | |

## COVERAGES        CERTIFICATE NUMBER: 2016 master property        REVISION NUMBER:

LOCATION OF PREMISES / DESCRIPTION OF PROPERTY (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

Loc# 00002: Tigers USA Global Logistics Inc. 1100 Thorndale Ave. Elk Grove Village IL 60007
See Attached Overflow Pages

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | COVERED PROPERTY | | LIMITS |
|---|---|---|---|---|---|---|---|---|
| A | X PROPERTY | | 08UUNAX0537 | 5/23/2016 | 7/23/2017 | | BUILDING | $ |
| | CAUSES OF LOSS | DEDUCTIBLES | | | | | PERSONAL PROPERTY | $ |
| | BASIC | BUILDING | | | | | BUSINESS INCOME | $ |
| | BROAD | | | | | | EXTRA EXPENSE | $ |
| | X SPECIAL | CONTENTS 5,000 | | | | | RENTAL VALUE | $ |
| | EARTHQUAKE | | | | | | BLANKET BUILDING | $ |
| | WIND | | | | | | BLANKET PERS PROP | $ |
| | FLOOD | | | | | | BLANKET BLDG & PP | $ |
| | | | | | | X | Business Personal | $ 5,000,000 |
| | | | | | | | | $ |
| | INLAND MARINE | | TYPE OF POLICY | | | | | $ |
| | CAUSES OF LOSS | | | | | | Goods shipped | $ |
| | NAMED PERILS | | POLICY NUMBER | | | | | $ |
| | | | | | | | | $ |
| | CRIME | | | | | | | $ |
| | TYPE OF POLICY | | | | | | | $ |
| | | | | | | | | $ |
| | BOILER & MACHINERY / EQUIPMENT BREAKDOWN | | | | | | | $ |
| B | Canadian Warehouse | | 05ML T0132234 | 5/23/2016 | 7/23/2017 | X | Bus. Personal Prop. | $ 1,750,000 |
| | | | | | | | | $ |

SPECIAL CONDITIONS / OTHER COVERAGES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE<br><br>David Lawrence/MEDWAR |

ACORD 24 (2009/09)
INS024 (200909)

© 1995-2009 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 5/24/2016 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Michael Edwards | | |
|---|---|---|---|
| Lawrence Carlin Insurance Agency<br>230 Jones Road<br><br>Falmouth          MA   02540 | PHONE (A/C, No, Ext): (508) 540-7100 | | FAX (A/C, No): (508) 540-8426 |
| | E-MAIL ADDRESS: Michael@lawrencecarlin.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A: Twin City Fire Insurance Co. | | |
| INSURED | INSURER B: Hartford Group | | |
| Schawbel Technologies LLC | INSURER C: | | |
| 2400 District Ave | INSURER D: | | |
| Ste 150 | INSURER E: | | |
| Burlington       MA   01803 | INSURER F: | | |

## COVERAGES     CERTIFICATE NUMBER: 5.23.16     REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY<br>☐ CLAIMS-MADE  X OCCUR | | | 08CESOF4078 | 5/23/2017 | 7/23/2017 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 300,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>X POLICY ☐ PRO-JECT ☐ LOC<br>OTHER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | Employee Benefits | $ 1,000,000 |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO<br>☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS<br>☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | X UMBRELLA LIAB  ☐ OCCUR<br>☐ EXCESS LIAB  ☐ CLAIMS-MADE | | | 08HUSL3681 | 5/23/2017 | 7/23/2017 | EACH OCCURRENCE | $ 7,000,000 |
| | | | | | | | AGGREGATE | $ 7,000,000 |
| | DED X RETENTION $ 10,000 | | | | | | | $ |
| B | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  Y / N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | 09WECQ5503 | 5/23/2017 | 5/23/2018 | ☐ PER STATUTE  ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE<br>David Lawrence/MEDWAR |

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)     The ACORD name and logo are registered marks of ACORD
INS025 (201401)

## SCHEDULE 4.03(c)

## PURCHASER'S GOVERNMENTAL APPROVALS

None.

Buyer            Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753

## SCHEDULE 4.03(c)

## PURCHASER'S GOVERNMENTAL APPROVALS

None.

Schedules and Exhibits to Heat Factory, USA, Inc. /Schawbel Technologies, LLC. Asset Purchase Agreement

_____    _____
Buyer                        Seller

This is a disclosure schedule to the Asset Purchase Agreement ("Agreement"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement, and unless the context requires otherwise, references to sections are references to sections of the Agreement. Any information disclosed in this disclosure schedule may relate to and qualify disclosures made under one or more other disclosure schedules.

1725753