UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCHAWBEL TECHNOLOGIES LLC,<br><br>   *Plaintiff*,<br><br>v.<br><br>THE HEAT FACTORY USA, INC.,<br><br>   *Defendant*. | Civil Action No. 18-CV-10227 |

**SCHAWBEL TECHNOLOGIES LLC'S OPPOSITION TO THE HEAT FACTORY USA, INC.'S MOTION TO DISMISS, TRANSFER OR STAY**

  Schawbel Technologies LLC ("Schawbel") hereby opposes The Heat Factory USA, Inc.'s ("Heat Factory") Motion to Dismiss, Transfer or Stay (the "Motion") [Docket No. 36]. First, this Court should deny the Motion because Heat Factory's California state court lawsuit (the "California Action"), which it did not serve in the ordinary course or disclose to Schawbel while the parties continued to discuss Heat Factory's failure to make payments, was presumptively filed as a preemptive attempt to force Schawbel into California state court only after Heat Factory itself defaulted on its payment obligations under an Asset Purchase Agreement between the parties. Even if the California Action was not merely filed as a placeholder, this Court should exercise its discretion to allow this action to proceed as this Court remains the most efficient and prompt forum for adjudication of the parties' dispute.

  On August 20, 2018, Schawbel filed a Notice of Removal to remove the California Action to the United States District Court for the Southern District of California. As a result, it is unlikely that the California federal court will proceed along the same pretrial and trial schedule set by the state court in the California Action. Thus, the California Action will not be more

procedurally advanced than this action. Heat Factory itself also has fully participated in this action to date, thus confirming that its participation in this forum is both proper and convenient. Schawbel, for its part, has already commenced discovery here in Massachusetts and Heat Factory, has responded, albeit incompletely, to Schawbel's discovery requests. See Docket No. 35.

In addition, venue is proper in Massachusetts to address Schawbel's patent damages claim since Heat Factory does have a sufficiently regular and established place of business in Massachusetts. In particular, it appears through publicly available information that Heat Factory continues to sell Inventory in Massachusetts. The Inventory is not merely available for purchase online but shipped from Heat Factory and stocked on the shelves of at least one retailer located in Massachusetts. Moreover, discovery in connection with Schawbel's contract claim, including the outstanding production of documents by Heat Factory to Schawbel's discovery requests, is likely to yield additional information concerning Heat Factory's conduct in Massachusetts. Therefore, this Court should deny the Motion and allow the parties to continue to litigate this matter in Massachusetts.

## RELEVANT FACTS AND PROCEDURE

On or about July 18, 2017, Schawbel and Heat Factory executed an Asset Purchase Agreement (the "APA"), through which Schawbel agreed to sell to Heat Factory certain heated insoles, battery packs, and related heating products it had in inventory (the "Inventory") in exchange for a total payment in the amount of $3,700,000, payable on a schedule set forth in the APA. [Affidavit of William Schawbel ("Schawbel Aff.") ¶ 7 & Ex. A; Compl. ¶ 10-12]. In connection with the APA, the parties also executed a separate Exclusive Patent License Agreement (the "License Agreement"), through which Schawbel agreed to provide an exclusive

license to Heat Factory of certain patents, technological information, and general know-how concerning the Inventory. [Schawbel Aff. ¶ 8 & Ex. B; Compl. ¶ 19].

Pursuant to Section 2.02 of the APA, Heat Factory agreed to pay Schawbel $3,700,000 (the "Purchase Price") for the Inventory according to the following schedule:

| | |
|---|---|
| $300,000 | Payable on or before October 10, 2017 |
| $450,000 | Payable on or before November 10, 2017 |
| $500,000 | Payable on or before December 10, 2017 |
| $600,000 | Payable on or before January 10, 2018 |
| $600,000 | Payable on or before February 10, 2018 |
| $550,000 | Payable on or before March 10, 2018 |
| $550,000 | Payable on or before April 10, 2018 |
| $150,000 | Payable on or before May 10, 2018 |

Heat Factory was required to pay Schawbel $500,000 on or before December 10, 2017 (the "December Payment"). [Schawbel Aff. Ex. A, p. 6; Compl. ¶ 12]. Heat Factory failed to remit the entire December Payment to Schawbel pursuant to the terms of the APA. [Schawbel Aff. ¶ 11; Compl. ¶ 35]. Instead, Heat Factory paid only $352,477. [Schawbel Aff. ¶ 12; Compl. ¶ 36]. On December 11, 2017, Schawbel sent a notice demanding payment of the December Payment. [Schawbel Aff. ¶ 13 & Ex. C; Compl. ¶ 37]. Heat Factory also was required to pay Schawbel $600,000 on or before January 10, 2018 (the "January Payment"). [Schawbel Aff. ¶ 14; Compl. ¶ 39]. Heat Factory failed to remit the January Payment to Schawbel on January 10, 2018. [Schawbel Aff. ¶ 15; Compl. ¶ 40]. On January 13, 2018, Schawbel sent a notice to Heat Factory demanding the January Payment. [Schawbel Aff. ¶ 16 & Ex. D; Compl. ¶ 41].

As Heat Factory knew, pursuant to the terms of the APA and License Agreement, Schawbel's notices were required before Schawbel could pursue collection activity for unpaid amounts due under the APA and before Schawbel could terminate the License Agreement due to the APA non-payments. [See Schawbel Aff. ¶ 17 & Ex. B, p. 16]. Even though it sent these

default notices, Schawbel continued its direct communications with Heat Factory to try to resolve Heat Factory's payment defaults under the APA. [Schawbel Aff. ¶ 18]. While these discussions were ongoing, and without prior notice to Schawbel, Heat Factory filed the California Action on January 18, 2018. [Schawbel Aff. ¶ 19].

Following Heat Factory's continuing refusal to make the unpaid December Payment or January Payment due under the APA as a result of the parties' continuing discussions, Schawbel delivered a letter to Heat Factory on January 31, 2018 exercising its rights to terminate the License Agreement pursuant to Section 9.4(a) of the License Agreement. [Schawbel Aff. ¶ 20 & Ex. E]. Schawbel then filed its complaint with this Court on February 6, 2018, and served it that same day. [Affidavit of Michael P. Connolly ("Connolly Aff.") ¶¶ 1 & 2; Docket No. 1]. Schawbel's complaint asserted counts for breach of contract (the APA), declaratory judgment that the License Agreement had been terminated, and a patent infringement claim based upon Heat Factory's use or sale of Products or Inventory after the termination date. [Id.].

Heat Factory did not serve its complaint in the California Action until March 21, 2018. [Connolly Aff. ¶ 16]. Instead, during the two month period after filing its complaint in the California Action, Heat Factory actively participated in this action by filing its Answer [Docket No. 9] and participating in establishing a proposed joint pre-trial schedule with Schawbel [Docket No. 18]. Heat Factory then attended a scheduling conference held by this Court on May 23, 2018 (the "Scheduling Conference"). [Docket No. 21]. At the Scheduling Conference, the parties discussed, among other items, a schedule which effectively set forth a sequential order for assessing Schawbel's claims—beginning with Schawbel's breach of contract claim. [Connolly Aff. ¶ 7 & Ex. A]

9439397v1

Following the Scheduling Conference, Schawbel, for its part, served its first set of interrogatories and document requests on Heat Factory on June 1, 2018 (the "Discovery Requests"). [Connolly Aff. ¶ 9]. Schawbel then filed a motion to compel Heat Factory's responses to the Discovery Requests on July 18, 2018 (the "Motion to Compel"). [Connolly Aff. ¶ 10; Docket No. 25]. Heat Factory responded to the Motion to Compel and also served written responses to Schawbel's Discovery Requests on August 1, 2018. [Docket No. 31]. In the written responses, Heat Factory stated, among other things, that it would produce the responsive documents in its possession, custody or control. [Connolly Aff. ¶ 12]. To date, Heat Factory has not yet produced any of its promised documents, and the Motion to Compel remains open on the Court's docket. [Connolly Aff. ¶ 13].

In the California Action, Schawbel filed a motion to stay on May 14, 2018 (the "Motion to Stay"). [Connolly Aff. ¶ 17]. Schawbel's Motion to Stay was based, generally, on the progress of this action to date, as well as the fact that this Court, rather than the California State Court had complete jurisdiction over the subject matter of the claims asserted in Massachusetts. On August 2, 2018, the California State Court issued a Tentative Ruling granting the Motion to Stay. [Connolly Aff. ¶ 18]. On August 3, 2018, the California State Court issued an Order denying the Motion to Stay. [Connolly Aff. ¶ 19].

On August 20, 2018, Schawbel filed a Notice of Removal to remove the California Action to the United States District Court for the Southern District of California. [Connolly Aff. ¶ 21]. As of the time of this filing, the case has not yet been assigned to a judge in that District, no case schedule has been set and no further proceedings have occurred. [Connolly Aff. ¶ 22 & 23].

**ARGUMENT**

**A. Schawbel's Complaint is Proper in Massachusetts and the Prior Pending Action Doctrine Does Not Weigh In Favor of Dismissal, Stay, or Transfer**

*a. Heat Factory's California Action was filed as a mere placeholder and should therefore not be given any weight as a "first–filed" action*

Prior to its own filing of the California Action, Heat Factory failed to make the December Payment and the January Payment due under the APA. [Schawbel Aff. ¶¶ 11 & 15]. In connection therewith, Schawbel sent notices December 11, 2017 and January 13, 2018, notifying Heat Factory of the non-payments. [Schawbel Aff. ¶¶ 13 & 16]. During this time, Schawbel continued to communicate directly with Heat Factory concerning the overdue payments. [Schawbel Aff. ¶ 18]. Heat Factory filed its California Action on January 18, 2018. [Connolly Aff. ¶ 15]. Despite the ongoing discussions between the parties regarding Heat Factory's overdue payments, Heat Factory did not tell Schawbel that it was going to file the California Action. [Schawbel Aff. ¶¶ 19 & 21]. Indeed, Heat Factory did not tell Schawbel it had filed the California Action even after it had done so, nor did Heat Factory serve the complaint upon filing or ask Schawbel's counsel to accept service. Instead, Heat Factory continued to engage in discussions with Schawbel of a non-litigated resolution for nearly three weeks. Heat Factory self-evidently commenced the California Action in order to have a placeholder complaint on file in California in the event (which was in Heat Factory's sole control, since on each contractually-specified due date it chose not to make the payment that came due) that the parties' dispute escalated to the point where litigation was the only way to resolve it. [Schawbel Aff. ¶ 21].

Massachusetts courts have soundly rejected this litigation strategy. In <u>Lexington Ins. Co. v. City of Phoenix, Ariz.</u>, No. CIV. A. 96-10319-WGY, 1996 WL 463672, at *2 (D. Mass. July 31, 1996), the Court in rejecting a party's "pre-emptive strike[,]" stated, "[Plaintiff] appears to

have filed this action wholly to obtain its forum of choice if sued by [Defendant]. Such a preemptive strike misuses the declaratory relief action." See also, Davox Corp. v. Digital Sys. Int'l, Inc., 846 F. Supp. 144, 147 (D. Mass. 1993)(rejecting Plaintiff's preemptive complaint, stating "[Plaintiff] should not be permitted to take advantage of the fact that [Defendant] responsibly deferred filing potentially protracted and expensive litigation and, indeed, was perhaps misled into believing it would not be prejudiced by doing so by [Plaintiff's] responses to its [negotiation letters]"). California courts have also rejected such tactics. See e.g., Charles Schwab & Co. v. Duffy, No. C98-03612 MMC, 1998 WL 879659, at *1 (N.D. Cal. Dec. 8, 1998) (court rejected first filed complaint where court determined "permitting this case to continue would reward a race to the courthouse that appears to have been "won" by [Plaintiff], at least in part, due to a letter sent to [Defendant's] attorney that may have misled [Defendant] as to [Plaintiff's] settlement intentions.").

  Here, Heat Factory filed the California Action only after failing to make payment to Schawbel pursuant to the APA and while the parties were engaged in discussions concerning the unpaid APA payments. [Schawbel Aff. ¶¶ 19 & 21]. Upon information and belief, Heat Factory filed the California Action solely as a placeholder in order to later be able to use that filing as leverage in its ongoing discussions with Schawbel about the overdue payments, through the threat of having to litigate any future dispute in California state court. [Schawbel Aff. ¶ 21]. Subsequent inaction by Heat Factory following its filing of the California Action further supports this notion. In particular, following its filing of the California Action, Heat Factory did not serve its complaint in the California Action until approximately six weeks after Schawbel filed and served its own complaint. [Connolly Aff. ¶ 2 & 16]. Instead, following Schawbel's filing of this action in Massachusetts, Heat Factory filed its Answer on March 12, 2018 and thereafter

7

participated in the pretrial scheduling efforts leading to the Initial Scheduling Conference before the Court on May 23, 2018, and served written responses to Schawbel's discovery requests. [Connolly Aff. ¶¶ 3, 6 & 11]. Where Heat Factory has actively participated in this action, notwithstanding its placeholder filing in California, it should not be allowed at this point to reverse course and seek a stay or dismissal of this action based on the pendency of the California Action.

> **b. *The prior pending action doctrine does not weigh in favor of dismissing or staying this action***

Even disregarding Heat Factory's preemptive strike in California for "home-court" advantage, this Court has discretion in applying the prior pending action doctrine. See Quality One Wireless, LLC v. Goldie Grp., LLC, 37 F. Supp. 3d 536, 542 (D. Mass. 2014). In assessing whether to dismiss or stay an action based on the prior pending action doctrine, courts often consider a number of factors, including: (1) comity; (2) judicial efficiency; (3) adequacy and extent of relief available; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition; (6) convenience of parties, counsel and witnesses; and (7) possibility of prejudice to a party as a result of the stay or dismissal; (8) overlap of evidence; (9) risk of inconsistent judgments; (10) federalism; (10) conservation of judicial resources; and (11) the plaintiff's choice of original forum. Id. at 542-43 (internal citations omitted).

The balance of these factors weighs in favor of allowing this action to proceed in this Court. Even while failing to make payments under a patent license agreement, thus giving rise to claims for patent damages over which the federal courts have exclusive jurisdiction, Heat Factory chose to file suit in state court where a complete adjudication of claims among the parties would be unavailable. As a result, the progress of the California Action has lagged significantly behind this case. Schawbel's removal of the California Action to federal court –

necessary to assure that federal as well as state-law claims would be adjudicated in a single forum if the California Action were to proceed – means that the California Action is still in the pleading stage, with Heat Factory's answer to Schawbel's counterclaim due in mid-September. The Notice of Removal, further, has rendered moot the early trial date set by the California State Court following its August 3, 2018 decision denying Schawbel's motion to stay the California Action. The removed California federal court action thus is not as likely as this action to afford prompt disposition of the parties' claims.

The United States District Court for the Southern District of California, having just received the case, is unlikely to set a schedule that would be more advanced than the schedule in this action. For example, according to the Southern District of California's Local Rule 16.1, the parties will be required, at a minimum, to attend an "ENE" conference within 45 days of Heat Factory's Answer and subsequently attend a case management conference within 30 days thereafter to establish a schedule for deadlines concerning discovery, identification of experts, and pretrial motions. Indeed, it is likely that the California schedule will, by the very nature of the action essentially starting anew, lag behind this Court's schedule. By contrast, this Court has already organized the case by entering a scheduling order sequencing the disposition of the parties' claims. See Scheduling Order, Docket No. 22 and Joint Statement, Docket No. 18. Given that this Court has efficiently addressed this action to date and can continue to address this action with no less efficiency than the federal court in California, this action remains the optimal forum for the prompt disposition of the parties' dispute.

Restarting the litigation in California also would be a waste of judicial resources. It is well settled that "federal courts have an 'unflagging obligation' to exercise their jurisdiction." Quality One, 37 F. Supp. 3d 536, 540 citing Colorado River Water Conservation Dist. v. United

States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).  This Court unquestionably has personal jurisdiction over the parties and subject matter jurisdiction over their claims and defenses.  For its part, Heat Factory has not challenged this Court's jurisdiction.  Upon being served with the complaint in this action, Heat Factory itself set aside its efforts in the California Action and began to participate fully in this action by filing its Answer, appearing for the Scheduling Conference, agreeing to the Scheduling Order issued by this Court and responding to Schawbel's discovery requests.  See [Connolly Aff. ¶¶ 3, 5, 6, & 11].   In comparison, as just noted, the California Action is still in the pleading stage.  [Connolly Aff. ¶¶ 20, 21, & 23].

      Convenience factors do not warrant deference to the California Action either.  There will be some inconvenience for Heat Factor to litigate in Massachusetts, but not more than for Schawbel to litigate in California.  However, Heat Factory has demonstrated its ability and willingness to litigate in Massachusetts through its active participation in this forum to date.  And while Heat Factory has suggested that it has a greater number of employees in California than Schawbel has in Massachusetts, this fact has no bearing on the litigation; the number of witnesses who may have relevant, non-duplicative information is at best nearly even.  [Schawbel Aff. ¶¶ 22 & 23].  Schawbel expects that David Treptow, Heat Factory's CEO, will be Heat Factory's primary individual witness, as well as its corporate designee for purposes of any Rule 30(b)(6) deposition and later trial testimony.  [Schawbel Aff. ¶ 23].  This Court has previously required Mr. Treptow to appear in person for a hearing in Massachusetts.  See Docket Nos. 23 & 24.  The required appearance, in connection with a motion to withdraw filed by Heat Factory's counsel, never took place only because Heat Factory afterwards resolved its "differences" with its counsel. [See Docket No. 27].

Still further, for the reasons expressed in Schawbel's preliminary injunction motion filed on August 20, 2018, a stay or dismissal of this action would be prejudicial to Schawbel. With the onset of the primary selling season for Heat Factory's products, its ongoing sales and use of Schawbel's patents without compensation have deprived Schawbel of its property rights in the patents and are interfering with Schawbel's lawful exercise of those rights. If Heat Factory's position is correct that the License Agreement remains in effect, then Heat Factory owes royalties to Schawbel. If Schawbel's position is correct and the License Agreement has been validly terminated, Heat Factory owes damages to Schawbel for infringement. Yet instead of making any payment whatsoever, Heat Factory is attempting to hold Schawbel's patent rights hostage for the duration of this action through its continued sales of Inventory and Products without paying Schawbel. This Court is best positioned to provide timely preliminary relief to maintain the appropriate *status quo* among the parties.

For the foregoing reasons, this Court, in the exercise of its discretion, should not apply the prior pending action doctrine to transfer or stay this action. Heat Factory's Motion should be denied.

B. **Heat Factory has a sufficiently regular and established place of business in Massachusetts through its sale of Inventory in at least one Massachusetts retail store**

Schawbel's claim, in Count II, for damages under the patent statute following termination of the License Agreement should proceed in this Court notwithstanding Heat Factory's venue argument. The record developed to date reveals evidence that Heat Factory does have a regular and established place of business in Massachusetts. Specifically, Heat Factory (1) has sold Inventory in Massachusetts; (2) continues to sell Inventory in retail stores in Massachusetts, including Cabela's; and (3) has made Inventory available for purchase, through its own website and other websites including, www.papawarehouse.com. [Schawbel Aff. ¶¶ 24 & 25 & Ex. F].

9439397v1

See In re Cordis Corp., 769 F.2d 733, 737 (Fed. Cir. 1985) ("the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there and not . . . whether it has a fixed physical presence in the sense of a formal office or store."). Moreover, the placement of Inventory in Massachusetts by Heat Factory is not merely sporadic or temporary activity in Massachusetts, but represents permanent business in Massachusetts. Compare, Knapp-Monarch Co. v. Casco Prods. Corp., 342 F.2d 622, 625 (7th Cir. 1965) (periodic display of products at trade show is not established place of business). As noted above, Heat Factory's Inventory has been available for retail sale in at least one location in Massachusetts following the parties' execution of the APA and License Agreement. [Schawbel Aff. ¶¶ 25 ].

For its part, Heat Factory does not cite any case law (and there does not appear to be any) in the First Circuit or from the District of Massachusetts holding that such direct sales through retail stores is not sufficient to satisfy venue requirements under 28 U.S.C. § 1406(b). Heat Factory's reliance on Johnston v. IVAC Corp., 681 F. Supp. 959, 964 (D. Mass. 1987) and Cordis Corp. v. Cardiac Pacemakers, 599 F.2d 1085, 1086 (1st Cir. 1979) is inapposite. Here, unlike in Johnson, the Inventory is kept in Massachusetts to fulfill purchases at Massachusetts retailers—regardless of demand or online purchase. Similarly, in Cordis, while the court determined that venue did not lie, it did so only after determining that there was no evidence supporting any act of infringement. There, the court stated, "the record is totally devoid of any evidence to prove that defendant . . . manufactured, used or sold its products within the Commonwealth. Cordis, 599 F.2d at 1087. Unlike in Cordis, here there is record evidence that Heat Factory failed to make all payments necessary under the APA, Schawbel was entitled to terminate the License Agreement, and Heat Factory's continued use of the Inventory and Patents

after termination is an act of infringement. Finally, Heat Factory's reliance on Boston Sci. Corp. v. Cook Grp. Inc., 269 F. Supp. 3d 229, 248 (D. Del. 2017) is also misplaced. In Boston Scientific, the court, much like in Johnson, determined that the defendant did not maintain any presence in Delaware. Here, by placing its inventory in Massachusetts, Heat Factory does maintain a presence in Massachusetts. In fact, Heat Factory has done substantially more than solicit orders for its Inventory in Massachusetts. Heat Factory has maintained physical Inventory within Massachusetts for retail sale.

The existing record also suggests that ongoing discovery will reveal additional facts in connection with Heat Factory's contacts with Massachusetts for purposes of analyzing venue. See e.g., Mallinckrodt IP v. B. Braun Med. Inc., No. CV 17-365-LPS, 2017 WL 6383610, at *3 (D. Del. Dec. 14, 2017) (court allowed venue discovery "to aid the Court in making a fact-specific decision on a well-developed factual record."). As discussed above, Schawbel has alleged that Heat Factory has contracted to conduct business in Massachusetts, has sold Inventory in Massachusetts, and continues to offer for sale Inventory through at least one retailer located in Massachusetts. Schawbel expects that discovery will reveal more fully the extent to which Heat Factory has a regular and established presence in Massachusetts. Schawbel therefore requests that the Court deny Heat Factory's Motion to the extent it seeks a dismissal, stay or transfer of Count II of Schawbel's complaint.

## CONCLUSION

For the foregoing reasons, Schawbel Technologies LLC respectfully requests that the Court deny Heat Factory's Motion to dismiss Count II or in the alternative transfer or stay this action and further order the Parties to continue with the litigation of this action before this Court.

9439397v1

                          **SCHAWBEL TECHNOLOGIES LLC**

                          By its attorneys,

                          */s/ Michael P. Connolly*
                          Michael P. Connolly (BBO #637642)
                          Anthony R. Leone (BBO #681760)
                          MURTHA CULLINA LLP
                          99 High Street, 20th Floor
                          Boston, MA 02110
                          Tel:  (617) 457-4000
                          Fax:  (617) 382-4868
                          mconnolly@murthalaw.com
                          aleone@murthalaw.com

Dated: August 21, 2018

9439397v1

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCHAWBEL TECHNOLOGIES LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>THE HEAT FACTORY USA, INC.,<br><br>*Defendant*. | Civil Action No. 18-CV-10227 |

## CERTIFICATE OF SERVICE

I, Anthony R. Leone, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 21, 2018.

                                      */s/ Anthony R. Leone*
                                    Anthony R. Leone

9439397v1